# EXHIBIT 8-B

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| APPLIANCE COMPUTING III, INC. | § | |
| d/b/a SUREFIELD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:20-cv-00376-ADA |
| | § | |
| REDFIN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## <u>CHARGE (PRELIMINARY AND FINAL)</u>[1][2]

---

[1] Disputed Instructions (or portions thereof) marked "DISPUTED" with Surefield's proposal in red text and Redfin's proposal in blue text.  The parties' respective objections are set forth in footnotes appended to the disputed instruction(s).

[2] All sources, authority, and objections have been omitted in this version per the Court's instructions.

## <u>TABLE OF CONTENTS</u>

INSTRUCTIONS FOR BEGINNING OF TRIAL......................................................2

PRELIMINARY INSTRUCTIONS  ......................................................................4

JURY INSTRUCTION NO. 1:      PRELIMINARY INSTRUCTION TO JURY ....................4

JURY INSTRUCTION NO. 2:      THE PATENTS AND THE PARTIES...............................7

JURY INSTRUCTION NO. 3:      UNITED STATES PATENTS OVERVIEW [UNLESS
    PREVIOUSLY PLAYED] ......................................................8

JURY INSTRUCTION NO. 4:      WHAT A PATENT IS AND HOW ONE IS
    OBTAINED .....................................................................9

JURY INSTRUCTION NO. 5:      PATENT—CLAIM TYPE ..................................................1

JURY INSTRUCTION NO. 6:      PATENT LITIGATION—GENERAL...............................1

JURY INSTRUCTION NO. 7:      CLAIM CONSTRUCTION.................................................3

JURY INSTRUCTION NO. 8:      PARTY CONTENTIONS AND OVERVIEW OF
    APPLICABLE LAW ......................................................1

JURY INSTRUCTION NO. 9:      OUTLINE OF TRIAL .......................................................3

JURY INSTRUCTION NO. 10:     EVIDENCE........................................................................5

JURY INSTRUCTION NO. 11:     WITNESSES......................................................................7

JURY INSTRUCTION NO. 12:     DEPOSITION TESTIMONY AND TESTIMONY BY
    VIDEO ..........................................................................9

JURY INSTRUCTION NO. 13:     EXPERT TESTIMONY ...................................................10

JURY INSTRUCTION NO. 14:     STIPULATIONS OF FACT .............................................11

JURY INSTRUCTION NO. 15:     JUROR NOTEBOOKS.....................................................12

FINAL JURY INSTRUCTIONS     ......................................................................14

JURY INSTRUCTION NO. 1:      [DISPUTED] EVIDENCE.................................................16

JURY INSTRUCTION NO. 2:      NO INFERENCE FROM FILING SUIT .........................18

JURY INSTRUCTION NO. 3:      WITNESSES......................................................................19

JURY INSTRUCTION NO. 4:      DEPOSITION [AND REMOTE LIVE] TESTIMONY ....21

JURY INSTRUCTION NO. 5:      EXPERT TESTIMONY .....................................................22

JURY INSTRUCTION NO. 6:      STIPULATIONS OF FACT ..............................................23

JURY INSTRUCTION NO. 7:      LIMITING INSTRUCTION...............................................24

JURY INSTRUCTION NO. 8:      CHARTS AND SUMMARIES ..........................................25

JURY INSTRUCTION NO. 9:      DEMONSTRATIVE EXHIBITS ......................................26

JURY INSTRUCTION NO. 10:     [DISPUTED] BURDEN OF PROOF ................................27

JURY INSTRUCTION NO. 11:     SUMMARY OF CONTENTIONS....................................29

JURY INSTRUCTION NO. 12:     [DISPUTED] PATENT CLAIMS .....................................31

JURY INSTRUCTION NO. 13:     JUROR NOTEBOOKS.......................................................34

JURY INSTRUCTION NO. 14:     INDEPENDENT AND DEPENDENT CLAIMS .............35

JURY INSTRUCTION NO. 15:     [DISPUTED] INFRINGEMENT GENERALLY.............37

JURY INSTRUCTION NO. 16:     [DISPUTED]  DIRECT INFRINGEMENT .....................39

JURY INSTRUCTION NO. 17:     [DISPUTED] DIRECT INFRINGEMENT—
INFRINGEMENT OF A SYSTEM CLAIM OR COMPUTER READABLE
MEDIUM CLAIM: CAPABILITY ....................................................................................40

JURY INSTRUCTION NO. 18:     [DISPUTED] DIRECT INFRINGEMENT—METHOD
CLAIMS: NO REQUIRED ORDER OF STEPS ..............................................................41

JURY INSTRUCTION NO. 19:     [DISPUTED] DIRECT INFRINGEMENT—ACTS OF
MULTIPLE PARTIES      ...........................................................................................42

JURY INSTRUCTION NO. 20:     [DISPUTED] INDIRECT INFRINGEMENT—
ACTIVE INDUCEMENT      ...........................................................................................45

JURY INSTRUCTION NO. 21:     [DISPUTED] INDIRECT INFRINGEMENT—
CONTRIBUTORY INFRINGEMENT ..............................................................................47

JURY INSTRUCTION NO. 22:     [DISPUTED] WILLFUL INFRINGEMENT ...................49

JURY INSTRUCTION NO. 23:     [DISPUTED] INVALIDITY—BURDEN OF PROOF.....51

JURY INSTRUCTION NO. 24:     [DISPUTED] PRIOR ART................................................52

JURY INSTRUCTION NO. 25:     [DISPUTED] INVALIDITY—PRIOR ART
CONTENTIONS      ...........................................................................................53

JURY INSTRUCTION NO. 26: [DISPUTED] INVALIDITY—PRIOR ART: SYSTEMS ...........................................................................................54

JURY INSTRUCTION NO. 27: [DISPUTED] INVALIDITY—PRIOR ART: PUBLIC USE OR PUBLIC AVAILABILITY.................................................................55

JURY INSTRUCTION NO. 28: [DISPUTED] INVALIDITY—PRIOR ART: PRINTED PUBLICATION ........................................................................................57

JURY INSTRUCTION NO. 29: [DISPUTED] INVALIDITY—PRIOR ART: PATENT OR PATENT APPLICATION ...........................................................................59

JURY INSTRUCTION NO. 30: [DISPUTED] INVALIDITY—PRIOR ART: EXCEPTIONS ..........................................................................................60

JURY INSTRUCTION NO. 31: [DISPUTED] ANTICIPATION .......................................61

JURY INSTRUCTION NO. 32: [DISPUTED] OBVIOUSNESS.........................................63

JURY INSTRUCTION NO. 33: LEVEL OF ORDINARY SKILL .....................................67

JURY INSTRUCTION NO. 34: [DISPUTED] SCOPE AND CONTENT OF THE PRIOR ART .............................................................................................68

JURY INSTRUCTION NO. 35: DAMAGES—INTRODUCTION.....................................69

JURY INSTRUCTION NO. 36: [DISPUTED] REASONABLE ROYALTY— DEFINITION ...........................................................................................70

JURY INSTRUCTION NO. 37: REASONABLE ROYALTY—RELEVANT FACTORS.72

JURY INSTRUCTION NO. 38: REASONABLE ROYALTY—AVAILABILITY OF NON-INFRINGING SUBSTITUTES.................................................................75

JURY INSTRUCTION NO. 39: [DISPUTED] DAMAGES—DOUBTS RESOLVED AGAINST INFRINGER ................................................................................76

JURY INSTRUCTION NO. 40: [DISPUTED] DAMAGES—COMPARABLE AGREEMENTS ........................................................................................77

JURY INSTRUCTION NO. 41: DATE OF COMMENCEMENT OF DAMAGES ............78

JURY INSTRUCTION NO. 42: DAMAGES – APPORTIONMENT .................................79

JURY INSTRUCTION NO. 43: DUTY TO DELIBERATE; NOTES .................................80

JURY INSTRUCTION NO. 44: SOCIAL MEDIA INSTRUCTION ...................................82

# Jury Panel Preliminary Instructions

**INSTRUCTIONS FOR BEGINNING OF TRIAL**

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules.

Failure to follow these instructions could result in the case having to be retried.

## PRELIMINARY INSTRUCTIONS

**JURY INSTRUCTION NO. 1:      PRELIMINARY INSTRUCTION TO JURY**

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your notetaking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony and evidence.

Until this trial is over, do not discuss this case with anyone.  Do not permit anyone to discuss it with you or in your presence. This includes everyone you know: your spouse, children, relatives, friends, coworkers, and anyone that you deal with during the day.

During your jury service, you may not communicate any information about this case by any means or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, LinkedIn, Snapchat, Instagram, or Twitter, or any other way to communicate.

You may not communicate to anyone any information about this case until you have given me your verdict in this case.

Do not even discuss this case amongst yourselves or with other jurors until the end of the case when all of the evidence is in and I release you to begin to deliberate. It is unfair to discuss the case before then, as you must never become an advocate for one side or the other.

The parties, the witnesses, the attorneys, and everyone associated with the case are not permitted to communicate with you at any time. They know the rules of this Court.  So don't think they are being impolite or unfriendly if you should happen to see them in the halls, as they are not even permitted to tell you hello.  Do not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Because we live in the era with the Internet, I must instruct you, do not conduct any independent investigation of this case. You must make your decision on your verdict exclusively from what you see and hear within this courtroom. Do not try to obtain information from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online.  Do not read any newspaper account of this trial or listen to any radio or television newscast about it in any format. Do not visit or view any place discussed in this case.  Do not use Internet programs or other devices to search for or to view any place discussed. In sum, you may not research any information about this case, the law, or any of the people involved, including the parties, the witnesses, the lawyers, or me, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and so they are properly dealt with outside of your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. It doesn't have anything to do with the merits of the trial anyway.  If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

Do not consider the fact that either I permit a conference to happen or I do not, or the fact that we had a conference, to influence you in any way about how I might feel about this case. In fact, do not let anything I do or say from now through the end of the trial when I give you permission to begin deliberating, nothing I say to anyone in court should give you any indication about how I feel about the case. You are the judges of the facts. My opinion does not matter at all.

Finally, keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

**JURY INSTRUCTION NO. 2:      THE PATENTS AND THE PARTIES**

Now let me explain to you about the parties and the nature of this case.  This is a patent case.  The patents involved in this case generally relate to creating and presenting certain 3D models of real estate property and additional information about the property.  That will be explained in much greater detail by the witnesses, and the opening statements you hear before you hear from the witnesses and the closing arguments that you will hear after the witnesses.

The plaintiff is seated at the table closest to you.  They are Appliance Computing III, Inc. d/b/a Surefield.  They will probably be referred to throughout the trial as Surefield for short. Surefield is the owner of the four patents in this case, which are identified as:

- U.S. Patent No. 9,836,885, which may be called the '885 Patent;
- U.S. Patent No. 10,102,673, which may be called the '673 Patent;
- U.S. Patent No. 10,510,111, which may be called the '111 Patent; and
- U.S. Patent No. 10,592,973, which may be called the '973 Patent.

These patents may also be referred to as the "Surefield Patents" or the "asserted patents."  You will hear evidence related to each of these four patents.

The defendant is seated a little bit further over to my left, and that company is Redfin Corporation, or Redfin for short.

**JURY INSTRUCTION NO. 3:     UNITED STATES PATENTS OVERVIEW [UNLESS PREVIOUSLY PLAYED]**

I will now play a short video for you to give you an overview of patents and the patent system in the United States.  [**Play Federal Judicial Center Patent Video.]

**JURY INSTRUCTION NO. 4:      WHAT A PATENT IS AND HOW ONE IS OBTAINED**

Let me visit with you about patents and the United States patent system generally.  You saw some of this on the video.

A patent is a type of property right.  Patents in the United States are issued or granted by the United States Patent and Trademark Office.  You might hear them referred to during trial as the PTO or USPTO. The United States Government is empowered by the United States Constitution to enact patent laws and issue patents to protect inventions.

During the trial, the parties will probably offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a very general background.

To obtain a patent, an application for the patent must be filed with the PTO by an applicant or an inventor. The application includes what is known as a specification.  The specification includes a written description of the invention, how it works, and how to make and use it to enable others skilled in the art to do so.

The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims themselves is to particularly identify what the claimed invention is and to define the scope of the patent owner's exclusive rights under each of these patents.

After an application for a patent is filed with the PTO, the application is taken and reviewed by a person who has the title of Patent Examiner. A Patent Examiner is a person who is, generally speaking, trained in a specific technological area. The Patent Examiner reviews (or, another way of saying "review" in the patent world is "examines") the patent application to determine whether or not the claims that the applicant has provided to the PTO are patentable and whether or not the specification that was included adequately describes what the claimed invention is.

When the Patent Examiner examines the patent application, the Patent Examiner searches records available to the Patent Office to find what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

Generally speaking, prior art is previously existing technical information and knowledge which Patent Examiners consider to determine whether or not the claims in the application are patentable. The Patent Examiner considers, among many things, whether each claim defines an invention that is new, useful, and that is not obvious based on what had come before it, which is called the prior art.

Following the prior art search and examination of the application, the Patent Examiner tells the applicant in writing what the Patent Examiner has found and whether or not the Examiner believes each claim is patentable—in other words, whether the patent claim will be "allowed."

The Patent Examiner can decide to accept or reject one or more of the proposed claims that have been provided by the applicant (or the person seeking the patent). If the Patent Examiner decided to reject a claim, the applicant then responds to what is called the Office Action. The applicant can cancel claims, change the claims, submit new claims, or make other arguments to get around or to overcome a rejection. In other words, it is a negotiation. This process can go back and forth between the Patent Examiner and the applicant for months or even years until the Patent Examiner is satisfied with the application and decided the claims are patentable. At that point, upon payment of an issue fee by the applicant, the Patent Office or PTO then "issues" or "grants" a patent with the claims the examiner and the Patent Office have allowed.

The act of this negotiation or communication is called the prosecution of the patent. And the collection of papers from that negotiation—the back and forth that is generated by the Patent Examiner and the applicant during this time—is called the "prosecution history." It may also be

referred to as the "file history" or the "file wrapper."  The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Redfin has proven that the patent is invalid.

**JURY INSTRUCTION NO. 5:       PATENT—CLAIM TYPE**

A claim in a patent may be characterized as an "independent claim" or a "dependent claim." An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, some of the asserted claims are independent claims.

A dependent claim does not itself recite all of the requirements of the claim.  It refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. In this case, some of the asserted claims are dependent claims.

A claim in a patent may also be characterized as a "system claim" a "computer readable medium claim" or a "method claim."  System claims are directed to a product, device, system, or apparatus. Computer readable medium claims are directed to a computer program, software, or set of computer instruction on one or more computers that enables the computer(s) to perform certain processes or functions.  Method claims are directed to a process or series of acts or steps.

This will all become clearer as the trial progresses, but this is a good starting place to help you understand some of the basic elements of a patent and some of the basic language and nomenclature.

1

**JURY INSTRUCTION NO. 6:        PATENT LITIGATION—GENERAL**

A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States without the patent holder's permission.

A violation of someone's patent rights is called patent infringement.   During the term of the patent, if another person or company, without permission from the patent owner, begins to import, make, use, offer to sell, or actually sell the claimed inventions, then that person or company is said to infringe the patent claim.   A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, in an effort to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact

1

must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

The patent owner must prove infringement of a claim of the patent by a preponderance of the evidence.  [**SUREFIELD'S PROPOSAL:** The patent owner must also prove the amount of damages by a preponderance of the evidence that the patent owner is entitled to receive from the infringer as compensation for the infringing acts.]

A party accused of infringing a patent may prove that the asserted claims of the patent are invalid.  Invalidity is a defense to patent infringement and must be proved by clear and convincing evidence.  [**SUREFIELD'S PROPOSAL:** A patent is presumed to be valid.  In other words, it is presumed to have been properly granted by the PTO.  The presumption of validity can be overcome only if clear and convincing evidence is presented in Court that proves the patent is invalid.]

**JURY INSTRUCTION NO. 7:      CLAIM CONSTRUCTION**

In deciding whether or not an accused product or method infringes a patent or whether a patent is invalid, the first step is to understand the meaning of the words used in the patent claim. It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.   You must accept the meanings I give you and use them when you decide whether or not a patent claim is infringed.

In your notebook, you are provided with this Court's definitions for certain terms in the asserted claims of the patents at issue here.  These are also called claim constructions.  You must use these definitions when you decide the issue of infringement.

The definitions were determined by me in a process that occurred prior to this trial.  Each of the asserted claims of the patent has certain words that needed to be defined because the attorneys disagreed on their meaning. The attorneys asked me to define these words from the claims, and I have done that.  Those are the definitions in your notebooks.

Now, the attorneys will do a good job of explaining the claims and my constructions when they get into the evidence, but you just need to know for now that those definitions are there in your notebook and that they relate to these claim terms.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning of that term in the field of the patent.

**JURY INSTRUCTION NO. 8:     PARTY CONTENTIONS AND OVERVIEW OF APPLICABLE LAW**

I will now briefly explain the parties' basic contentions.  During the trial, I anticipate that the parties will offer the testimony of witnesses who will familiarize you with the issues you will be asked to decide.

Surefield contends that Redfin infringes the following claims of the asserted patents:

- Claims [INSERT FINAL LIST] of the '885 Patent;

- Claims [INSERT FINAL LIST] of the '673 Patent;

- Claims [INSERT FINAL LIST] of the '111 Patent; and

- Claims [INSERT FINAL LIST] of the '973 Patent.

These claims may be collectively referred to as the "Surefield Patent Claims" or the "asserted claims."  Although I, as the Court, and the parties may refer to the claims collectively, you will be asked to conduct your infringement and invalidity analysis as to each claim individually.

I will instruct you later as to the ways in which a patent claim may be infringed. In general, however, a patent claim is infringed if a product or process includes every element or performs every step of the patent claim.

Redfin denies that it has infringed any claim of the Surefield Patents.  Redfin also contends that each of the asserted claims of the Surefield Patents is invalid.   I will instruct you later as to the ways in which a patent claim may be invalid.  In general, however, a patent claim is invalid if it is not new or is obvious in view of the state of the art at the relevant time.

Both infringement and invalidity must be determined on a claim-by-claim basis.

Your job will be to decide whether or not the asserted claims have been infringed and whether or not those claims are invalid. If you find that the asserted claims are not infringed or

that the claims are invalid, you do not need to do anything more.  If you decide that one or more asserted claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Surefield to compensate it for the infringement. A damages award should put Surefield in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Surefield would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Surefield and not to punish Redfin. I will give you more detailed instructions on the meaning of a reasonable royalty and the calculation of damages at the conclusion of the case.

**JURY INSTRUCTION NO. 9:       OUTLINE OF TRIAL**

Now I'm going tell you what you can expect basically during the course of the trial.

First, the parties will each make opening statements.  The opening statement is not evidence.  If I were to tell you to leave at the end of the opening statements, you could not deliberate.  You would have heard no evidence.  It is just an opportunity for the lawyers to explain what they anticipate the evidence will be.  It will always be entirely and exclusively up to you to determine whether the evidence—that is, the testimony of the witnesses and any documents or exhibits that are admitted—support what the attorneys tell you in their opening statements.

After the opening statements, Surefield as the plaintiff will present evidence in support of its contention that the asserted claims have been infringed by Redfin, directly and indirectly.  They also, I anticipate, will argue that the infringement has been willful.

After Surefield concludes, Redfin will put on its case, if it chooses to, to present evidence that responds or rebuts Surefield's evidence of any infringement and willfulness.  I say "if it chooses to" because it is Surefield who has the burden of proof in this case for infringement. Redfin may also then present its evidence in support of its contention that one or more claims of the asserted patents are invalid.   To do that, they will have to put on additional evidence because Redfin has the burden of proof on invalidity.  After Redfin finishes, then Surefield may then put get to put on additional evidence, if it chooses to, responding to any evidence that Redfin has offered regarding invalidity and to offer any additional evidence that is relevant for your consideration.  We call this rebuttal evidence.  Again, I say "if it chooses to" with respect to Surefield responding to Redfin's claim of invalidity because, in the same way Surefield has the exclusive burden on infringement, Redfin has the exclusive burden on invalidity.  Surefield's rebuttal evidence is done only to respond to evidence offered by Redfin.

Both parties may also choose to present evidence of damages or the amount of money, if any, that Surefield is owed if any of the asserted claims of the Surefield Patents is determined by you to be infringed and not invalid.

After the parties have finished offering evidence, the attorneys will make closing arguments, which again are not evidence but an outline and summary of the evidence and what each side believes the evidence shows.

Then I will give you final instructions on the law that will apply to this case.  And finally I will release you and you will begin your deliberations.

**JURY INSTRUCTION NO. 10:     EVIDENCE**

The evidence you are to consider consists of the following: Witness testimony that will come primarily through the witness stand, but there's the possibility that you will also see some evidence presented to you by video.  There will also be evidence admitted by documents and exhibits.  There may also be facts that the parties agree to or stipulate to.  Additionally, any fair inferences or reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

There are two types of evidence.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, which is the type of evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence.  It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial, or any combination.

You must consider all the evidence, direct and circumstantial.  That does not mean you have to believe or accept all of the evidence you receive in this case.  It is entirely and exclusively up to you to decide how much weight or credibility to give to any of it.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear and how much of any witness's testimony you choose to accept or reject.

Here are some examples of what is not evidence.  The statements and arguments by the attorneys are not evidence.  During the examinations from the podium, the questions the lawyers ask are not evidence.

Objections to questions are not evidence.  The attorneys that are seated in front of you may object if they believe that documents or testimony that one side or the other's trying to get admitted are improper, and I make that decision.  I am exclusively just an umpire.  I am not here to decide

facts.  I am here to rule on issues of law, and in this case an example of those is if one side or the other makes an objection, then I have to rule on it.  But you should never ever be influenced by how I rule.  You should never be influenced by my ruling on any objection.

If I sustain an objection, which means I find it well taken, then pretend the question was never asked.  If there was an answer given, ignore it.  On the other hand, if an objection is made and I say "overruled," then it is like the objection was never made.  Ignore it.  Just listen to the answer and give it whatever weight you think is appropriate.

If I give you instructions that some item of evidence is received only for a limited purpose, follow my instructions and do so.

If I give a limiting instruction during the trial, I will make sure to clarify it for you at the time as to what I mean.  If I tell you that you should exclude or disregard something because it is not evidence, then you must disregard it and not consider it.

I anticipate that during this trial you will see a lot of evidence.  You may be shown charts, animations, videos, or other physical exhibits that are going to be in an effort to illustrate the testimony of witnesses.  These are called demonstrative exhibits.  They are not evidence unless I specifically admit them into evidence.  Which means, you will not have access to it when you are deliberating and so pay attention during the course of trial.

Anything you have heard outside of this courtroom, for example, anything you might know about Surefield or Redfin is not evidence and needs to be ignored.  You are to decide the case solely on the evidence that is presented here in the courtroom during this case and nothing else.

**JURY INSTRUCTION NO. 11:     WITNESSES**

In weighing the testimony of witnesses you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of their testimony considered in the light of circumstances.

Has the witness been contradicted by other credible evidence? Have they made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves. Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

These are just guideposts.  You alone determine the questions of credibility or truthfulness of the witnesses.

You are not to decide this case by counting the number of witnesses who have testified for the opposing sides. You weigh the testimony, not the number of witnesses.  There is no test for relative number of witnesses.  It is the relative convincing force of the evidence throughout the trial.  For example, the testimony of a single witness for one side is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, only after you have considered all the evidence.

In determining the weight to give to the testimony of a witness, ask yourself: did the witness say or do something or fail to say or do something that was at odds with the testimony given at trial? But remember, people make mistakes.  We're people.  A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. We forget things. We remember things inaccurately.

If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with something important or unimportant. But again, this is just a guidepost.  It is exclusively in your province whether or not you believe a witness is telling the truth.

**JURY INSTRUCTION NO. 12:    DEPOSITION  TESTIMONY  AND  TESTIMONY  BY VIDEO**

The parties may present the testimony of a witness by having the testimony live for you, by videoconference, or by reading from the deposition transcript. They also may play a videotape of a witness's deposition testimony. All forms are acceptable. You will only hear testimony from a witness where the witness is or was under oath.  A deposition—either read from a transcript or played on videotape—is simply the sworn testimony of a witness taken before trial. It is entitled to the same consideration of any witness who appears at trial. In addition, some of the video recordings of witnesses you see may be of lower quality because the witnesses had their depositions taken from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located. You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either party.

That being said, it is exclusively in your province to believe every word that any witness says, to disregard anything they say or do, whatever you want to do, because you all are the exclusive jurors and judges of the facts in this case.

**JURY INSTRUCTION NO. 13:   EXPERT TESTIMONY**

You are going to hear from what are known as expert witnesses. Expert testimony is testimony from a person who has developed a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

You will get to weigh the expert's testimony just like you will consider any witness's testimony. You will consider the expert's qualifications, the basis and reason for their opinions, the reliability of the information that supports their opinions and factors I previously mentioned that would apply to weighing the testimony of all witnesses.

Expert testimony receives whatever weight and credit that you decide is appropriate, given all the other testimony and evidence in the case. Again, just like with any other witness, you are free to accept or reject the testimony of experts.

**JURY INSTRUCTION NO. 14:     STIPULATIONS OF FACT**

      A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 15:    JUROR NOTEBOOKS**

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper for you to take notes

- As mentioned before, my claim construction order

- A copy of each of the four Surefield Patents

- Witness photographs, which will be provided after the witness testifies

- Stipulations

You may refer to these materials to assist you during trial.

# JURY PANEL FINAL INSTRUCTIONS
## (Given After the Close of Evidence)

## FINAL JURY INSTRUCTIONS

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be

influenced by passion, prejudice, or sympathy you might have for Surefield or Redfin in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**JURY INSTRUCTION NO. 1:       [DISPUTED] EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

[**SUREFIELD'S PROPOSAL:**   You have heard certain arguments and evidence regarding Redfin's patents and Matterport's patents.   The fact that Redfin or Matterport have patents does not mean that Redfin has a right to use Surefield's patented technology, has no impact on whether Redfin has or has not infringed Surefield's Patents, and is not relevant to the assessment of damages in this case.]

**JURY INSTRUCTION NO. 2:      NO INFERENCE FROM FILING SUIT**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**JURY INSTRUCTION NO. 3:     WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. For instance, has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on

whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.  But again, this is just a guidepost.  It is exclusively in your province whether or not you believe a witness is telling the truth.

**JURY INSTRUCTION NO. 4:       DEPOSITION [AND REMOTE LIVE] TESTIMONY**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

[**IF NEEDED**:  In addition, certain testimony has been presented to you through a remote live video. These witnesses have been permitted to testify by remote live video due to COVID-19 restrictions. This remote live video testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings and live remote video of witnesses you have seen may have been of lower quality because the witnesses testified from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located. You should not hold the quality of the video or the location of the witness against either party.

Live remote video testimony or] a deposition—either read from a transcript or played on videotape—is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as  if the witness had been present and had testified from the witness stand in court.

21

**JURY INSTRUCTION NO. 5:      EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 6:** **STIPULATIONS OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 7:       LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**JURY INSTRUCTION NO. 8:      CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**JURY INSTRUCTION NO. 9:      DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. It is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

**JURY INSTRUCTION NO. 10:     [DISPUTED] BURDEN OF PROOF**

As I explained at the start of this case, there are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.

Surefield contends that Redfin infringes certain claims of the asserted patents and that this infringement is willful. Surefield has the burden of proving patent infringement and willfulness by a preponderance of the evidence. Surefield also contends that it is entitled to damages for Redfin's alleged infringement. If Surefield proves infringement, Surefield also has the burden of proving the amount of any damages by a preponderance of the evidence.

A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. [**SUREFIELD'S PROPOSAL:** You may think of this preponderance of the evidence standard as slightly greater than 50%.]

Redfin contends that certain claims of the asserted patents are invalid. Redfin has the burden of proving invalidity by clear and convincing evidence.  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  [**SUREFIELD'S PROPOSAL:** It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy. This standard is different from the preponderance of the evidence standard which applies to Surefield's burden of proving infringement or damages.]

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact

must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

**JURY INSTRUCTION NO. 11:    SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Surefield is the owner of four patents at issue in this case. These patents are:

- United States Patent No. 9,836,885 (also referred to as "the '885 Patent");

- United States Patent No. 10,102,673 (also referred to as "the '673 Patent");

- United States Patent No. 10,510,111 (also referred to as "the '111 Patent"); and

- United States Patent No. 10,592,973 (also referred to as "the '973 Patent").

These patents are collectively referred to as the "Surefield patents" or the "asserted patents."

Surefield contends that Redfin infringes:

- Claims 1-6, 8-12, 14, 15, 17, and 18 of the'885 Patent;

- Claims 1-19 of the '673 Patent;

- Claims 1-4, 8-19, and 21-23 of the '111 Patent; and

- Claims 1-12, and 14-23 of the '973 Patent. [LIST TO BE UPDATED]

These claims are collectively referred to as the "Surefield claims" or the "asserted claims."

Surefield contends that Redfin directly infringes the asserted claims by the provision, use, and operation of Redfin's website at www.redfin.com, Redfin's Matterport-powered "3D Walkthrough" product, including Matterport Workshop, Matterport Showcase, Matterport Cloud, Matterport Capture, including supported capture cameras, and all associated computer hardware, software and digital content." Surefield seeks money damages from Redfin for its alleged infringement.

Redfin denies that it infringed the asserted claims and argues the asserted claims are invalid.

Your job is to decide whether Redfin has infringed the asserted claims and whether any of the asserted claims are invalid. If you decide that the asserted patents are invalid or not infringed, there is nothing further for you to do. On the other hand, if you decide that any asserted claim has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Surefield to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**JURY INSTRUCTION NO. 12:   [DISPUTED] PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issue that you will be asked to decide,  such as infringement.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

[**SUREFIELD'S PROPOSAL:**  The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim. When used in a claim, the terms "a" or "an" means "one or more."

The subsequent use of definite article "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule and similarly refers to "one or more." ]

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you

should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

My claim constructions will be provided to you with a copy of these instructions.

**JURY INSTRUCTION NO. 13:    JUROR NOTEBOOKS**

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper

- As I mentioned before, my claim construction order

- A copy of each of the four Surefield Patents

- Witness photographs, which will be provided after the witness testifies

- A copy of my jury instructions

You may refer to these materials to assist you during trial.

**JURY INSTRUCTION NO. 14:     INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, the following asserted claims are each independent claims:

- Claims 1 and 10 of the'885 Patent;

- Claims 1, 10, and 13 of the'673 Patent;

- Claims 1 and 18 of the'111 Patent; and

- Claims 1 and 18 of the '973 Patent. [LIST TO BE UPDATED]

The remainder of the asserted claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

If any requirement of a dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the product or process is not covered by that dependent claim.

On the other hand, if the requirements of an independent claim are met by a product or process, but a requirement of a dependent claim is not met, the independent claim is still infringed

if the product is made, used, or sold, offered for sale within, or imported into the United States without permission from the patent owner.

**JURY INSTRUCTION NO. 15:**   [DISPUTED] **INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not Surefield has proven that Redfin has infringed the asserted patents.  Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the Unites States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused products, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the patent, with the prior art, or with any other product, including Surefield products, in reaching your decision on infringement. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

In this case there are [three]/[two] possible ways that a claim may be infringed: (1) direct infringement; [and] (2) active inducement; [and (3) contributory infringement].   Active inducement [and contributory infringement] are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.  In this case, Surefield alleges that Redfin directly infringes the asserted claims.  In addition, Surefield alleges that Redfin actively induces third-party Matterport [and/or end-users of Redfin's website and mobile apps] to directly infringe the asserted claims.

I will now explain each type of infringement in more detail.

**JURY INSTRUCTION NO. 16:** [DISPUTED] **DIRECT INFRINGEMENT**

[**SUREFIELD'S PROPOSAL:** A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. Direct infringement does not require proof that the person or company copied a product, process, or patent. Even if the party independently creates the accused product or method, it can still infringe.]

In order to prove direct infringement of an asserted "system" claim, Surefield must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Redfin made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim.   To prove direct infringement of an asserted "method" claim, Surefield must prove by a preponderance of evidence that Redfin performed each and every step of the claim [**SUREFIELD'S PROPOSAL:** or that any step performed by another actor is attributable to Redfin].

You must determine, separately for each asserted claim, whether or not there is infringement.  For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**JURY INSTRUCTION NO. 17:**   [DISPUTED] **DIRECT INFRINGEMENT—INFRINGEMENT OF A SYSTEM CLAIM OR COMPUTER READABLE MEDIUM CLAIM: CAPABILITY**

[**SUREFIELD'S PROPOSAL:**  Claims [INSERT FROM FINAL LIST] of the '885 Patent, claims [INSERT FROM FINAL LIST] of the '673 Patent, and claims [INSERT FROM FINAL LIST] of the '973 Patent are system or computer readable medium claims.  To infringe a system claim or computer readable medium claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode, even though it may also be capable of a non-infringing mode(s) of operation.]

**JURY INSTRUCTION NO. 18:     [**<mark>DISPUTED</mark>**]  DIRECT  INFRINGEMENT—METHOD CLAIMS: NO REQUIRED ORDER OF STEPS**

[**SUREFIELD'S PROPOSAL:**  Claim 10 of the '885 Patent, claims 1 and 13 of the '673 Patent, and claims 1 and 18 of the '111 Patent are method claims.  To infringe a method claim, there is no requirement that steps be performed in the order written in the claims.]

**JURY INSTRUCTION NO. 19:**   [DISPUTED]   **DIRECT INFRINGEMENT—ACTS OF MULTIPLE PARTIES**

**[SUREFIELD'S PROPOSAL:** Here, Redfin contends that it does not provide the accused system or perform processes.  Surefield contends that even if Redfin did not provide one or more elements or did not perform one or more steps of the asserted claims, Redfin is still liable for direct infringement.

Where no single party provides all of the elements of a claimed system, but more than one party provides every element of the system, the claim is directly infringed if the accused infringer puts the inventions into service, meaning that it controls the system as a whole and obtains benefit from it.  So, if you find that a third party provides one or more elements of the asserted system claims, Redfin is liable for direct infringement if it is more likely than not that (1) all of the elements of the asserted system claims were provided; and (2) Redfin controls the system as a whole and obtains benefit from it.

Where no single party performs all of the steps of a claimed method, but more than one party performs every step of the method, the claim is directly infringed if (1) the accused infringer directs or controls the actions of the other; or (2) the parties have formed a joint enterprise.

In deciding direction or control, you should consider the totality of the circumstances.  One way you may find direction or control is if Redfin controls the method or manner in which the method steps are carried out and conditions the participation in an activity or the receipt of any benefit on performance of the method steps.

A joint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the group members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right to control.

42

So if you find a third party performs one or more steps of the asserted method claims, Redfin is liable for infringement if it is more likely than not (1) all of the steps of the asserted method claims are performed; and (2) Redfin either exercises control or direction over third party's performance of the steps or Redfin and the third-party formed a joint enterprise.]

**[REDFIN'S PROPOSAL:**  As explained, infringement occurs if Surefield proves that Redfin meets all the requirements of the asserted patent claims.  In this case, Surefield alleges that if Redfin does not perform all the steps or meet all the requirements of the asserted patent claims, Redfin is still liable for infringement because the requirements it doesn't perform or meet are attributable to Redfin, even if performed by another party.  Specifically, Surefield alleges that Redfin is responsible for the acts of third party Matterport, Inc.

To prove infringement through the combined action of Redfin and Matterport, Surefield must prove that the acts of Matterport are attributable to Redfin either because (1) Redfin exercised direction or control over Matterport when Matterport performed the acts required by the patent claims such that Redfin acted as the mastermind; or (2) Redfin and Matterport formed a joint enterprise.

To prove that Redfin directed or controlled Matterport, Surefield must prove two things: (1) that Redfin conditions receipt of a benefit upon Matterport's performance of the requirements of the patent claims; and (2) that Redfin established how and when Matterport performed the acts Surefield contends meet the asserted patent claims.  Mere arms-length cooperation does not give rise to direct infringement.  It is not enough to prove direction and control for Redfin to have asked about Matterport's methods.  To find direct infringement by Redfin, you must find that Redfin

directed and controlled the manner in which Matterport performed the acts accused of infringement.

To prove that Redfin and Matterport had a joint enterprise, Surefield must prove four things: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

If you do not find that either (a) Redfin exercised direction or control over Matterport when Matterport performed the acts accused of infringement or (b) Redfin and Matterport formed a joint enterprise, then you must find that Redfin did not infringe.]

**JURY INSTRUCTION NO. 20:**    [DISPUTED] **INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT**

Surefield alleges that Redfin is liable for infringement by actively inducing third-party Matterport to directly infringe the asserted patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Redfin is liable for active inducement of a claim only if Surefield proves by a preponderance of the evidence:

(1)    that the acts actually carried out by third-party Matterport directly infringe that claim;

(2)    that Redfin intentionally took action during the time the asserted patent was in force to cause and led to the infringing acts by Matterport; and

(3)    that Redfin was aware of the asserted patent and knew that the acts, if taken, would constitute infringement of that patent [**SUREFIELD'S PROPOSAL**:  or that Redfin believed there was a high probability that the acts by Matterport and/or end-users of Redfin's website would infringe one or more of the Surefield Patents, and Redfin took deliberate steps to avoid learning of that infringement.]

Although Surefield need not prove that Redfin has directly infringed to prove induced infringement, Surefield must prove that someone directly infringed.  If there is no direct infringement by anyone, Redfin cannot have actively induced infringement of a claim of the Surefield Patents.

If you find that Redfin was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Redfin cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that third-party Matterport [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users] directly infringes the

claim.   Nor is it sufficient that Redfin was aware of the act(s) by third-party Matterport [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users] that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Redfin specifically intended third-party Matterport [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users] to infringe the asserted patent or that Redfin believed there was a high probability that third-party Matterport [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users] would infringe the asserted patent, but deliberately avoided learning the infringing nature of third-party Matterport's [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users'] acts.   The mere fact, if true, that Redfin knew or should have known that there was a substantial risk that third-party Matterport [**SUREFIELD'S PROPOSAL:** and/or Redfin's end-users] would infringe the asserted patent would not be sufficient to support a finding of active inducement of infringement.

**JURY INSTRUCTION NO. 21:      [DISPUTED] INDIRECT INFRINGEMENT—
CONTRIBUTORY INFRINGEMENT**

[**SUREFIELD'S PROPOSAL:**  Surefield also alleges that Redfin is liable for indirect infringement by contributing to the direct infringement of the Surefield Patents by Matterport and/or end-user's of Redfin's website or apps. You must determine contributory infringement on a claim-by-claim basis.

Redfin is liable for contributory infringement of a claim if Surefield proves by a preponderance of the evidence that:

(1)      Redfin sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process;

(2)      the component, material, or apparatus has no substantial, non-infringing use;

(3)      the component, material, or apparatus constitutes a material part of the invention;

(4)      Redfin was either aware of the Surefield Patents and knew that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim or was willfully blind to the infringement of the Surefield Patents—meaning, Redfin subjectively believed there was a high probability that the encouraged acts constituted infringement of the Surefield Patents and Redfin took deliberate actions to avoid learning of the infringement; and

(5)      Matterport and/or Redfin's end-users use or used the component, material, or apparatus to directly infringe an asserted claim of the Surefield Patents.

For the purpose of evaluating substantial noninfringing use, the particular component or group of components that provides the infringing feature is the relevant component or group of components, even if that component or group of components is embedded in a larger product that, as a whole, has other uses.

A person who sells a product containing a component or group of components that has no substantial noninfringing use in that product may be presumed to do so with the intent and knowledge that the material or apparatus will be used to infringe.]

**JURY INSTRUCTION NO. 22:**    <mark>[DISPUTED]</mark> **WILLFUL INFRINGEMENT**

In this case, Surefield argues that Redfin willfully infringed the asserted patents.

If you have decided that Redfin has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine whether Surefield proved that it is more likely than not that Redfin knew of the asserted patents and that the infringement by Redfin was intentional. You may not determine that the infringement was willful just because Redfin was aware of the asserted patents and infringed them. Instead, you must also find that Redfin deliberately infringed the asserted patents.

To determine whether Redfin acted willfully, consider all facts and assess Redfin's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1)    Whether or not Redfin acted consistently with the standards of behavior for its industry;

(2)    Whether or not Redfin reasonably believed it did not infringe or that the asserted patents were invalid;

(3)    Whether or not Redfin made a good-faith effort to avoid infringing the asserted patents, for example, whether Redfin attempted to design around the asserted patents; and

(4)    Whether or not Redfin tried to cover up its infringement.

**[SUREFIELD'S PROPOSAL:**    An infringer may be found liable for willful infringement even if it did not have actual knowledge of the patent or infringement if the infringer intentionally took steps to remain unaware of the patent or infringement. This is known as willful blindness. Willful blindness is a factor to consider with respect to willfulness. An infringer may be found liable for willful infringement only if it had actual knowledge of the patent or deliberately infringed the patent or deliberately acted despite a risk of infringement that was so obvious it

should have been known.]

**JURY INSTRUCTION NO. 23:**     [DISPUTED] **INVALIDITY—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not Redfin has proven that the asserted claims are invalid. To prove that any claim of a patent is invalid, Redfin must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

[**SUREFIELD'S PROPOSAL:**  An issued patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing a patent. Each claim of a patent is presumed valid independently of the validity of the other claims.

The presumption of validity remains intact. In other words, the burden never shifts to Surefield to prove that its patent is valid.

When a party challenging the validity of an issued patent relies on prior art that was considered by the Patent Office with regard to the issued patent, that party's ability to satisfy its clear and convincing evidence burden of proving that the patent is invalid may be more difficult.  The Patent Office is presumed to have considered prior art disclosed to it.]

Redfin may establish that a claim is invalid in several ways, which I will explain below.

**JURY INSTRUCTION NO. 24:     [DISPUTED] PRIOR ART**

[**REDFIN'S PROPOSAL:** A patent claim may also be invalid in light of the prior art.]

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether any of the asserted claims is anticipated or obvious. **[REDFIN'S PROPOSAL**: Prior art in this case may include items that were publicly known or that have been used, sold, or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention prior to October 25, 2013.]

[**SUREFIELD'S PROPOSAL:** You must first determine whether the alleged prior art asserted by Redfin is prior art before determining whether any of the asserted claims of the Surefield Patents is anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.]

**JURY INSTRUCTION NO. 25:** [DISPUTED] INVALIDITY—PRIOR ART CONTENTIONS

[**SUREFIELD'S PROPOSAL:**  Redfin contends that the following is prior art to the asserted claims of the Surefield Patents as identified below. The following are the only alleged prior art at issue in this case: [LIST EACH ASSERTED CLAIM AND THE PRIOR ART GROUNDS ASSERTED AGAINST IT].

Surefield denies that [REFERENCES] are prior art.  Before any alleged prior art may be considered to determine whether any of the claims of the Surefield Patents is anticipated or obvious, you must determine whether the alleged prior art is prior art. Redfin must prove by clear and convincing evidence that its alleged prior art is prior art.]

**JURY INSTRUCTION NO. 26:     [DISPUTED] INVALIDITY—PRIOR ART: SYSTEMS**

[**SUREFIELD'S PROPOSAL:**  As related to the [RELEVANT ASSERTED CLAIMS], Redfin contends that the [REFERENCE] was a prior art system before October 25, 2013, which is the effective filing date of the Surefield Patents.  Surefield denies that the [REFERENCE] was a prior art system before October 25, 2013.  A prior art system consists of a combination of elements when those elements were combined together in a single system before the effective filing date. Any evidence relied upon by Redfin to show the attributes or operation of a particular prior art system must describe the same single system.

[For each alleged prior art system:] Redfin must prove by clear and convincing evidence that the elements allegedly comprising [REFERENCE] were combined together in a single system before October 25, 2013.]

**JURY INSTRUCTION NO. 27:** [DISPUTED]  INVALIDITY—PRIOR  ART:  PUBLIC USE OR PUBLIC AVAILABILITY

[**SUREFIELD'S PROPOSAL:**  As related to the [RELEVANT ASSERTED CLAIMS], Redfin contends that the [REFERENCE] is prior art because it was in public use or otherwise available to the public before October 25, 2013, which is the effective filing date of the Surefield Patents.  Surefield denies that the [REFERENCE] was in public use or otherwise available to the public before October 25, 2013 and denies that the [REFERENCE] is prior art.

An invention was publicly used or otherwise available to the public when it was accessible to the public before the effective filing date of the patent.  Factors relevant to determining whether an invention was accessible to the public include the nature of the activity that occurred in public; public access to and knowledge of the use; and whether there were any confidentiality obligations imposed upon persons who observed the use.  Public use or availability must place the claimed features of the invention in the public's possession; if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the prior art, the public has not been put in possession of those features.  Disclosure to a small number of uninformed observers does not render a device publicly used where there is no reason to believe that those observers could thereby learn anything of the patented invention and disclose it to others.

Redfin must prove by clear and convincing evidence that [REFERENCE] was publicly used or otherwise available to the public before October 25, 2013.

Witness testimony does not satisfy Redfin's burden to prove public use or availability by clear and convincing evidence without other evidence that sufficiently corroborates that testimony.  When determining whether other evidence exists to sufficiently corroborate the testimony of a witness regarding public use or availability, you should consider the following factors:

(1) the relationship between the corroborating witness and the alleged prior user;

(2) the time period between the event and trial;

(3) the interest of the corroborating witness in the subject matter in suit;

(4) contradiction or impeachment of the witness' testimony;

(5) the extent and details of the corroborating testimony;

(6) the witnesses' familiarity with the subject matter of the patented inventions and the alleged prior use;

(7) probability that a prior use could occur considering the state of the art at the time; and

(8) the impact of the invention on the industry, and the commercial value of its practice.]

**JURY INSTRUCTION NO. 28:** [DISPUTED] **INVALIDITY—PRIOR ART: PRINTED PUBLICATION**

[**SUREFIELD'S PROPOSAL:** As related to the [RELEVANT ASSERTED CLAIMS], Redfin contends that [REFERENCE] is prior art because it was described in a printed publication before October 25, 2013, which is the effective filing date of the Surefield Patents. Surefield denies that the [REFERENCE] was described in a printed publication before October 25, 2013 and denies that [REFERENCE] is prior art.

A printed publication is prior art only if it (1) was maintained in some tangible form, such as printed pages, electronic file, Internet publication, photocopies, and (2) was publicly accessible. Information is publicly accessible if it was distributed or otherwise made available to the public such that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it. Public accessibility, however, requires more than technical accessibility.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should consider what would have been within the knowledge of a person of ordinary skill in the art as of October 25, 2013, and you may consider evidence that sheds light on the knowledge such a person would have had.

Redfin must prove by clear and convincing evidence that the [REFERENCE] constitutes a printed publication that was publicly accessible and enabling before October 25, 2013. Witness testimony does not satisfy Redfin's burden to prove public use or availability by clear and convincing evidence without other evidence that sufficiently corroborates that testimony. When determining whether other evidence exists to sufficiently corroborate the testimony of a witness regarding public use or availability, you should consider the following factors:

(1) the relationship between the corroborating witness and the alleged prior user;

(2) the time period between the event and trial;

(3) the interest of the corroborating witness in the subject matter in suit;

(4) contradiction or impeachment of the witness' testimony;

(5) the extent and details of the corroborating testimony;

(6) the witnesses' familiarity with the subject matter of the patented inventions and the alleged prior use;

(7) probability that a prior use could occur considering the state of the art at the time; and

(8) the impact of the invention on the industry, and the commercial value of its practice.]

**JURY INSTRUCTION NO. 29:** [DISPUTED] INVALIDITY—PRIOR ART: PATENT OR PATENT APPLICATION

[**SUREFIELD'S PROPOSAL:** As related to the [RELEVANT ASSERTED CLAIMS], Redfin contends that [REFERENCE] is prior art because it was a patent or published patent application that names another inventor and was effectively filed before October 25, 2013, which is the effective filing date of the Surefield Patents. Surefield denies that the [REFERENCE] is a patent or published patent application that names another inventor and was effectively filed before October 25, 2013 and denies that [REFERENCE] is prior art.

Redfin must prove by clear and convincing evidence that the [REFERENCE] constitutes a patent or published patent application that names another inventor and was effectively filed before October 25, 2013.]

**JURY INSTRUCTION NO. 30:     [DISPUTED] INVALIDITY—PRIOR ART: EXCEPTIONS**

[**SUREFIELD'S PROPOSAL:**  As related to the [RELEVANT ASSERTED CLAIMS], you may not find that [REFERENCE] is prior art if:

(1) It is an item or publication that (a) is the inventor's own work or (b) describes the inventor's own work or (c) was directly or indirectly obtained from the inventor, unless it was made public more than one year before the filing date of the patent's application, or

(2) It is a patent or patent application that (a) discloses the inventor's own work or (b) was directly or indirectly obtained from the inventor or (c) was owned by the same person or subject to an obligation of assignment to the same person.

Redfin must prove by clear and convincing evidence that [REFERENCE] is prior art.]

**JURY INSTRUCTION NO. 31:   [DISPUTED] ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new." Redfin contends that the asserted claims are invalid because the claimed invention is anticipated, meaning it is not new.

Anticipation must be determined on a claim-by-claim basis. Redfin must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art publication or system. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed **[SUREFIELD'S PROPOSAL:** and arranged as in the claim without needing to pick, choose, and combine various disclosures from the prior art.

You cannot combine separate embodiments disclosed in the prior art unless the prior art actually teaches or suggests combining those embodiments as arranged in the claim.  In deciding whether or not a single item of prior art anticipates a patent claim, you should consider only what is expressly stated or present in the prior art item.  In determining whether a single item of prior art anticipates the claimed invention you may not consider any argument comparing the prior art to the accused product or device.]

**[REDFIN'S PROPOSAL:** The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference or system, could make and use the claimed invention.

Where, as here, Redfin is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its

61

clear-and-convincing burden of proving invalidity.  If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.]

**JURY INSTRUCTION NO. 32:**      [DISPUTED] **OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before October 25, 2013, which is the effective filing date of the asserted patents.

Redfin may establish that a patent claim is invalid by proving, by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art as of October 25, 2013.

In determining whether a claimed invention is obvious, you must consider:

(1) the level of ordinary skill in the field of the invention that someone would have had at the time the patent was filed,

(2) the scope and content of the prior art,

(3) any differences between the prior art and the claimed invention, and,

(4) if present, so-called objective evidence or secondary considerations.

**[SUREFIELD'S PROPOSAL:** I will now provide you some additional instructions related to each of those requirements.

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

In considering obviousness, you must also analyze whether there are any relevant differences between the prior art and the claimed invention, from the view of a person of ordinary

skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the claimed invention. In determining whether the prior art renders obvious the claimed invention you may not consider any argument comparing the prior art to the accused product or device.]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's filing date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention; and

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

[**SUREFIELD'S PROPOSAL:**  However, it is improper to combine references where the references teach away from their combination.  A reference teaches away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction different from the path that was taken in the claim. A reference teaches away, for example, if:

(1) the combination would change the basic principles under which the prior art was designed to operate;

(2) the combination would produce a seemingly inoperative device or a device inoperable for its intended purpose;

(3) the references leave the impression that the product would not have the property sought by the inventor or would no longer achieve the intended purpose(s) of the references being modified or combined; or

(4) the references address different problems or disclose different solutions.

If the prior art teaches away from a combination for these reasons, you may find but are not required to find that it does not make the claimed invention obvious.]

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.  Do not use hindsight; consider only what was known at the time of the patent's filing date.

[**SUREFIELD'S PROPOSAL:**  In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on non-obviousness. These include:

(1)     Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)     Whether the claimed invention satisfied a long-felt need;

(3)     Whether others had tried and failed to make the claimed invention;

(4)     Whether others invented the claimed invention at roughly the same time;

(5)     Whether others copied the claimed invention;

(6)     Whether the claimed invention achieved unexpected results;

(7)     Whether others in the field praised the claimed invention;

(8)     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

(9)     Whether the inventor proceeded contrary to accepted wisdom in the field.

These objective indicia can show that the invention is not obvious. While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.]

**JURY INSTRUCTION NO. 33:      LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

**JURY INSTRUCTION NO. 34:** [DISPUTED] SCOPE AND CONTENT OF THE PRIOR ART

[**SUREFIELD'S PROPOSAL:** NOT NEEDED – SEE SUREFIELD'S PROPOSAL INCLUDED IN OBVIOUSNESS INSTRUCTION]

[**REDFIN'S PROPOSAL:** In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where Redfin is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.]

**JURY INSTRUCTION NO. 35:    DAMAGES—INTRODUCTION**

If you find that Surefield has proven that Redfin infringed any claim of the asserted patents and that Redfin has not proven that such claim is invalid, you must then consider what amount of damages to award to Surefield.  If you find that Redfin has not infringed any valid claim of the asserted patents, then Surefield is not entitled to any damages.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Surefield for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Surefield in approximately the same financial position that it would have been in had the infringement not occurred.

Surefield has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Surefield establishes that it more likely than not has suffered. While Surefield is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

I will give more detailed instructions regarding damages shortly.

**JURY INSTRUCTION NO. 36:   [DISPUTED] REASONABLE ROYALTY— DEFINITION**

In this case, Surefield seeks what it contends is a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of the royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

Unlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

[**SUREFIELD'S PROPOSAL:**  The reasonable royalty you determine should not include compensation for a fully paid-up license.  The parties agree the relevant damages period is the date of issuance of the infringed patent, if any, through December 31, 2021.[3]]

---

[3] Based on current expert reports.  To the extent Redfin supplements its financial discovery and the damages expert(s) adjust their calculation based on that supplement, this date will need to be revised.

[**REDFIN'S PROPOSAL:**  To calculate a royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. The "base" is the "smallest saleable unit" that practices the patent and has close relation to the claimed invention. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.

The reasonable royalty award must be based on the incremental value that the patented invention adds to an accused system or process. When the infringing systems or methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. An appropriate combination of royalty base and royalty rate must reflect the value attributable to the infringing features, if any, of the accused technology and processes, and no more.  Surefield has offered evidence regarding Redfin's revenue from sales of homes, but you may only use that evidence as the royalty base if you determine that the patented feature creates the basis for customer demand for the full amount of revenue.]

**JURY INSTRUCTION NO. 37:     REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.

Some of the kinds of factors that can be considered are:

(1)     The value that the claimed invention contributes to the accused product.

(2)     The value that factors other than the claimed invention contribute to the accused product.

(3)     Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

Factors–sometimes referred to as the "Georgia-Pacific" factors–which can be considered to inform the hypothetical negotiations are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent

monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or

significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 38:     REASONABLE ROYALTY—AVAILABILITY OF NON-INFRINGING SUBSTITUTES**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product or method that is licensed under the patent or that does not infringe the patent.

**JURY INSTRUCTION NO. 39:** [<mark>DISPUTED</mark>] **DAMAGES—DOUBTS RESOLVED AGAINST INFRINGER**

[**SUREFIELD'S PROPOSAL:** Any doubts that you may have on the issue of damages due to Redfin's failure to keep proper records should be decided in favor of Surefield. Any confusion or difficulties caused by Redfin's records also should be held against Redfin, not Surefield.]

**JURY INSTRUCTION NO. 40:**     [DISPUTED] DAMAGES—COMPARABLE
AGREEMENTS

[**SUREFIELD'S PROPOSAL:**  The existence of any comparable license agreements may inform your decision as to the proper amount and form of the reasonable royalty award.  Whether a particular agreement is comparable to the license under the hypothetical negotiation depends on many factors, such as whether they were executed at around the same time as the hypothetical negotiation; whether they involve comparable technologies, comparable economic circumstances, comparable structures, and comparable scope.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Surefield and Redfin in order for you to consider it.  However, if you choose to rely upon evidence from any other license agreement, you must account for any technological or economic differences between that license agreement and the hypothetically negotiated license between Surefield and Redfin when you make your reasonable royalty determination.]

[**REDFIN'S PROPOSAL:**  When determining a reasonably royalty, you may consider evidence concerning the amounts that other parties have paid for rights to similar technology or the technology at issue.  An agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Surefield and Redfin for you to consider it.  However, if you choose to rely upon evidence from any other agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Surefield and Redfin, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.]

**JURY INSTRUCTION NO. 41:     DATE OF COMMENCEMENT OF DAMAGES**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Redfin has both infringed and been notified of the alleged infringement of the asserted patents.

For purposes of this case, the parties agree:

- The start of the damage period for any infringement of a claim of the '885 Patent is December 5, 2017;

- The start of the damage period for any infringement of a claim of the '673 Patent is October 16, 2018;

- The start of the damage period for any infringement of a claim of the '111 Patent is December 17, 2019; and

- The start of the damage period for any infringement of a claim of the '973 Patent is March 17, 2020.

**JURY INSTRUCTION NO. 42:    DAMAGES – APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Redfin's size or market position.

A royalty compensating the patent owner for damages must be based on the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more. [**SUREFIELD'S PROPOSAL:** Apportionment can be addressed in a variety of ways, including by careful selection of the royalty base to reflect the value added by the patented feature or by adjustment of the royalty rate so as to discount the value of a product's non-patented features including in the *Georgia Pacific* analysis; or by a combination thereof.]

[**REDFIN'S PROPOSAL:**  That is, the patent owner must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product.

In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be the smallest saleable unit that practices the patent and is closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.]

**JURY INSTRUCTION NO. 43:     DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will

respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**JURY INSTRUCTION NO. 44:      SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, a smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

## GLOSSARY OF PATENT AND TECHNICAL TERMS

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:** A situation in which a claimed invention is described in a single piece of prior art and, therefore, is not considered new and is not entitled to be patented.

**Assignment:** A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception:** The complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:** The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Enablement:** A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent.

**Limitation:** A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:** One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action:** A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent:** A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):** An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art:** Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice:** The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.