**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| APPLIANCE COMPUTING III, INC. | § | |
| d/b/a SUREFIELD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:20-cv-00376-ADA |
| | § | |
| REDFIN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

DISCUSSION ............................................................................................................... 1

I.     THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF
LAW THAT REDFIN DOES NOT DIRECTLY INFRINGE ............................. 1

     A.     Surefield Failed to Present Any Evidence that Redfin Provides the
Accused System or Performs the Steps of the Method Claims. ................ 1

     B.     Surefield Failed to Present Evidence Sufficient to Show that
Redfin Controls the Accused System or Directs or Controls the
Actions of Others. ..................................................................................... 2

     C.     Surefield Did Not Introduce Any Evidence to Support its Claim of
Direct Infringement .................................................................................. 4

     D.     Surefield Presented Insufficient Evidence of the Parcel Outline
Limitations ................................................................................................ 4

     E.     Surefield Presented Insufficient Evidence of the Generating a
Virtual Model of a Selected Spaces Limitations....................................... 6

     F.     Surefield Presented Insufficient Evidence of Infringement by
Single-Story Properties ............................................................................ 7

     G.     Surefield Failed to Provide Sufficient Evidence that the Claimed
Method Steps Have Been Actually Performed or that Anyone has
Actually Used the Claimed Systems......................................................... 8

II.    THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF
LAW THAT REDFIN DOES NOT INDIRECTLY INFRINGE ........................ 10

     A.     Surefield Failed to Present Sufficient Evidence that Matterport
Directly Infringed the Asserted Claims .................................................. 10

     a.     Surefield Did Not Present Evidence that Matterport Meets the
"Parcel Outline" Limitations of the Asserted Claims ('885, '111,
and '973 patents)..................................................................................... 10

     b.     Surefield Did Not Present Evidence that Matterport Meets the
"Causing a Device to Display" or "Visually Presenting" a Virtual
Model Requirements of the Asserted Claims ('885, '673, '111, and
'973 patents)........................................................................................... 11

  B.  Surefield Failed to Present Evidence that Redfin Induced
    Matterport to Take Action It Knew Would Constitute Infringement
    of the Asserted Patents ................................................................. 12

III. THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF
   LAW THAT REDFIN DID NOT WILLFULLY INFRINGE ............................ 12

IV. THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF
   LAW WITH RESPECT TO SUREFIELD'S DAMAGES ................................... 13

  A.  Surefield's Expert Violated the Entire Market Value Rule ..................... 14

  B.  Surefield's Expert Failed to Apportion Damages to the Accused
    Technology ............................................................................... 14

  C.  Surefield Used an Incorrect Hypothetical Negotiation Date ................... 15

  D.  Surefield is Not Entitled to Damages on Single-Story Models ............... 16

V.  THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF
   LAW THAT THE ASSERTED PATENTS ARE INVALID .............................. 16

  A.  The Evidence Related to Google Street View Indoors Presented by
    Redfin Requires the Finding by the Jury that the Claims Are
    Anticipated by Google Street View Indoors. ............................................ 16

  B.  The Evidence Presented by Redfin Related to the Google Street
    View Indoor System Requires the Finding that the System Meets
    Every Limitation of the Claims and, to the Extent a Limitation is
    Not Met, It Would Have Been Obvious to Incorporate Said
    Limitation................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)...................................................................................2

*Am. Home Assurance Co. v. United Space All.*,
   378 F.3d 482 (5th Cir. 2004) ....................................................................................1

*Bayer HealthCare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021)...........................................................................12, 13

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011)..................................................................................4

*DDR Holdings, LLC v. Hotels.com L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)................................................................................17

*DSU Medical Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006).................................................................................10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)................................................................................15

*Finalrod IP, LLC v. John Crane, Inc.*,
   No. 15-CA-097-ADA, Dkt. 372 ...............................................................................15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)........................................................................................12, 13

*Intell. Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017).........................................................................13

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017)..................................................................................2

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993).........................................................................................8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)..............................................................................14, 15

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F. 3d 1301 (Fed. Cir. 2009)...........................................................................8, 13

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996)...................................................................................13

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)........................................................................14

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)........................................................................16

*W. Union Co. v. MoneyGram Payment Sys.*,
   626 F.3d 1361 (Fed. Cir. 2010)........................................................................18

*Weyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010)........................................................................18

*Williams v. Manitowoc Cranes, LLC*,
   898 F.3d 607 (5th Cir. 2018) ............................................................................1

**RULES**

Federal Rule of Civil Procedure 50(a) ....................................................................1

**STATUTES**

35 U.S.C. § 103(a) ................................................................................................18

35 U.S.C. § 271 (2006) ..........................................................................................8

35 U.S.C. § 271(a) .............................................................................................2, 4

35 U.S.C. § 271(b) ...............................................................................................10

**OTHER AUTHORITIES**

U.S. Patent Nos. 9,836,885 .......................................................................... passim

## INTRODUCTION

Defendant Redfin Corporation respectfully moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law.[1]  The asserted patents in this case are U.S. Patent Nos. 9,836,885 (the "'885 Patent"); 10,102,673 (the "'673 Patent"); 10,510,111 (the "'111 Patent"); and 10,592,973 (the "'973 Patent") (collectively, the "Asserted Patents").  Surefield asserted claims 1, 3, and 9 of the '885 Patent, claims 1, 2, and 10 of the '673 Patent, claims 18 and 22 of the '111 Patent, and claims 4 and 17 of the '973 Patent.  For the following reasons, Redfin asserts that a reasonable jury would not have a legally sufficient evidentiary basis to find that Redfin infringes the asserted claims, willfully infringes the asserted claims, that the asserted claims are not invalid, or that damages should be awarded.

## DISCUSSION

### I.  THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW THAT REDFIN DOES NOT DIRECTLY INFRINGE[2]

It was Surefield's burden at trial to provide substantial evidence that the accused devices practice every element of the asserted claims.  35 U.S.C. § 271(a); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

#### A.  Surefield Failed to Present Any Evidence that Redfin Provides the Accused System or Performs the Steps of the Method Claims.

The asserted claims of the '885 patent, claim 10 of the '673 patent, and the asserted claims of the '973 patent are all system or computer-readable memory medium claims that require a

---

[1] Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a); *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018).  The Court should grant Defendants' motion unless there is "substantial evidence" in support of each essential element of Surefield's claims. *See Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004).

[2] The dependent claims necessarily do not infringe if the independent claims are found to not infringe.

processor implementing program commands that cause the processor to perform certain steps. Surefield does not present sufficient evidence to show that Redfin makes, uses, sells, or offers to sell a processor implementing program commands that cause the processor to perform all the steps required by the claims.  Indeed, for many of the requirements, Surefield points only to processes implemented on an end-user computer.  *See e.g.*, Trial Tr. at 577:24-578:23 (identifying the end-user computer for requirements of visually presenting or causing a device to display the virtual models).  For other requirements, Surefield points to processes implemented on Matterport's computers.  *See e.g.*, Trial Tr. at 666:25-667:9; 680:14-681:6.

The remaining asserted claims are method claims.  *See* '673 patent, claim 1; '111 patent, claim 18.  For the method claims, Surefield similarly fails to present evidence that Redfin performs each and every step of the claims.  *See* 35 U.S.C. § 271(a); *see Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  For example, Surefield points only to an end-user for the claim requirements of "causing a device to display" the virtual model.  *See e.g.* Trial Tr. at 512:21-513:5; 518:16-519:22; 544:23-546:7; 553:3-23.   For other requirements, Surefield points to steps taken by Matterport.  *See e.g.* Trial Tr. at 666:25-667:9; 680:14-681:6.; 681:16-20; 689:2-8.

Thus, Surefield fails to show that a single actor—Redfin—provides the accused system or performs each and every step of the method claim.

> **B.    Surefield Failed to Present Evidence Sufficient to Show that Redfin Controls the Accused System or Directs or Controls the Actions of Others.**

System claims can be directly infringed by the collective actions of multiple entities if Redfin:

- Controls the place at which the system as a whole is put into service, either directly or indirectly.

- Benefits from the use of each claimed component of the invention.

*Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017). Surefield failed to present evidence sufficient to show that Redfin controls an end-user's use of his or her computer. No such evidence exists in the record. Furthermore, Surefield failed to present evidence sufficient to show that Redfin controls the place at which Matterport's system is put into service. Instead, Surefield attempted to assert that Redfin has the requisite "control" to be liable for infringement by pointing to an alleged "partnership" between Matterport and Redfin. Trial Tr. at 773:25-774:8, 775:25-776:16. But this alleged partnership does not even come close to the direction and control required for direct infringement. Indeed, Mr. Wiener, Redfin's Vice President of Real Estate Operations, testified that the nature of the relationship was simply that of an early customer—where Redfin would provide "feedback on whether or not that product was sufficient to meet our needs." Trial Tr. at 962:2-11. Mr. Wiener further explained the disconnect between Redfin and Matterport by indicating that "Redfin never designed the 3D Walkthrough. That is a Matterport technology. And so we didn't have anything to redesign, because it's not our technology." Trial Tr. at 952:3-10; 973:20-23; 987:15-988:3. Mr. Gausebeck from Matterport similarly testified that Redfin had no involvement in the technological direction and implementation of Matterport's system. Trial Tr. at 1055:10-1056:7. The complete failure of proof that Redfin directly infringed on its own or otherwise directed or controlled another party to infringe would not allow any jury to reasonably find that Redfin is liable of direct infringement

With respect to the asserted method claims, another party's performance—*e.g.,* Matterport's or an end-user's—of a claimed method step may be attributable to Redfin if Redfin directed and controlled that party's performance of the claimed step. This requirement may be met if:

- Matterport and end-users are Redfin's agents and performed the claimed step in their capacity as Redfin's agent;

- Redfin contracted with Matterport as well as end-users to perform the claimed step; or

- Redfin conditioned the Matterport's and end-user's participation in an activity or receipt of a benefit on its performance of the claimed method step and established the timing and manner of the other party's performance of the step.

There is no evidence in the record of any relationship between Redfin and end-users. Thus, there is no evidence that end-user's act as Redfin's agents, contracted with Redfin, or that Redfin had any ability to condition or control end-user's activities. Further, the evidence does not support the claim that Redfin had any direction and control, whatsoever, over the actions taken by Matterport in developing the 3D tours that are ultimately accessed through Redfin's website. In fact, the evidence of record is the contrary; that Matterport acted independently in its development and use of its system to build 3D models. *See e.g.* Trial Tr. at 1055:10-1056:7.

### C.  Surefield Did Not Introduce Any Evidence to Support its Claim of Direct Infringement

As shown in the Exhibit A, Surefield's evidence is wholly insufficient to support its claim of direct infringement for numerous reasons.

### D.  Surefield Presented Insufficient Evidence of the Parcel Outline Limitations

All of the asserted claims of the '885, '111, and '973 patents require some variation of generating a spatial boundary that "defines" or "corresponds" to a parcel outline:

- "generating a plurality of spatial boundaries of the plurality of spaces of the real property . . . , each of the plurality of spatial boundaries defining a parcel outline of a corresponding space" ('885 patent, independent claim 1);

4

- "defining a plurality of spatial boundaries of the plurality of spaces in the plurality of rooms in the real estate property . . . , wherein the defined first spatial boundary and second spatial boundary are further delineations within a third spatial boundary corresponding to a parcel outline of the real estate property" ('111 patent, claim 18);

- "defining a plurality of spatial boundaries of the plurality of spaces of the real property . . . , at least one of the plurality of spatial boundaries defining a parcel outline of the real property" ('973 patent, independent claims 1 and 18);

The Court adopted the parties' agreed upon construction of "parcel outline" to mean "a representation of the legal boundary of the land (i.e., the property lines)." Claim Construction Order (D.I. 41) at 1. Thus, as construed, the claims require generating a spatial boundary that does two things:

1. defines a space (e.g., a room or a floor) and

2. defines (or corresponds to) a parcel outline—a "representation of the legal boundary of the land (i.e., property lines)."

The evidence confirms that this limitation is not met and, as such, each of the asserted claims of the '885 Patent, '111 Patent, and '973 Patent are not infringed. Dr. Melendez failed to point to any evidence that the spatial boundaries define or correspond to a parcel outline. Notably, he failed to make this key connection—that is, he failed to show *any* connection between the spatial boundaries generated by the model and the parcel outline. Rather, Dr. Melendez merely pointed to an alleged parcel outline and an alleged spatial boundary, waived his hands, and hoped his obfuscation would lead the jury to an untenable result. Specifically, Dr. Melendez pointed to Redfin source code and stated, in conclusory fashion, that because the "Redfin source code knows the geographical location of these spatial boundaries," it "knows what parcel outline corresponds to

5

that." Trial Tr. at 590:14–18.  But nowhere does he point to evidence that it actually does ***know*** what parcel outline corresponds to the spatial boundaries.  Instead, Dr. Melendez only pointed to Mr. Hu's testimony to show that Redfin draws property lines on a map.  Trial Tr. at 592:11–13 (Dr. Melendez noting that "Redfin gets these coordinates from somewhere and they use it to draw this outline.").   And then Mr. Gausebeck's deposition testimony that "the model is located geographically in combination with the GPS data," Trial Tr. at 592:19–20, and that the "GPS data gives a geographic location," *id*. at 593:1–5.  He never provided any evidence, however, that would allow a jury to reasonably conclude that the ***spatial boundaries define (or correspond to) the parcel outline***.  This failure is consistent throughout his testimony for the other patents.  *See* Trial Tr. at 605:22–25; 606:22–23; 607:9-16; 617:7–18; 618:15–19.

### E.     Surefield Presented Insufficient Evidence of the Generating a Virtual Model of a Selected Spaces Limitations

Each of the asserted claims of the Asserted Patents requires that a 3D model be generated only after a user selects a space.  Surefield failed to present sufficient evidence that would allow the jury to reasonably find that Redfin practices this limitation.  As an example, for claim 1 of the '673 Patent, the claim requires that in response to "receiving a selected viewpoint in the selected space," the method requires "generating a point cloud of the 3D model" and "determining a geometric proxy for the selected viewpoint."  '673 Patent at claim 1.  The other asserted claims similarly require generation of a selected space based on user selection.  *See* '673 Patent at claim 1 and 10; '885 Patent at claim 1, '111 Patent at claim 18, and '973 Patent at claim 1.  Dr. Navratil explained this requirement in detail during his direct examination.  Trial Tr. at 1279:4-1285:16.  Specifically, Dr. Navratil explained that Redfin does not practice this requirement because it never generates a model of a particular space based on receiving a selected viewpoint.  *Id.*  Instead, the Matterport 3D tour always generates a full 3D reconstruction before the user ever views or interacts with the 3D

tour.  *Id.*  And Dr. Melendez never provided testimony to the contrary.  Indeed, Dr. Melendez confusingly testified that, while the rendering is occurring "[a]t the Redfin's customer's computer," 545:10-14, one would never see the point cloud.  Trial Tr. at 504:16-20.  Dr. Melendez's testimony confirms that in the Matterport system, these steps occur prior to user selection and instead occur on Matterport's back-end servers.

### F.    Surefield Presented Insufficient Evidence of Infringement by Single-Story Properties

All of the asserted claims of the Asserted Patents require a "label" or "first label."  This label or first label identified by Surefield—a floor-level label—simply does not exist in single-story homes.  Surefield has thus failed to present any evidence that single-story homes infringe any claims of the Asserted Patents.  Dr. Melendez pointed to the "floor label" in the model.  *See* Trial Tr. at 546:13–19.  He explained that "the first label, remember, in my example was the floor label."  *Id.* at 597:5–9.  To describe a "floor label," Dr. Melendez stated that it is the "Floor 1 and Floor 2" label. *Id.* at 587:1–3.  He pointed to no other evidence during his direct examination as to what might meet this limitation.  When asked on cross examination if he presented any evidence of a "floor label" in a single-story home, he said that he "wasn't allowed to show that," even though he had already shown one in his expert report.  *Id.* at 663:20–664:5.  When asked whether, "[f]or single story homes that Matterport does, they do not display that floor selector in single story homes, true or false," Dr. Melendez responded that it was "true."  *Id.* at 666:2–5.  Although Dr. Melendez attempted to change what he was pointing to as the "first label" in cross examination, he did so by hinting at a theory that he had not raised in his direct examination, and that had not been previously disclosed in his expert report or the infringement contentions.  Even assuming this testimony could be relied on, the newly raised theory is not sufficient evidence for a jury to conclude that single-story homes have the same floor-level indicator that Dr. Melendez testified was required to satisfy the relevant

limitations of the claims.  Accordingly, all single-story homes should be excluded from any damages calculation.

### G.      Surefield Failed to Provide Sufficient Evidence that the Claimed Method Steps Have Been Actually Performed or that Anyone has Actually Used the Claimed Systems

"To infringe a method claim, a person must have practiced all steps of the claimed method." *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1317 (Fed. Cir. 2009) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) and 35 U.S.C. § 271 (2006)). "Infringement occurs only when someone performs the method using a computer running the necessary software." *Id.*  Surefield asserts 4 method claims: claims 1 and 2 of the '673 patent and claims 18 and 22 of the '111 patent.  All of these claims require "rendering a virtual model of a selected space."  Surefield's expert, Dr. Melendez, testified that the "rendering" of the claims occurs "[a]t the Redfin customer's computer."  Trial Tr. at 545:10-14.  With respect to the Redfin listed properties alleged to be the subject of infringement of the asserted method claims, Surefield presented evidence that Redfin included the accused "3D Walkthrough" as a "button to make finding a virtual walkthrough or 3D tour . . . more prominent" for its listings.  Trial Tr. 474:13-22. However, making the "3D Walkthrough" feature available alone is not evidence that anyone actually accessed the "3D Walkthrough" for any of the Redfin listings.  Aside from Surefield's own expert, Dr. Melendez, Surefield presented no evidence of any actual end-user pressing any 3D Walkthrough button on the Redfin website or app for any of the Redfin listings.   Absent evidence that anyone ever actually accessed a 3D Walkthrough for any one property, Surefield lacks evidence that the "rendering a virtual model of a selected space" that is required by all the method claims has been actually performed by any "Redfin customer's computer."  Accordingly, there is no evidence of actual infringement of the asserted method claims.

Similarly, the system claims asserted by Surefield for the '885 patent, claims 1, 3, and 9, require "a processor implementing program commands . . . wherein the program commands cause the processor to . . . visually present the virtual model." These claims require that a processor actually implement program commands that visually present a virtual model. Dr. Melendez testified that visually presenting involves "click[ing] on 3D Walkthrough and now we're moving around the Redfin tour, and we're seeing the visually presenting of this image-based rendering . . . ." Trial Tr. at 578:5-12. However, Surefield presented no evidence of any end user actually clicking on the 3D Walkthrough for any Redfin listing. Thus, Surefield lacks any evidence of the claimed processor implementing program commands . . . [that] cause the processor to visually present a virtual model as required by the system claims of the '885 patent.

Claim 10 of the '673 patent similarly requires "a memory storing non-transitory program commands, which, when executed by the processor, cause the processor to . . . render a virtual model of a selected space." For the reasons explained above, Surefield lacks evidence of any memory storing such program commands that when executed by the cause the processor to render a virtual model of a selected space. As Dr. Melendez testified, the "rendering" occurs "[a]t the Redfin customer's computer." Trial Tr. at 545:10-14. Absent any evidence of an end user actually accessing any 3D Walkthrough, Surefield lacks evidence of the claimed memory storing the rendering program commands.

Lastly, system claims 4 and 17 of the '973 patent require "[a] computer-readable memory medium containing program commands for controlling a computer processor, when executed, to provide image-based rendering of a real property, by performing a method comprising . . . generating and rendering a virtual model of a current space"). For the same reasons explained above, absent evidence of any end user actually accessing a 3D Walkthrough, Surefield lacks

evidence of any such memory containing commands that when executed perform the claimed rendering alleged to occur "[a]t the Redfin customer's computer."

## II.   THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW THAT REDFIN DOES NOT INDIRECTLY INFRINGE

Surefield alleges that Redfin is liable for indirect infringement because it actively induces third-party Matterport to infringe the asserted patent.  Liability for inducing infringement requires proof that:

1)  Matterport directly infringed the asserted claims;

2)  Redfin intentionally took action to cause Matterport to directly infringe the asserted claims; and

3)  Redfin was aware of the asserted patent and knew that the acts, if taken would constitute infringement of the asserted patents.

*See DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006); 35 U.S.C. § 271(b).

### A.   Surefield Failed to Present Sufficient Evidence that Matterport Directly Infringed the Asserted Claims

#### a.   Surefield Did Not Present Evidence that Matterport Meets the "Parcel Outline" Limitations of the Asserted Claims ('885, '111, and '973 patents)

The asserted claims of the '885, '111, and '973 patent all include the requirement of a "parcel outline."  *See* '885 patent, claim 1; '111 patent, claim 18; '973 patent, claim 1.  Throughout trial, the only thing Surefield pointed to as the required "parcel outline" is Redfin source code that draws property lines that Redfin receives from another third-party company (Digimap) on the Google map displayed on the Redfin.com website.  *See* Trial Tr. at 590:7-591:7 (identifying Redfin source code); 606:21-607:19 (identifying Redfin source code); 677:15-678:10; 703:23-705:2

(identifying Redfin code that represents the parcel bounds on redfin.com); *see also* Trial Tr. at 721:1-722:4.

In fact, Dr. Melendez testified that he did not identify Matterport as using parcel data from Digimap to draw what he alleges it the "parcel outline" required by the asserted claims.  Trial Tr at 677:9–678:10.  And the undisputed evidence presented at trial shows that Matterport has no notion of property lines in its system, and thus cannot meet the "parcel outline" requirements.  Trial Tr. at 1061:16–21; 1121:24–1122:4; 1214:25–1215:21; 1221:12–22; 1263:5–1264:20.

Thus, no reasonable jury could find that Matterport directly infringes the asserted claims of the '885, '111, and '973 patents.

### b.  Surefield Did Not Present Evidence that Matterport Meets the "Causing a Device to Display" or "Visually Presenting" a Virtual Model Requirements of the Asserted Claims ('885, '673, '111, and '973 patents)

Each of the asserted claims requires either causing a device to display or visually presenting a virtual model.  *See* '885 patent, claim 1 ("visually present"); '673 patent, claims 1 & 10 ("causing/cause a device to display"); '111 patent, claim 18 ("causing a device to display"); '973 patent, claim 1 ("visually presenting").

Specifically, the asserted method claims require "causing a device to display" the virtual model.  '673 patent, claim 10 ("causing a device to display"); '111 patent, claim 18 ("causing a device to display").  Surefield has failed to present any evidence that Matterport performs the step of "causing a device to display."  The only thing Surefield points to for these requirements is an end-user "causing a device" to display the model when he or she views the model on the end-user's computer.  *See* Trial Tr. at 512:21-513:5; 518:16-519:22; 544:23-546:7; 553:3-23.  Likewise for the system and computer-readable memory medium claims, Surefield also points to the user computer as the processor with program commands that "visually present" or "cause a device to display" the

virtual model.  *See* '885 patent, claim 1 ("visually present"); '673 patent, claim  10 ("cause a device to display");'973 patent, claim 1 ("visually presenting").  *See* Trial Tr. at 577:24-578:23.  Surefield did not present any evidence of a Matterport processor with program commands that "visually present" or "cause a device to display" the virtual model.  As such, no reasonable jury can find that Matterport directly infringes the asserted claims.

> **B.      Surefield Failed to Present Evidence that Redfin Induced Matterport to Take Action It Knew Would Constitute Infringement of the Asserted Patents**

To prove inducement, Surefield must show that whatever it is that Redfin induced Matterport to do, Redfin knew it would constitute infringement of the asserted patents.  During trial, the only thing Surefield points to is the contractual customer relationship between Redfin and Matterport.  There was, however, no presentation of evidence or even suggestion that Redfin knew hiring Matterport to provide 3D virtual tours would infringe the asserted patents.  Indeed, Redfin asked Surefield to identify what it alleged to infringe, but Surefield never provided a response.  Trial Tr. at 261:8-262:17, 1003:21-1005:11.

## III.     THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW THAT REDFIN DID NOT WILLFULLY INFRINGE

Liability for willful infringement requires specific intent: it depends on a defendant's *subjective* awareness that it is infringing a valid patent.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) ("the accused infringer [must have] specific intent to infringe at the time of the challenged conduct").  Moreover, knowledge of the patents is "necessary, but not sufficient" for willfulness.  *Id.* at 988. Willfulness is reserved for "egregious cases of misconduct beyond typical infringement" and are *not* to be awarded "in garden-variety cases."  *Halo*, 136 S. Ct. at 1935.

Surefield did not present a sufficient willful infringement case to the jury.  First, Surefield did not present any evidence that could reasonably allow a jury to conclude that Redfin believed, or should have believed, that it infringed Surefield's patents.  Though Surefield put Redfin on notice of its pending patent applications, Redfin elicited testimony that it was working with a company that it knew to have pre-dated those patents, and so had no reason to believe that it could possibly infringe Surefield's patents.  *See e.g.*, Trial Tr. at 735:1-8 (Mr. Kelman explaining that from his point of view Surefield was "way behind Matterport"); 968:7-12 (Mr. Wiener explaining that Redfin had been working with Matterport for years before Surefield's patents were filed); 969:3-10 (Mr. Wiener explaining that Redfin was "already working with Matterport and [they] had a technology solution that [it] believed was better.").  No reasonable jury could find that Defendants had the intent necessary to infringe the patents willfully.

Surefield also failed to present evidence that any alleged post-suit infringement was "wanton," "malicious," and beyond "garden variety" infringement.  *Halo*, 136 S. Ct. at 1935-36; *Bayer*, 989 F.3d at 987.  Matterport, from whom Redfin purchases the accused technology, developed and released the accused products *years before* the asserted patents were filed, and the lawsuit was filed.  *See* Tr. Tr. at 1015:22-1016:4.  Merely continuing to produce and sell the accused products after the lawsuit was filed does not establish willfulness.  *See Intell. Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) (finding no willfulness as a matter of law).

## IV.     THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW WITH RESPECT TO SUREFIELD'S DAMAGES

Surefield failed to meet its burden to establish reasonable royalty damages.  *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (reversing denial of JMOL).  The patentee must sufficiently tie any damages opinion to the facts of the case.  *Uniloc USA, Inc. v. Microsoft Corp.*,

13

632 F.3d 1292, 1315 (Fed. Cir. 2011).  Royalty rates that are arbitrary and "unrelated to the facts of [the] case" are unreliable and cannot support an award.  *Id*. at 1318.

### A.      Surefield's Expert Violated the Entire Market Value Rule

Surefield's expert, Mr. Benoit, relied upon a damages theory that started with Redfin's entire home-sales revenue before allegedly apportioning down to the claimed value driven by the accused 3D virtual tour product—which Surefield admits is the SSPPU in this case.   Indeed, Mr. Benoit admitted that it was the "Matterport 3D virtual tours" that Surefield claimed "use the Surefield patents."  Trial Tr. at 843:6-9.  Accordingly, under the law, Mr. Benoit was required to start his damages assessment from the SSPPU, here the value of the 3D virtual tours.  Because Mr. Benoit instead started with the entire value of Redfin's home-sales revenue, as opposed to the value of the SSPPU, without providing any testimony or evidence establishing that the entire market value rule (EMVR) is met, Surefield is in violation of the EMVR.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).  Specifically, Mr. Benoit explained to the jury that, instead of starting with the SSPPU, he "took the revenue derived from" the use of the virtual tours, which is nearly all of Redfin's total revenues, and then figured out how the parties would reach an agreement from that.  *Id.* at 779:23–789:14.  More so, Mr. Benoit did not present any evidence that the demand for the patented features drives the demand for Redfin's entire market sales as required to meet the EMVR.  Accordingly, Mr. Benoit erred by not starting his assessment with the value of the SSPPU and by failing to meet the requirement of EMVR.

### B.      Surefield's Expert Failed to Apportion Damages to the Accused Technology

Surefield failed to adduce any evidence that the asserted patents are the basis for, or even contribute to, demand for the accused products.  The "royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."  *Ericsson, Inc. v. D-*

*Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  And they must also account for the value of inventive elements in the claims relative to conventional elements.  *Id*.  In the *Finalrod* case, this Court set forth *exactly* what is required: the technical expert must "do the hard work . . . to explain the value of the patented feature" relative to the other features in the overall product, "and then, the damages expert takes from what the technical expert said and says, based on that, I'm able to do this with respect to apportionment."  *Finalrod IP, LLC v. John Crane, Inc*., No. 15-CA-097-ADA, Dkt. 372 at 12:5-24.  Mr. Benoit did not do that in this case.

Mr. Benoit admitted that although it was required that a technical expert inform him regarding the value of the patents to 3D virtual tours, no technical expert provided him that information; indeed, he admitted that no technical expert testified as to that information to the jury. Trial Tr. at 861:15-19; 864:14-25.  He also admitted that the accused devices have many non-patented features, but that he did not account for those features in his damages analysis.  *Id.* at 866:12–16 (Mr. Benoit agreeing that it was his position "that it was perfectly acceptable for [him] to value and use as a starting point the entirety of the 3D virtual tour").  To the contrary, Mr. Benoit took the position that he did not need to apportion for those prior art elements.  *Id.* at 863:19–25.  Because Mr. Benoit performed no apportionment, his opinion violates Federal Circuit law and the Court should enter judgment of no damages.  *See LaserDynamics*, 694 F.3d at 70 (damages verdict could not be sustained where damages expert failed to apportion to the value of the patented feature); *see also Ericsson,* 773 F.3d at 1226.

### C.     Surefield Used an Incorrect Hypothetical Negotiation Date

The hypothetical negotiation occurs on the date of first alleged infringement.  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  Here, because the infringement of the '673, '111, and '973 patents was not possible until the date each patent issued, the date of first alleged infringement for each patent should be the date each patent issued.  Mr. Benoit, however,

15

only considered a single date for the hypothetical negotiation—December 5, 2017, which is the date of issuance for the '885 Patent.  *See* Trial Tr. at 760:23–761:2.  Because the other three asserted patents issued after the '885 Patent, Mr. Benoit relied on an incorrect hypothetical negotiation date with respect to those patents.  This Court should thus enter judgment as a matter of law with respect to damages on the '673, '111, and '973 patents.

### D.    Surefield is Not Entitled to Damages on Single-Story Models

For the reasons described above in section II.D, Surefield did not present sufficient evidence that it is entitled to damages on single-story models.  Accordingly, judgment as a matter of law should be entered with respect to damages on those accused houses, which accounts for over sixty percent of the requested damages.  Because Mr. Benoit did not provide a theory that separated the single-story and multi-story models, there is no number that could be reasonably relied upon by the jury and, as such, judgment as a matter of law should be granted to preclude damages.

## V.    THIS COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW THAT THE ASSERTED PATENTS ARE INVALID

Surefield presented insufficient evidence to meet its burden to rebut Redfin's evidence that the claims of the Asserted Patents are invalid.

### A.    The Evidence Related to Google Street View Indoors Presented by Redfin Requires the Finding by the Jury that the Claims Are Anticipated by Google Street View Indoors.

A patent claim is anticipated when if a single prior art reference, such as a system, expressly or inherently discloses every limitation of the claim.  *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1252 (Fed. Cir. 2014).  Redfin presented overwhelming evidence, including testimony from Dr. Navratil and a string of exhibits, indicating that the asserted claims of the Asserted Patents are anticipated.  *See* Trial Tr. at 1307:7–1415:18.  As a particular example, Redfin

identified the Google Street View System as an anticipating reference, and repeatedly explained why the system meets the elements of the claim. *See e.g.,* Trial Tr. at 1319:16–1415:3. For example, Dr. Navratil explained how each of the asserted claims are anticipated as follows:

- Claim 1 of the '885 Patent – Trial Tr. at 1362:4–1377:3

- Claim 3 of the '885 Patent – Trial Tr. at 1377:4–1379:17

- Claim 9 of the '885 Patent – Trial Tr. at 1379:18–1380:18

- Claim 1 of the '673 Patent – Trial Tr. at 1380:19–1393:21

- Claim 2 of the '673 Patent – Trial Tr. at 1394:5–1395:2

- Claim 10 of the '673 Patent – Trial Tr. at 1393:22–1394:4

- Claim 18 of the '111 Patent – Trial Tr. at 1395:3–1401:8

- Claim 22 of the '111 Patent – Trial Tr. at 1401:9–1411:17

- Claim 4 of the '973 Patent – Trial Tr. at 1411:18–1413:1

- Claim 17 of the '973 Patent – Trial Tr. at 1413:2–1415:3

To the contrary, Dr. Melendez failed to present sufficient evidence on every single element of the claims of the Asserted Patents. Although Dr. Melendez purported to point to evidence that prior art does not teach the limitation requiring a determination of a geometric proxy for the selected viewpoint using the determined camera geometry and the point cloud, the evidence he points to is insufficient. Any other purported evidence he points to is equally unavailing.

Accordingly, the evidence presented by Redfin requires the finding that the claims are anticipated by Google Street View Indoors.

**B.      The Evidence Presented by Redfin Related to the Google Street View Indoor System Requires the Finding that the System Meets Every**

**Limitation of the Claims and, to the Extent a Limitation is Not Met, It Would Have Been Obvious to Incorporate Said Limitation.**

A patent is invalid for obviousness "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103(a).  For much of the same reasons discussed with regards to anticipation, a reasonable juror could not have arrived at a conclusion other than that the Google Street View System obviates the asserted claims in this case.  Indeed, looking to the same cites as recited above in the anticipation section, Dr. Navratil explained at great length how each element was met, and to the extent any element was not met, how it would have been obvious to incorporate.  Though Dr. Melendez attempts to point to evidence to the contrary, that evidence is insufficient.

The record also lacks evidence of secondary considerations of non-obviousness sufficient to overcome the evidence of obviousness based on primary factors discussed above.  *See Weyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (reversing denial of obviousness JMOL where defendants presented strong evidence of primary considerations and "the secondary considerations [presented by plaintiff were] inadequate to establish nonobviousness as a matter of law"); *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("weak secondary considerations generally do not overcome a strong prima facie case of obviousness").  Regarding the factors, Surefield either entirely failed to put forth evidence or its evidence was insufficient to meet the requirements of the factors and the required nexus.  For example, with regards to commercial success, Surefield entirely failed to point to evidence that there was commercial success associated with their use of the patents.  To the contrary, testimony was elicited that Surefield had absolutely no commercial success.  *See, e.g.*, Trial Tr. at 279:22–281:18.  Likewise, Surefield's evidence of

copying was wholly insufficient, pointing only to tertiary emails and third-party articles that were untethered to any copying allegations. *C.f.*, Trial Tr. at 351:13–23 (Mr. Eraker testifying that Surefield followed Matterport). Accordingly, judgment as a matter of law should be granted with respect to invalidity.

Dated: May 17, 2022

*/s/ M. Scott Stevens*
Ryan J. Marton (Admitted *Pro Hac Vice*)
Hector J. Ribera (Admitted *Pro Hac Vice*)
Carolyn Chang (Admitted *Pro Hac Vice*)
Phillip Haack (Admitted *Pro Hac Vice*)
**MARTON RIBERA SCHUMANN
& CHANG LLP**
548 Market St. Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2515

Darryl Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
**SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave., Ste. 1650
Austin, Texas 78701
Telephone: (512) 402-3550

Benjamin J. Byer (Admitted *Pro Hac Vice*)
benbyer@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8105

M. Scott Stevens (NC Bar # 37828)
Karlee N. Wroblewski (NC Bar # 55043)
Nicholas C. Marais (NC Bar # 53533)
**ALSTON & BIRD LLP**
One South at the Plaza
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone: 704.444.1000

Deron R. Dacus (Texas Bar No. 00790553)

19

**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1171

***COUNSEL FOR DEFENDANT***
***REDFIN CORP.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 17, 2022 , all counsel of record who are deemed to have consented the electronic service are being served with a copy of this Document via email.

Dated:  May 17, 2022

*/s/ M. Scott Stevens*
Scott Stevens