# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| APPLIANCE COMPUTING III, INC. | § | |
| d/b/a SUREFIELD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:20-cv-00376-ADA |
| | § | |
| REDFIN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## <u>PRELIMINARY CHARGE</u>

## TABLE OF CONTENTS

INSTRUCTIONS FOR BEGINNING OF TRIAL.... **ERROR! BOOKMARK NOT DEFINED.**

PRELIMINARY INSTRUCTIONS  ........................ **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 1:        PRELIMINARY INSTRUCTION TO JURY .......**ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 2:        THE PATENTS AND THE PARTIES.................**ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 3:        UNITED STATES PATENTS OVERVIEW [UNLESS PREVIOUSLY PLAYED] ........................ **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 4:        WHAT A PATENT IS AND HOW ONE IS OBTAINED ........................ **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 5:        PATENT—CLAIM TYPE  **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 6:        PATENT LITIGATION—GENERAL.................**ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 7:        CLAIM CONSTRUCTION**ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 8:        PARTY CONTENTIONS AND OVERVIEW OF APPLICABLE LAW ........................ **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 9:        OUTLINE OF TRIAL ....... **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 10:       EVIDENCE.... **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 11:       WITNESSES.. **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 12:       DEPOSITION TESTIMONY AND TESTIMONY BY VIDEO ........................ **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 13:       EXPERT TESTIMONY .... **ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 14:       STIPULATIONS OF FACT........**ERROR! BOOKMARK NOT DEFINED.**

JURY INSTRUCTION NO. 15:     JUROR NOTEBOOKS...... **ERROR! BOOKMARK NOT DEFINED.**

**INSTRUCTIONS FOR BEGINNING OF TRIAL**

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules.

Failure to follow these instructions could result in the case having to be retried.

## PRELIMINARY INSTRUCTIONS

**JURY INSTRUCTION NO. 1:      PRELIMINARY INSTRUCTION TO JURY**

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your notetaking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony and evidence.

Until this trial is over, do not discuss this case with anyone.  Do not permit anyone to discuss it with you or in your presence. This includes everyone you know: your spouse, children, relatives, friends, coworkers, and anyone that you deal with during the day.

During your jury service, you may not communicate any information about this case by any means or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, LinkedIn, Snapchat, Instagram, or Twitter, or any other way to communicate.

You may not communicate to anyone any information about this case until you have given me your verdict in this case.

Do not even discuss this case amongst yourselves or with other jurors until the end of the case when all of the evidence is in and I release you to begin to deliberate. It is unfair to discuss the case before then, as you must never become an advocate for one side or the other.

4

The parties, the witnesses, the attorneys, and everyone associated with the case are not permitted to communicate with you at any time. They know the rules of this Court.  So don't think they are being impolite or unfriendly if you should happen to see them in the halls, as they are not even permitted to tell you hello.  Do not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Because we live in the era with the Internet, I must instruct you, do not conduct any independent investigation of this case. You must make your decision on your verdict exclusively from what you see and hear within this courtroom. Do not try to obtain information from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online.  Do not read any newspaper account of this trial or listen to any radio or television newscast about it in any format. Do not visit or view any place discussed in this case.  Do not use Internet programs or other devices to search for or to view any place discussed. In sum, you may not research any information about this case, the law, or any of the people involved, including the parties, the witnesses, the lawyers, or me, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and so they are properly dealt with outside of your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. It doesn't have anything to do with the merits of the trial anyway.  If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

Do not consider the fact that either I permit a conference to happen or I do not, or the fact that we had a conference, to influence you in any way about how I might feel about this case. In fact, do not let anything I do or say from now through the end of the trial when I give you permission to begin deliberating, nothing I say to anyone in court should give you any indication about how I feel about the case. You are the judges of the facts. My opinion does not matter at all.

Finally, keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

**JURY INSTRUCTION NO. 2:       THE PATENTS AND THE PARTIES**

Now let me explain to you about the parties and the nature of this case.  This is a patent case.  The patents involved in this case generally relate to creating and presenting certain 3D models of real estate property and additional information about the property.  That will be explained in much greater detail by the witnesses, and the opening statements you hear before you hear from the witnesses and the closing arguments that you will hear after the witnesses.

The plaintiff is seated at the table closest to you.  They are Appliance Computing III, Inc. d/b/a Surefield.  They will probably be referred to throughout the trial as Surefield for short. Surefield is the owner of the four patents in this case, which are identified as:

- U.S. Patent No. 9,836,885, which may be called the '885 Patent;
- U.S. Patent No. 10,102,673, which may be called the '673 Patent;
- U.S. Patent No. 10,510,111, which may be called the '111 Patent; and
- U.S. Patent No. 10,592,973, which may be called the '973 Patent.

These patents may also be referred to as the "Surefield Patents" or the "asserted patents."  You will hear evidence related to each of these four patents.

The defendant is seated a little bit further over to my left, and that company is Redfin Corporation, or Redfin for short.

**JURY INSTRUCTION NO. 3:      UNITED STATES PATENTS OVERVIEW [UNLESS PREVIOUSLY PLAYED]**

I will now play a short video for you to give you an overview of patents and the patent system in the United States.  [**Play Federal Judicial Center Patent Video.]

**JURY INSTRUCTION NO. 4:      WHAT A PATENT IS AND HOW ONE IS OBTAINED**

Let me visit with you about patents and the United States patent system generally.  You saw some of this on the video.

A patent is a type of property right.  Patents in the United States are issued or granted by the United States Patent and Trademark Office.  You might hear them referred to during trial as the PTO or USPTO. The United States Government is empowered by the United States Constitution to enact patent laws and issue patents to protect inventions.

During the trial, the parties will probably offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a very general background.

To obtain a patent, an application for the patent must be filed with the PTO by an applicant or an inventor. The application includes what is known as a specification.  The specification includes a written description of the invention, how it works, and how to make and use it to enable others skilled in the art to do so.

The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims themselves is to particularly identify what the claimed invention is and to define the scope of the patent owner's exclusive rights under each of these patents.

After an application for a patent is filed with the PTO, the application is taken and reviewed by a person who has the title of Patent Examiner. A Patent Examiner is a person who is, generally speaking, trained in a specific technological area. The Patent Examiner reviews (or, another way of saying "review" in the patent world is "examines") the patent application to determine whether or not the claims that the applicant has provided to the PTO are patentable and whether or not the specification that was included adequately describes what the claimed invention is.

When the Patent Examiner examines the patent application, the Patent Examiner searches records available to the Patent Office to find what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

Generally speaking, prior art is previously existing technical information and knowledge which Patent Examiners consider to determine whether or not the claims in the application are patentable. The Patent Examiner considers, among many things, whether each claim defines an invention that is new, useful, and that is not obvious based on what had come before it, which is called the prior art.

Following the prior art search and examination of the application, the Patent Examiner tells the applicant in writing what the Patent Examiner has found and whether or not the Examiner believes each claim is patentable—in other words, whether the patent claim will be "allowed."

The Patent Examiner can decide to accept or reject one or more of the proposed claims that have been provided by the applicant (or the person seeking the patent). If the Patent Examiner decided to reject a claim, the applicant then responds to what is called the Office Action.  The applicant can cancel claims, change the claims, submit new claims, or make other arguments to get around or to overcome a rejection. In other words, it is a negotiation.  This process can go back and forth between the Patent Examiner and the applicant for months or even years until the Patent Examiner is satisfied with the application and decided the claims are patentable.  At that point, upon payment of an issue fee by the applicant, the Patent Office or PTO then "issues" or "grants" a patent with the claims the examiner and the Patent Office have allowed.

The act of this negotiation or communication is called the prosecution of the patent.  And the collection of papers from that negotiation—the back and forth that is generated by the Patent Examiner and the applicant during this time—is called the "prosecution history." It may also be

referred to as the "file history" or the "file wrapper."  The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Redfin has proven that the patent is invalid.

**JURY INSTRUCTION NO. 5:      PATENT—CLAIM TYPE**

A claim in a patent may be characterized as an "independent claim" or a "dependent claim." An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, some of the asserted claims are independent claims.

A dependent claim does not itself recite all of the requirements of the claim.  It refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. In this case, some of the asserted claims are dependent claims.

A claim in a patent may also be characterized as a "system claim" a "computer readable medium claim" or a "method claim."  System claims are directed to a product, device, system, or apparatus. Computer readable medium claims are directed to a computer program, software, or set of computer instruction on one or more computers that enables the computer(s) to perform certain processes or functions.  Method claims are directed to a process or series of acts or steps.

This will all become clearer as the trial progresses, but this is a good starting place to help you understand some of the basic elements of a patent and some of the basic language and nomenclature.

**JURY INSTRUCTION NO. 6:      PATENT LITIGATION—GENERAL**

A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States without the patent holder's permission.

A violation of someone's patent rights is called patent infringement.   During the term of the patent, if another person or company, without permission from the patent owner, begins to import, make, use, offer to sell, or actually sell the claimed inventions, then that person or company is said to infringe the patent claim.   A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, in an effort to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact

13

must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

The patent owner must prove infringement of a claim of the patent by a preponderance of the evidence.

A party accused of infringing a patent may prove that the asserted claims of the patent are invalid.  Invalidity is a defense to patent infringement. A patent is presumed to be valid.  The presumption of validity can be overcome if clear and convincing evidence is presented in Court that proves the patent is invalid.

**JURY INSTRUCTION NO. 7:      CLAIM CONSTRUCTION**

In deciding whether or not an accused product or method infringes a patent or whether a patent is invalid, the first step is to understand the meaning of the words used in the patent claim. It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.   You must accept the meanings I give you and use them when you decide whether or not a patent claim is infringed.

In your notebook, you are provided with this Court's definitions for certain terms in the asserted claims of the patents at issue here.  These are also called claim constructions.  You must use these definitions when you decide the issue of infringement.

The definitions were determined by me in a process that occurred prior to this trial.  Each of the asserted claims of the patent has certain words that needed to be defined because the attorneys disagreed on their meaning. The attorneys asked me to define these words from the claims, and I have done that.  Those are the definitions in your notebooks.

Now, the attorneys will do a good job of explaining the claims and my constructions when they get into the evidence, but you just need to know for now that those definitions are there in your notebook and that they relate to these claim terms.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning of that term in the field of the patent.

**JURY INSTRUCTION NO. 8:      PARTY CONTENTIONS AND OVERVIEW OF APPLICABLE LAW**

I will now briefly explain the parties' basic contentions.  During the trial, I anticipate that the parties will offer the testimony of witnesses who will familiarize you with the issues you will be asked to decide.

Surefield contends that Redfin infringes the following claims of the asserted patents:

- Claims 1, 3, 9 of the '885 Patent;

- Claims 1, 2, 10 of the '673 Patent;

- Claims 18, 22 of the '111 Patent; and

- Claims 4, 17 of the '973 Patent.

These claims may be collectively referred to as the "Surefield Patent Claims" or the "asserted claims."  Although I, as the Court, and the parties may refer to the claims collectively, you will be asked to conduct your infringement and invalidity analysis as to each claim individually.

I will instruct you later as to the ways in which a patent claim may be infringed. In general, however, a patent claim is infringed if a product or process includes every element or performs every step of the patent claim.

Redfin denies that it has infringed any claim of the Surefield Patents.  Redfin also contends that each of the asserted claims of the Surefield Patents is invalid.   I will instruct you later as to the ways in which a patent claim may be invalid.  In general, however, a patent claim is invalid if it is not new or is obvious in view of the state of the art at the relevant time.

Both infringement and invalidity must be determined on a claim-by-claim basis.

Your job will be to decide whether or not the asserted claims have been infringed and whether or not those claims are invalid. If you find that the asserted claims are not infringed or

16

that the claims are invalid, you do not need to do anything more.  If you decide that one or more asserted claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Surefield to compensate it for the infringement. A damages award should put Surefield in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Surefield would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Surefield and not to punish Redfin. I will give you more detailed instructions on the meaning of a reasonable royalty and the calculation of damages at the conclusion of the case.

**JURY INSTRUCTION NO. 9:       OUTLINE OF TRIAL**

Now I'm going tell you what you can expect basically during the course of the trial.

First, the parties will each make opening statements.   The opening statement is not evidence.   If I were to tell you to leave at the end of the opening statements, you could not deliberate.   You would have heard no evidence.   It is just an opportunity for the lawyers to explain what they anticipate the evidence will be.   It will always be entirely and exclusively up to you to determine whether the evidence—that is, the testimony of the witnesses and any documents or exhibits that are admitted—support what the attorneys tell you in their opening statements.

After the opening statements, Surefield as the plaintiff will present evidence in support of its contention that the asserted claims have been infringed by Redfin, directly and indirectly.   They also, I anticipate, will argue that the infringement has been willful.

After Surefield concludes, Redfin will put on its case, if it chooses to, to present evidence that responds or rebuts Surefield's evidence of any infringement and willfulness.   I say "if it chooses to" because it is Surefield who has the burden of proof in this case for infringement.   Redfin may also then present its evidence in support of its contention that one or more claims of the asserted patents are invalid.   To do that, they will have to put on additional evidence because Redfin has the burden of proof on invalidity.   After Redfin finishes, then Surefield may then put get to put on additional evidence, if it chooses to, responding to any evidence that Redfin has offered regarding invalidity and to offer any additional evidence that is relevant for your consideration.   We call this rebuttal evidence.   Again, I say "if it chooses to" with respect to Surefield responding to Redfin's claim of invalidity because, in the same way Surefield has the exclusive burden on infringement, Redfin has the exclusive burden on invalidity.   Surefield's rebuttal evidence is done only to respond to evidence offered by Redfin.

Both parties may also choose to present evidence of damages or the amount of money, if any, that Surefield is owed if any of the asserted claims of the Surefield Patents is determined by you to be infringed and not invalid.

After the parties have finished offering evidence, the attorneys will make closing arguments, which again are not evidence but an outline and summary of the evidence and what each side believes the evidence shows.

Then I will give you final instructions on the law that will apply to this case.  And finally I will release you and you will begin your deliberations.

**JURY INSTRUCTION NO. 10:      EVIDENCE**

The evidence you are to consider consists of the following: Witness testimony that will come primarily through the witness stand, but there's the possibility that you will also see some evidence presented to you by video.  There will also be evidence admitted by documents and exhibits.  There may also be facts that the parties agree to or stipulate to.  Additionally, any fair inferences or reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

There are two types of evidence.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, which is the type of evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence.  It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial, or any combination.

You must consider all the evidence, direct and circumstantial.  That does not mean you have to believe or accept all of the evidence you receive in this case.  It is entirely and exclusively up to you to decide how much weight or credibility to give to any of it.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear and how much of any witness's testimony you choose to accept or reject.

Here are some examples of what is not evidence.  The statements and arguments by the attorneys are not evidence.  During the examinations from the podium, the questions the lawyers ask are not evidence.

Objections to questions are not evidence.  The attorneys that are seated in front of you may object if they believe that documents or testimony that one side or the other's trying to get admitted are improper, and I make that decision.  I am exclusively just an umpire.  I am not here to decide

facts.  I am here to rule on issues of law, and in this case an example of those is if one side or the other makes an objection, then I have to rule on it.  But you should never ever be influenced by how I rule.  You should never be influenced by my ruling on any objection.

If I sustain an objection, which means I find it well taken, then pretend the question was never asked.  If there was an answer given, ignore it.  On the other hand, if an objection is made and I say "overruled," then it is like the objection was never made.  Ignore it.  Just listen to the answer and give it whatever weight you think is appropriate.

If I give you instructions that some item of evidence is received only for a limited purpose, follow my instructions and do so.

If I give a limiting instruction during the trial, I will make sure to clarify it for you at the time as to what I mean.  If I tell you that you should exclude or disregard something because it is not evidence, then you must disregard it and not consider it.

I anticipate that during this trial you will see a lot of evidence.  You may be shown charts, animations, videos, or other physical exhibits that are going to be in an effort to illustrate the testimony of witnesses.  These are called demonstrative exhibits.  They are not evidence unless I specifically admit them into evidence.  Which means, you will not have access to it when you are deliberating and so pay attention during the course of trial.

Anything you have heard outside of this courtroom, for example, anything you might know about Surefield or Redfin is not evidence and needs to be ignored.  You are to decide the case solely on the evidence that is presented here in the courtroom during this case and nothing else.

**JURY INSTRUCTION NO. 11:     WITNESSES**

In weighing the testimony of witnesses you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of their testimony considered in the light of circumstances.

Has the witness been contradicted by other credible evidence? Have they made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves. Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

These are just guideposts.  You alone determine the questions of credibility or truthfulness of the witnesses.

You are not to decide this case by counting the number of witnesses who have testified for the opposing sides. You weigh the testimony, not the number of witnesses.  There is no test for relative number of witnesses.  It is the relative convincing force of the evidence throughout the trial.  For example, the testimony of a single witness for one side is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, only after you have considered all the evidence.

In determining the weight to give to the testimony of a witness, ask yourself: did the witness say or do something or fail to say or do something that was at odds with the testimony given at trial? But remember, people make mistakes.  We're people.  A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. We forget things. We remember things inaccurately.

If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with something important or unimportant. But again, this is just a guidepost.  It is exclusively in your province whether or not you believe a witness is telling the truth.

**JURY INSTRUCTION NO. 12:      DEPOSITION TESTIMONY AND TESTIMONY BY VIDEO**

The parties may present the testimony of a witness by having the testimony live for you, by videoconference, or by reading from the deposition transcript. They also may play a videotape of a witness's deposition testimony. All forms are acceptable. You will only hear testimony from a witness where the witness is or was under oath.  A deposition—either read from a transcript or played on videotape—is simply the sworn testimony of a witness taken before trial. It is entitled to the same consideration of any witness who appears at trial. In addition, some of the video recordings of witnesses you see may be of lower quality because the witnesses had their depositions taken from home. This was due to COVID-19 restrictions in place at the time and in the location where the witness was located. You should not hold the quality of the video, the location of the witness, or any other circumstances arising from COVID-19 restrictions against either party.

That being said, it is exclusively in your province to believe every word that any witness says, to disregard anything they say or do, whatever you want to do, because you all are the exclusive jurors and judges of the facts in this case.

**JURY INSTRUCTION NO. 13:     EXPERT TESTIMONY**

You are going to hear from what are known as expert witnesses. Expert testimony is testimony from a person who has developed a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

You will get to weigh the expert's testimony just like you will consider any witness's testimony. You will consider the expert's qualifications, the basis and reason for their opinions, the reliability of the information that supports their opinions and factors I previously mentioned that would apply to weighing the testimony of all witnesses.

Expert testimony receives whatever weight and credit that you decide is appropriate, given all the other testimony and evidence in the case. Again, just like with any other witness, you are free to accept or reject the testimony of experts.

**JURY INSTRUCTION NO. 14:     STIPULATIONS OF FACT**

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**JURY INSTRUCTION NO. 15:     JUROR NOTEBOOKS**

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper for you to take notes

- As mentioned before, my claim construction order

- A copy of each of the four Surefield Patents

- Witness photographs, which will be provided after the witness testifies

- Stipulations

You may refer to these materials to assist you during trial.

## GLOSSARY OF PATENT AND TECHNICAL TERMS

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:** A situation in which a claimed invention is described in a single piece of prior art and, therefore, is not considered new and is not entitled to be patented.

**Assignment:** A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception:** The complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:** The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Enablement:** A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent.

**Limitation:** A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:** One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action:** A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent:** A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):** An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art:** Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice:** The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.