**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **APPLIANCE COMPUTING III, INC.** | § | |
| **d/b/a SUREFIELD,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO. 6:20-cv-00376-ADA** |
| **v.** | § | |
| | § | |
| **REDFIN CORPORATION,** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
<u>PURSUANT TO RULE 50(b)</u>**

████████████████

# TABLE OF CONTENTS

LEGAL STANDARD ................................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ........................................................... 2

ARGUMENT ........................................................................................................... 2

I.     INVALIDITY ...................................................................................................... 2

     A.    Surefield Is Entitled to JMOL that the Asserted Claims Are Not Obvious Because Redfin Failed to Prove a Motivation to Combine/Modify. ..................................... 2

     B.    Because Redfin's Expert Admitted That the Prior Art Failed to Disclose Defining "Spatial Boundaries" Using "Image Data", the Verdict of Invalidity of Claims 1 and 2 of the '673 Patent and the Asserted Claims of the '111 Patent is Not Supported by Substantial Evidence. ....................................................................... 6

     C.    Redfin Failed to Present Substantial Evidence That the Matterport Combinations Invalidated the Asserted Claims. ........................................................................... 8

     D.    Redfin Failed to Present Substantial Evidence that GSV, Either Alone or in Combination with Redfin.com 2013, Invalidated the Asserted Claims ................. 9

          1.    Redfin Failed to Show That GSV/Redfin.Com 2013 Disclosed Synthesized Views/Viewpoints Created From Image Data From Two or More Capture Locations. ............................................................................. 9

          2.    Redfin Failed to Show That GSV/Redfin.Com Disclosed Scheduling a Tour. .................................................................................................. 10

          3.    Redfin Failed to Show That GSV/Redfin.Com Disclosed Determining Camera Geometry Using the Plurality of Images. .................................... 11

          4.    Redfin Failed to Show That GSV Disclosed a Spatial Boundary Defining or Corresponding to a Parcel Outline. ....................................................... 13

     E.    Redfin Failed to Address Surefield's Substantial Evidence of Secondary Considerations Supporting a Finding of Nonobviousness. .................................. 14

     F.    Redfin Failed to Consistently Interpret the Claim Language for Both Infringement and Invalidity. ....................................................................................................... 14

II.    INFRINGEMENT .......................................................................................... 15

     A.    The Jury Had Only Substantial Evidence of Infringement. ................................ 15

     B.    Redfin's Noninfringement Positions Are Irrelevant to the Asserted Claims and No Reasonable Juror Could Have Found Noninfringement. ...................................... 15

i

███████████████

1.    Redfin's Claim That Redfin Does Not Make Models Does Not Rebut
      Surefield's Substantial Evidence of Infringement ................................... 16

2.    Redfin's Claim That Matterport Models Do Not Have a Parcel Outline
      Does Not Rebut Surefield's Substantial Evidence Of Infringement. ....... 19

3.    Redfin's Claim That Matterport Is "A Full 3D Reconstruction" Does Not
      Rebut Surefield's Substantial Infringement Evidence. ............................ 19

CONCLUSION .................................................................................................. 20

████████████████

**TABLE OF AUTHORITIES**

**Cases**

*A.O. Smith Corp. v. Bradford White*,
    No. 2021-2222, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022) ........................................... 6

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)......................................................................................... 15

*AOS Holding Co. v. Bradford White Corp.*,
    No. No. 18-412-LPS, 2021 WL 5411103 (D. Del. Mar. 31, 2021) ................................... 6

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)........................................................................................... 2

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)............................................................................................................ 2

*Callicrate v. Wadsworth Mfg., Inc.*,
    427 F.3d 1361 (Fed. Cir. 2005)......................................................................................... 20

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)......................................................................................... 17

*Centrak, Inc. v. Sonitor Techs., Inc.*,
    915 F.3d 1360 (Fed. Cir. 2019).................................................................................... 16, 17

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
    4 F.4th 1370 (Fed. Cir. 2021) ............................................................................................ 3

*CommScope Techs. LLC v. Dali Wireless Inc.*,
    10 F.4th 1289 (Fed. Cir. 2021) ........................................................................................ 15

*Cordis Corp. v. Bos. Sci. Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011)................................................................................ 10, 13, 20, 21

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
    885 F.3d 1367 (Fed. Cir. 2018)................................................................................. passim

*Illinois Tool Works, Inc. v. Rust-Oleum Corp.*,
    955 F.3d 512 (5th Cir. 2020) .................................................................................... passim

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014).................................................................................. passim

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...................................................................................................... 3, 5

*Microsoft Corp. v. Biscotti, Inc.*,
    878 F.3d 1052 (Fed. Cir. 2017)............................................................................ 13

*Moba, B.V. v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003).................................................................. 10, 20, 21

*ModernaTx v. Arbutus Biopharma Corp.,*
    No. 2020-2329, 18 F.4th 1364 (Fed. Cir. Dec. 1, 2021)........................................ 9

*Orexo AB v. Actavis Elizabeth LLC*,
    903 F.3d 1265 (Fed. Cir. 2018)............................................................................. 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................... 20

*Shure, Inc. v. ClearOne, Inc.*,
    No. 17-v-3078, 2018 WL 1371170 (N.D. Ill. Mar. 16, 2018) ........................... 17

*Texas Dep't of Transp. v. Able*,
    35 S.W.3d 608 (Tex. 2000).................................................................................. 18

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)........................................................................... 17

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)................................................................ 2, 8, 9, 15

*Wonderland Switzerland AG v. Evenflo Co.*,
    564 F. Supp. 3d 320 (D. Del. 2021)...................................................................... 6

**Statutes**

35 U.S.C. § 271................................................................................................................ 16

**Rules**

FED. R. CIV. P. 50(b) ........................................................................................................ 2

████████████

## TABLE OF ABBREVIATIONS AND CITATIONS

**Parties**

| | |
|---|---|
| Surefield | Plaintiff Appliance Computer III, Inc. d/b/a Surefield |
| Redfin | Defendant Redfin Corp. |

**Defined Terms**

| | |
|---|---|
| Surefield Patents or Patents-in-Suit | U.S. Patent No. 9,836,885 (the "'885 Patent"); U.S. Patent No. 10,102,673 (the "'673 Patent"); U.S. Patent No. 10,510,111 (the "'111 Patent"); and U.S. Patent No. 10,592,973 (the "'973 Patent"). |
| Asserted Claims | Claims 1, 3, and 9 of the '885 Patent; claims 1, 2, and 10 of the '673 Patent; claims 18 and 22 of the '111 Patent; and claims 4 and 17 of the '973 Patent. |
| GSV | Google Street View |
| Matterport 2013 | Matterport 2013 System |
| JMOL | Judgement as a Matter of Law |
| POSITA | Person of ordinary skill in the art |
| Tr. | Trial Transcripts, Dkt. 239-244 |

Unless otherwise noted, all **emphasis** is added.

Surefield respectfully renews its motion, pursuant to Federal Rule of Civil Procedure 50(b), for JMOL that the Asserted Claims of Surefield's Patents are not invalid and are infringed by Redfin. Surefield is entitled to JMOL that the Asserted Claims are not invalid as anticipated or obvious because Redfin failed as a matter of law to meet its high burden of proving its invalidity defenses by clear and convincing evidence. Redfin's invalidity claims under the only categories of prior art it presented at trial lack substantial evidence because

- Redfin failed to present competent evidence that a POSITA would have been motivated to combine the references in its GSV and Matterport 2013 obviousness combinations;

- Redfin's expert admitted that the prior art does not disclose defining spatial boundaries using the image data as required by claims 1 and 2 of the '673 Patent and the Asserted Claims of the '111 Patent;

- Redfin failed to present competent evidence showing its Matterport 2013 obviousness combinations disclosed the elements of the Asserted Claims;

- Redfin failed to present substantial evidence that GSV, either alone or in combination with Redfin.com, disclosed all the elements of each Asserted Claim;

- Redfin failed to present competent evidence in response to Surefield's evidence of secondary considerations—i.e., commercial success and copying—supporting a finding of nonobviousness; and

- Redfin failed to interpret the claim language consistently for both infringement and invalidity.

Surefield is entitled to JMOL that Redfin has infringed the Asserted Claims because the only relevant and substantial evidence in the case proved infringement. Surefield's expert Dr. Melendez testified regarding the presence of every element in the Redfin and Matterport source code, which was corroborated by testimony of Redfin and Matterport technical personnel. Redfin's putative noninfringement arguments are not bases of noninfringement at all and have basis in the language of the Asserted Claims or established patent law.

## LEGAL STANDARD

JMOL is appropriate under Rule 50 when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Illinois Tool Works, Inc. v. Rust-*

*Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020); *see also* FED. R. CIV. P. 50(b); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1332 (Fed. Cir. 2013) (granting JMOL of infringement). JMOL is warranted where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [jury] could not arrive at a contrary verdict." *Illinois Tool Works*, 955 F.3d at 514. Conclusory expert testimony does not qualify as substantial evidence, and thus a jury may not base a verdict on such statements. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

## FACTUAL AND PROCEDURAL HISTORY

At trial, Surefield presented substantial evidence of infringement by Redfin of each of the Asserted Claims of Surefield's Patents based on Redfin real estate listings that include a 3D walkthrough. Pursuant to the Court's requirement that Redfin specifically disclose each validity theory it intended to present at trial (Tr. 313:13–315:6), Redfin identified and ultimately presented to the jury just two categories of prior art (1) GSV either alone (as an anticipatory reference against the '673 Patent) or as an obviousness combination with Redfin.com 2013 and (2) Matterport 2013 as an obviousness combination with various other references. On May 17, 2022, the jury entered its verdict, finding all asserted claims invalid and not infringed. Dkt. 233. This Court entered judgment reflecting the jury's verdict on August 15, 2022. Dkt. 245.

## ARGUMENT

### I.    INVALIDITY

#### A.    Surefield Is Entitled to JMOL that the Asserted Claims Are Not Obvious Because Redfin Failed to Prove a Motivation to Combine/Modify.

At trial Redfin presented two obviousness arguments: (1) Redfin alleged that GSV alone

or combined with other references rendered obvious the Asserted Claims of the '885, '111, and '973 Patents; and (2) Redfin alleged that Matterport 2013 "came first[,]" alleging that Matterport 2013 combined with other references rendered obvious all of the Asserted Claims. *See, e.g.*, Tr. 1374:11–21, 1409:16–22, 1399:5–11, 1318:10–21 (discussing Matterport 2013); Ex. B, 4/5/22 Redfin's Revised Final Set of Prior Art Grounds. As a threshold matter, all of Redfin's obviousness arguments regarding the GSV and Matterport 2013 combinations fail because Redfin failed to prove, or even present, a motivation to combine or modify.

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). "A party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan ***would have been motivated*** to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014) (internal quotations omitted). Evidence showing that a POSITA "could have combined" or "would have known . . . how to combine" the prior art references is insufficient to establish obviousness. *InTouch*, 751 F.3d at 1352; *see also Orexo AB v. Actavis Elizabeth LLC*, 903 F.3d 1265, 1272 (Fed. Cir. 2018) (ability to make modification not sufficient to show motivation to make motivation). When relying on a single prior art reference, a party must demonstrate evidence and explanation to show a motivation to modify the single reference to achieve any missing limitation. *See Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1377 (Fed. Cir. 2021); *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1374–77 (Fed. Cir. 2018) (a motivation to modify can be supplied by "ordinary creativity" and "common sense" of a POSITA only if supported by evidentiary support and

reasoned analysis). Evidence showing that a POSITA "could have combined" or "would have known . . . how to combine" the prior art references is insufficient to establish obviousness. *InTouch*, 751 F.3d at 1352. Vague and conclusory expert testimony is insufficient to prove a motivation to combine prior art references or to modify a single prior art reference to supply a missing limitation. *See id*. at 1327; *DSS Tech.*, 885 F.3d at 1374–77.

Here, Redfin's expert, Dr. Navratil, acknowledged at trial that he did not apply the proper obviousness standards:

> Q. So even if Redfin proves for obviousness by clear and convincing evidence that every limitation of the claim is in the prior art, that doesn't necessarily prove obviousness, does it?
>
> A. *I think that it does*. Because I'm -- I was one of ordinary skill in the art, and part of my job is to understand and describe that that's how one of ordinary skill in the art would view these aspects that I point out.
>
> Q. Okay. And the standard you just described was what you applied when you rendered your opinion, correct?
>
> A. I think it's a general summary of it. I think that I could probably say it more clearly, but that's my understanding.

Tr. 1450:8–22. A finding of obviousness specifically requires an explicit showing of a motivation to combine references or a motivation to modify a single prior art reference to avoid hindsight bias. *See InTouch*, 751 F.3d at 1347; *DSS Tech.*, 885 F.3d at 1374.

Dr. Navratil's direct testimony follows his misunderstanding of the law. Dr. Navratil discussed how several limitations would have been "obvious" to add to GSV and combining GSV with other references.[1] Despite these assertions, Dr. Navratil never once discussed how a POSITA

---

[1] *See, e.g.*, Tr. 1369:24–1370:10 ("simple matter" for Google to add parcel outline), 1374:22–1375:3 (combining GSV with Redfin.com); 1375:16–22 ("obvious" to do rotation from a synthetic viewpoint), 1377:19–1378:20 & 1411:7-1413:8 (combining GSV with Museum of Modern Art website); 1397:8–14 & 1402:25-1403:22 ("obvious for Google engineers" to add parcel outline), 1405:14–1406:4 ("obvious" to generate and render virtual model at the same time).

could have combined GSV with any other reference, why a POSITA would have been motivated to modify GSV or combine it with any other reference, or why a POSITA would have had a reasonable expectation of success modifying GSV or combining it with another reference. Similarly, Dr. Navratil at trial also did not discuss a motivation to combine Matterport 2013 with any other reference in his cursory analysis of the Matterport prior art. *See* Tr. 1318:10–21.

Redfin's lack of motivation to combine/modify testimony is analogous to the facts from *InTouch*. *See* 751 F.3d at 1348–52. There, the Federal Circuit overturned the district court's denial of JMOL of no invalidity because defendant's expert failed to "articulate reasons why a person of ordinary skill in the art at the time of the invention would combine" the prior art references. *Id.* at 1351. Defendant's expert succumbed to hindsight bias by using the asserted patent "itself as her roadmap for putting what she referred to as pieces of a 'jigsaw puzzle' together." *Id.* Additionally, the expert's "testimony primarily consisted of conclusory references to her belief that one of ordinary skill in the art *could* combine [the prior art references], not that they *would* have been motivated to do so." *Id.* at 1352.

Dr. Navratil's testimony was even more suspect than the *InTouch* expert's testimony. First, Dr. Navratil never discussed a motivation to combine GSV or Matterport 2013 with other references, unlike the conclusory discussion from the expert in *InTouch*. *Id.* at 1348–52; Tr. 1450:8–22. Second, Dr. Navratil explicitly agreed that he applied an incorrect standard regarding obviousness, testifying that simply showing the existence of the claimed features in the prior art is sufficient to prove obviousness. Tr. 1450:8–22; *see also KSR*, 550 U.S. at 418 (obviousness "not proved obvious merely by demonstrating that each of [a patent's] elements was, independently, known in the prior art."). Other district courts have overturned jury verdicts of invalidity due to

similar failures to show a motivation to combine or modify.[2]

Surefield is entitled to JMOL on Redfin's invalidity claims regarding obviousness based on GSV (against claims 1, 3, and 9 of the '885 Patent, claims 18 and 22 of the '111 Patent, and claims 4 and 17 of the '973 Patent) and Matterport 2013 (against all Asserted Claims) because there is no legally sufficient evidentiary basis for a reasonable jury to find the Asserted Claims obvious. *See Illinois Tool Works*, 955 F.3d at 514; *InTouch*, 751 F.3d at 1347.

**B.     Because Redfin's Expert Admitted That the Prior Art Failed to Disclose Defining "Spatial Boundaries" Using "Image Data", the Verdict of Invalidity of Claims 1 and 2 of the '673 Patent and the Asserted Claims of the '111 Patent is Not Supported by Substantial Evidence.**

| '673 Claim 1 | '111 Claim 18 |
|---|---|
| defining spatial boundaries of the plurality of spaces in the property *using the image data*, | defining a plurality of spatial boundaries of the plurality of spaces in the plurality of rooms in the real estate property *using the image data*, |

Redfin failed to present substantial evidence of these limitations in the prior art.[3] Dr. Navratil's trial testimony failed (1) to show that the prior art disclosed these limitations or (2) to address the express admission from his deposition that defining spatial boundaries *using the image data* is an advancement over the prior art:

> Q. Do you agree that the defining spatial boundaries *using the image data* is an advancement over the prior art?
>
> A. As I just testified, the -- the Patent Office found that this was a differentiation from the prior art. And from -- I -- how, I -- I don't -- sitting here today, don't know of any particular reason to -- to disagree with that differentiation.

Tr. 1461:4–11 (emphasis added). None of Dr. Navratil's testimony claimed that this limitation was

---

[2] *See AOS Holding Co. v. Bradford White Corp.*, 2021 WL 5411103, at \*42–43 (D. Del. Mar. 31, 2021), *aff'd sub nom. A.O. Smith Corp. v. Bradford White*, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022); *Wonderland Switzerland AG v. Evenflo Co.*, 564 F. Supp. 3d 320, 339-40 (D. Del. 2021).

[3] Dr. Navratil did not discuss how Matterport 2013 disclosed these particular limitations, instead only discussing Matterport 2013 as prior art more generally. *See* Tr. 1318:10–21.

██████████████

present in any of the Matterport 2013 obviousness combinations asserted by Redfin. Instead, Dr. Navratil's conclusory testimony regarding this limitation in the '673 Patent is limited to the claim that he can "see" boundaries of rooms in GSV in DX-215 and that "the spatial boundaries are certainly defined as [] discussed previously [with regard to the '885 Patent]." Tr. 1383:4–20.

Critically, however, the '885 Patent is unlike claims 1 and 2 of the '673 Patent and claims 18 and 22 of the '111 Patent, because it does not require spatial boundaries to be defined "using the image data."[4] Thus, Dr. Navratil's reliance on his previous testimony regarding the '885 Patent necessarily failed to address the additional limitation of "using the image data" as required by the '673 and '111 Patents. Further, Dr. Navratil's testimony regarding spatial boundaries in the '885 Patent simply consists of conclusory statements that he can "see" spatial boundaries in DX-215 in the "floor plan view" and in "how the cursor moves along the wall and the floor." Tr. 1369:8–22. But this testimony did not address defining spatial boundaries "using the image data." ████████

████████████████████████████████████████

████████████████████████████████████

████████████████████ Tr. 1369:8–22, 1461:16–1462:20, 1620:11–1623:18; DX-197; DX-215. Similarly, Dr. Navratil's discussion of the cursor shown in DX-215 failed to explain how the cursor shows spatial boundaries defined "using the image data." *See, e.g.*, Tr. 1369:15–22. When discussing this limitation in the '111 Patent, neither questioning from Redfin's attorney nor Dr. Navratil's testimony even mentioned the phrase "using the image data." *Id.* 1396:18–1397:16. Additionally, Dr. Navratil never stated that these limitations would have been obvious to a POSITA or why a POSITA would have been motivated to modify the prior art to achieve these

---

[4] The limitation of the '885 Patent on which Dr. Navratil relies recites only: "generate a plurality of spatial boundaries of the plurality of spaces of the real property, each of the plurality of spatial boundaries defining a parcel outline of a corresponding space among the plurality of spaces."

limitations. *See InTouch*, 751 F.3d at 1347; *DSS Tech.*, 885 F.3d at 1374.

Therefore, Surefield is entitled to JMOL that claims 1 and 2 of the '673 Patent and claims

18 and 22 of the '111 Patent are not invalid as anticipated or obvious. *See Illinois Tool Works*, 955

F.3d at 514; *VirnetX*, 767 F.3d at 1333.

### C.   Redfin Failed to Present Substantial Evidence That the Matterport Combinations Invalidated the Asserted Claims.

Despite electing Matterport 2013 combined with other references, Redfin in fact, through

Dr. Navratil, presented the jury with only a cursory analysis of Matterport 2013:

> Q. Okay. Now, I know that you've testified through all your analysis that Matterport is different than the Surefield patents. But if anyone were to entertain the notion that Matterport's products are somehow the same as Surefield's patents, were they the same back in 2012 as well?
>
> A. Yes, sir. In the important ways of building the model relevant to the Surefield claim constructions, the model construction is the same then as it was now. So there – the Matterport system came first.

Tr. 1318:10–21. Dr. Navratil essentially stated that if Matterport[5] now infringes, then Matterport

2013[6] rendered the asserted claims invalid because the Matterport system allegedly had not

changed in the relevant time period. This analysis is legally insufficient for several reasons.

First, Dr. Navratil contradicted the trial testimony of several witnesses, including himself,

when he indicated that Matterport had not changed since 2012. *See* Tr. 1318:10–21.[7] Second,

invalidity cannot be proved without showing that a prior art reference discloses each and every

---

[5] Redfin repeatedly referred to Matterport in its non-infringement analysis, despite Redfin being the party accused of infringement. *See, e.g.*, Tr. 1209:21–1210:10, 1213:9–1215:13, 1220:7–1221:17, 1257:17–1258:8, 1264:4–1265:23.

[6] Despite Redfin's counsel referring to Matterport "back in 2012," Redfin consistently referred to Matterport 2013 as the relevant prior art system. *See, e.g.*, Ex. B.

[7] Substantial record evidence demonstrates the critical differences between Matterport 2013 and current Matterport technology. *See* Tr. 780:13–787:1 (Surefield damages expert Paul Benoit); 986:14–996:2 (Redfin's witness Adam Wiener),1043:6–1047:14 (Matterport witness Dave Gausebeck), 1290:20–1292:19 (Dr. Navratil), 1639:11–1641:5 (Surefield expert Dr. Jose Melendez; *see also* PX-287 and PX-288 (reflecting differences in 3D tours of the USS Hornet).

element of a claim, and Dr. Navratil did not present an element-by-element analysis of Matterport 2013. *See ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1352, 1363 (Fed. Cir. 2021). Third, as stated above, Redfin failed to present any evidence of a motivation to combine/modify the asserted Matterport 2013 prior art combinations. *See supra* Section I; Ex. B. Thus, Redfin failed to present substantial evidence that Matterport 2013 invalidated the Asserted Claims.

### D. Redfin Failed to Present Substantial Evidence that GSV, Either Alone or in Combination with Redfin.com 2013, Invalidated the Asserted Claims.

As demonstrated above, Surefield is entitled to JMOL that all of the Asserted Claims of the '885, '111, and '973 Patents and claims 1 and 2 of the '673 Patent are not invalid. Surefield is also entitled to JMOL that each of those Asserted Claims, as well as claim 10 of the '673 Patent, are not invalid because Redfin failed to show by clear and convincing evidence that several of the claim elements were disclosed by the prior art. Dr. Navratil's analysis was plagued with repeated failures to apply the Court's claim constructions and conclusory statements that were unsubstantiated or contradicted by the evidence in the record. This conclusory evidence cannot support the jury's verdict. *See VirnetX*, 767 F.3d at 1333; *Illinois Tool Works*, 955 F.3d at 514.

### 1. Redfin Failed to Show That GSV/Redfin.Com 2013 Disclosed Synthesized Views/Viewpoints Created From Image Data From Two or More Capture Locations.

| '885 Claim 1 | '973 Claim 1 |
|---|---|
| combine and process two or more instances of ground truth image data to create a plurality of *synthesized viewpoints* [*images of a space from a position other than a capture location, resulting from combining and processing image data from two or more capture locations*]; | combining and processing two or more instances of the ground truth image data to create a plurality of *synthesized views* [*images of a space from a position other than a capture location, resulting from combining and processing image data from two or more capture locations*], |

Redfin and Dr. Navratil failed to show how GSV discloses the "synthesized view[point]s" limitations because Dr. Navratil neither applied the Court's relevant claim constructions nor

provided more than a conclusory analysis. *See* Tr. 1363:1–1364:23; 1404:24–1405:13. The Court's construction for "synthesized view[point]" is "an image of a space from a position other than a capture location, resulting from combining and processing image data from two or more capture locations." Dkt. 77 at 1. Dr. Navratil testified, without reference to the Court's construction, documentary evidence, or source code, that the "blurry" images displayed on GSV during transitions are "actually blending" of the images from each capture location and that this disclosed this limitation. Tr. 1363:6–1364:3. Dr. Navratil provided no explanation of how "blending" meets the Court's construction of "combining and processing image data." Such testimony cannot support the jury's verdict. *See, e.g.*, *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1357–58 (Fed. Cir. 2011); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313–14 (Fed. Cir. 2003).

Further, even assuming *arguendo* that blending could meet the Court's construction, Dr. Navratil also didn't explain how the "blurry" images on GSV actually show "an image of a space from a position other than a capture location." *See* Tr. 1363:6–1364:3.[8] Dr. Navratil also did not indicate that these limitations would have been obvious to a POSITA or why a POSITA would have been motivated to modify the prior art to achieve these limitations. *See InTouch*, 751 F.3d at 1347; *DSS Tech.*, 885 F.3d at 1374. Thus, there is not a legally sufficient basis to find that GSV alone or in combination with other references disclosed this limitation.

        **2.**     **Redfin Failed to Show That GSV/Redfin.Com Disclosed Scheduling a Tour.**

| '885 Claim 9 | '973 Claim 17 |
| --- | --- |
| 9. The computer system of claim 1, wherein the program commands further cause the processor to: receive an offer | 16. The computer-readable memory medium of claim 1 wherein the method further comprises: facilitating a transaction regarding the real property. |

---

[8] *See also* Tr. 1338:10–1339:7 (stating that "blurriness" is a synthesized viewpoint because it is "not … from a capture location"), 1404:24–1405:10 (stating without explanation that an image in DX-218 that is "a little blurred" indicates a "composition for that transition").

| | |
|---|---|
| to **schedule an in-person tour** of the real property. | 17. The computer-readable memory medium of claim 16 wherein the transaction further comprises one or more of: **scheduling a tour**, …[9] |

Redfin did not present evidence of GSV disclosing the "scheduling a tour" limitations. Dr. Navratil pointed to the ability on the Museum of Modern Art to purchase a ticket to the Museum of Modern Art for a particular date. *See* Tr. 1377:19–1378:20; 1411:7–1413:8. It is unclear if Dr. Navratil meant this disclosure to support anticipation of this claim by GSV, single-reference obviousness based on GSV, or obviousness based on GSV and the Museum of Modern Art website. However, none of these arguments supports the jury's verdict. First, the referenced disclosures are not from GSV and cannot support an anticipation argument.[10] Second, Dr. Navratil did not discuss how these limitations would be obvious to a POSITA or provide any motivation to modify as required for single-reference obviousness arguments.[11] Third, Dr. Navratil did not provide any motivation to combine GSV and the Museum of Modern Art website.[12] Finally, the disclosure relates to purchasing a ticket to a museum, not scheduling any tour. No reasonable jury would have had a legally sufficient basis to find that GSV alone or in combination with other references disclosed this limitation or that this limitation was otherwise rendered obvious.

3.      **Redfin Failed to Show That GSV/Redfin.Com Disclosed Determining Camera Geometry Using the Plurality of Images.**

| '673 Claim 1 | '673 Claim 2 | '673 Claim 10 |
|---|---|---|
| wherein rendering the 3D scene includes:<br><br>**determining camera geometry using the plurality of images**; | wherein the camera geometry is **determined by a first pass feature detection** [*an initial detection of geometric features in images (e.g., corners, edges, squares)*] using | wherein the program commands cause the processor to render the 3D scene by:<br><br>**determining camera geometry using the plurality of images**; |

---

[9] At trial, Redfin did not discuss any of the other transactions listed in claim 17 of the '973 Patent.
[10] *See ModernaTx*, 18 F.4th at 1363.
[11] *See DSS*, 885 F.3d at 1374.
[12] *See InTouch*, 751 F.3d at 1347; Tr. 1377:19–1378:20; 1411:7–1413:8

| | the plurality of images. | |
|---|---|---|

Dr. Navratil, in discussing these "camera geometry" limitations, failed to apply the Court's constructions[13] and misleadingly contradicted the evidence in the record. *See* Tr. 1385:18–1387:11, 1392:8–1393:5. Dr. Navratil pointed to the Google pose optimizer described in DX-253 as meeting this limitation and stated that "we also saw the same pose estimate being used in the internal Google docs that we just reviewed." *See* DX-253; Tr. 1386:10–14. ████████████████

████████████████████████████████████████████████████

████████████████  *See* DX-197; Tr. 1355:19–1359:11. He went on to discuss DX-258, an article about Google pose optimizer that for use when there is "no GPS or depth data" available, and he noted that this article refers to using an SLR camera "as opposed to the trolly." DX-258; Tr. 1386:15–1387:6. Redfin's counsel then asked Dr. Navratil if both the trolly and "the views of a business … determine camera geometry using the plurality of images?" and Dr. Navratil responded with a misleading and conclusory "Yes, sir. They did." Tr. 1387:7–11. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. *See* DX-197 at 5–8.

This conclusory testimony is not substantial evidence of anticipation or obviousness. *See Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1069 (Fed. Cir. 2017) ("[A]nticipation is not proven by 'multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention.'"); *DSS*, 885 F.3d at 1374 (single-reference obviousness requires reasoned analysis).

Dr. Navratil's analysis of claim 2 of the '673 Patent also failed as he, in addition to the

---

[13] As construed "camera geometry" means "the location, orientation, and/or physical dimensions of the camera's imager" and "first pass feature detection" to mean "an initial detection of geometric features in images (e.g., corners, edges, squares)." Dkt. 77 at 2.

errors described above, failed to even reference the Court's construction for "first pass feature detection." *See* Tr. 1392:8–1393:5; *Cordis*, 658 F.3d at 1357–58.

Dr. Navratil also did not indicate that determining camera geometry using images/first pass feature detection would have been obvious to a POSITA or why a POSITA would have been motivated to modify the prior art to achieve this limitation. *See InTouch*, 751 F.3d at 1347; *DSS Tech.*, 885 F.3d at 1374. No reasonable jury would have had a legally sufficient basis to find that GSV alone or in combination with other references disclosed these limitations.

          **4.**    **Redfin Failed to Show That GSV Disclosed a Spatial Boundary Defining or Corresponding to a Parcel Outline.**

| '885 Claim 1 | '111 Claim 18 | '973 Claim 1 |
|---|---|---|
| generate a plurality of spatial boundaries of the plurality of spaces of the real property, *each of the plurality of spatial boundaries defining a parcel outline of a corresponding space among the plurality of spaces*; | defining a plurality of spatial boundaries … wherein the defined first spatial boundary and second spatial boundary are further delineations within *a third spatial boundary corresponding to a parcel outline* of the real estate property; | defining a plurality of spatial boundaries … at least one of the plurality of spatial boundaries *defining a parcel outline of the real property*, |

Dr. Navratil failed to present *any* evidence of the "corresponding to" or "defining a" parcel outline limitations in GSV. After the Court ruled that this term is *not* indefinite, Dkt. 77 at 6, Dr. Navratil admitted that he viewed the term to be "nonsensical," because he understood the limitation to require "that the kitchen has to be the parcel outline, the bedroom has to be the parcel outline" and that he "had never seen a house like that." Tr. 1421:17–1423:12. As a result, Dr. Navratil was incapable of applying the Court's construction. Even if Dr. Navratil's "nonsensical" understanding of the term could be viewed as plain and ordinary meaning, Dr. Navratil failed to show that any prior art reference, including GSV and Redfin.com 2013, disclosed his understanding of the limitation. *See* Tr. 1369:8–1370:16. For the similar limitations of the '111 and '973 Patents, Dr. Navratil provided only a cursory analysis that did not reference any "parcel outline" in GSV and

insufficiently claimed it would have been "obvious" for Google engineers to add a spatial boundary corresponding to or defining a parcel outline to GSV without providing any motivation to modify GSV. *See* Tr. 1396:18–1397:16, 1402:25–1404:2; *see also InTouch*, 751 F.3d at 1347; *DSS Tech.*, 885 F.3d at 1374. Thus, there is no legally sufficient basis to find that GSV alone or in combination with other references disclosed these limitations.

### E. Redfin Failed to Address Surefield's Substantial Evidence of Secondary Considerations Supporting a Finding of Nonobviousness.

Dr. Navratil wholly failed to address at trial any secondary considerations of non-obviousness, leaving his obviousness opinions "incomplete[] and insufficient to establish obviousness by clear and convincing evidence." *InTouch*, 751 F.3d at 1352 & n.8 (reversing denial of JMOL where expert failed to address patentee's evidence of secondary considerations). In contrast, Surefield's expert Dr. Melendez provided ample testimony and citations to evidence in the record regarding the nexus between the claimed inventions and Redfin's accused product, Redfin's copying of the claimed inventions, and the resulting commercial success of Redfin's accused product after said copying. *See, e.g.*, Tr. 790:24–806:5, 806:12–810:10, 811:21–817:17, 819:2–821:12, 1641:6–1646:7; PX-21; PX-51; PX-53; PX-77; PX-117; Ex. C. Accordingly, JMOL in Surefield's favor on Redfin's invalidity arguments regarding obviousness is proper.

### F. Redfin Failed to Consistently Interpret the Claim Language for Both Infringement and Invalidity.

As described below, Redfin improperly injected an unclaimed requirement of an ordered combination into several of the Asserted Claims. *See infra* Section II.B.3. However, when discussing the alleged invalidity of those same Asserted Claims Dr. Navratil never once applied the same ordered combination requirement. Claim terms must be interpreted the same way for both infringement and invalidity. *See CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1299 (Fed. Cir. 2021); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed.

Cir. 2001) (A "patent may not, like a nose of wax, be twisted one way" to argue invalidity and another to argue noninfringement). Dr. Navratil's inconsistent testimony cannot support the jury's verdict. *See VirnetX*, 767 F.3d at 1333; *Illinois Tool Works*, 955 F.3d at 514.

## II.    INFRINGEMENT

### A.    The Jury Had Only Substantial Evidence of Infringement.

Surefield presented substantial evidence of infringement of each Asserted Claim through Dr. Melendez. *See* Exs. A673, A885, A111, A973. Through Dr. Melendez's testimony and supporting exhibits, and the corroborating testimony of Redfin and Matterport engineers, Surefield presented substantial evidence that Redfin presents, on its website, a 3D model, along with a parcel outline, in accordance with the Asserted Claims of Surefield's Patents.

For example, with respect to claim 1 of the '673 Patent, Dr. Melendez provided unrebutted testimony of (1) creating a plurality of panoramas; (2) rendering a virtual model of a selected space; (3) defining spatial boundaries such as rooms and floors; (4) generating the model using point clouds, geometric proxies and camera geometry. *See* Ex. A673. Surefield proved infringement in its case-in-chief on an element-by-element basis. *See* Exs. A673, A885, A111, A973. As set forth below, Redfin's alleged noninfringement defenses were irrelevant to the Asserted Claims and cannot support the jury's noninfringement verdict.

### B.    Redfin's Noninfringement Positions Are Irrelevant to the Asserted Claims and No Reasonable Juror Could Have Found Noninfringement.

Redfin advanced three noninfringement positions at trial: (1) Redfin doesn't make models; (2) Matterport models don't have a parcel outline; (3) Matterport has always been a "Full 3D Reconstruction" company. *See* Tr. 1284:23–1285:16, 1733:18–23. With respect to (1), Redfin grossly misstated the requirements of Section 271: "making" is one way to infringe, and the making is of the apparatus, not a constituent element. *See* 35 U.S.C. § 271. With respect to (2), Surefield sued Redfin for patent infringement, not Matterport. With respect to (3), no mention is

15

made of Full 3D Reconstruction or even 3D reconstruction in the claims, and thus the argument is

irrelevant under black letter patent law. In short, none of Redfin's noninfringement positions rebut

Surefield's substantial infringement evidence, nor otherwise provide a legally sufficient basis on

which a reasonable juror could have found noninfringement.

### 1. Redfin's Claim That Redfin Does Not Make Models Does Not Rebut Surefield's Substantial Evidence of Infringement

Redfin asserts that Redfin doesn't make models. But that is not required as "using" models

on its website is sufficient for infringement under Section 271(a). *See* 35 U.S.C. § 271(a). Even as

to "making" under 271(a), Redfin's argument is legally incorrect. Redfin makes its website, is the

"final assembler" of all content, and is liable as a maker. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915

F.3d 1360, 1372 (Fed. Cir. 2019). Redfin presented no evidence to the contrary. Moreover, Redfin

"uses" its website. To use a patented system, "a party must put the invention into service, i.e.,

control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest

Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1281 (Fed. Cir. 2011). This was unaddressed by Redfin.

Redfin's argument that it cannot infringe because Redfin computers do not make the 3D

model also fails to support a jury verdict. To the contrary, the record evidence is that the 3D

modeling either housed or facilitated at Matterport as part of the Redfin listings with 3D

Walkthrough is attributable to Redfin, whether for system or method claims, and supports Redfin's

infringement, as set forth below and in Exhibits A673, A885, A111, and A973. "[A] final

assembler can be liable for making an infringing combination—assuming the evidence supports

such a finding—even if it does not make each individual component element." *Centrak, Inc.*, 915

F.3d at 1372. Further, for method claims, the actions of another are legally attributed to the

defendant who conditions the receipt of a benefit from and controls the timing and manner of

performance of the actions. *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017).

Defendants are liable for the actions of those with which they have formed a joint enterprise. *Shure, Inc. v. ClearOne*, Inc., Case No. 17-v-3078, 2018 WL 1371170, at *8 (N.D. Ill. Mar. 16, 2018). Here, there is substantial evidence of Redfin's liability under these theories.

Redfin directly infringes as a final assembler because "Redfin installs all of the software on the user's computer to allow [a 3D Walkthrough] to occur." Tr. 517:8–15. Redfin "uploads the software that it needs, additional software into the browser, and it brings in that custom Redfin virtual tour." *Id.* 517:13–15. Thus, Redfin makes the infringing systems of the '885 (claims 1, 3, & 9), '673 (claim 10), and '973 (claims 4 & 17) Patents. *See* Exs. A885, A673, A973. As a real estate broker, Redfin also puts the entire system into use by deploying them on Redfin.com or from Redfin.com to sell more real estate, and thus, also directly infringes the system claims by use. Tr. 774:14–775:21, 812:5–16 (number of views).[14] This evidence is undisputed. Redfin never even addressed the final assembler argument.

Redfin performs the methods of the '673 (claims 1 & 2) and '111 Patents (claims 18 & 22) because (a) Redfin and Matterport perform the steps of the Asserted Claims in a joint enterprise or (b) Redfin conditions Matterport's receipt of financial and other benefits on any step that it does not perform itself.[15] Redfin and Matterport were engaged in a joint enterprise to create and deploy the Redfin listings with 3D Walkthroughs. Redfin openly conceded in Court that the relationship is a "[d]eeply collaborative technology partnership" relating to the creation and deployment of these listings with 3D Walkthroughs. Tr. 774:14–775:21.[16]

Surefield has further introduced evidence proving that each of the legal requirements for a joint enterprise is met: (1) an agreement, expressed or implied, among the members of the group

---

[14] *See also* PX-48, PX-5, PX-123, PX-44, PX-94, Tr. 978:4–6, 775:16–17, 773:2–775:21.
[15] Alternatively, Redfin conditions its customers to do the same.
[16] *See also supra* n.14.

(including to provide Redfin listings with 3D Walkthroughs) (*see supra* n.14; JX-12); (2) a common purpose to be carried out by the group (including to provide Redfin listings with 3D Walkthroughs) (*see supra* n. 14; JX-12); (3) a community of pecuniary interest in that purpose, among the members (*see* Tr. 813:9–815:3 (price premium to Redfin), 815:9–816:25 (additional listings at both Redfin.com and additional models at Matterport)); and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control (*see, e.g.*, Tr. 984:12–985:2, 1083:5–1085:9).[17] *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000).

Redfin also conditions Matterport to perform certain method steps by contractually requiring it to do so. *See* JX-10–JX-15. Redfin was extensively involved in technologically collaborating with Matterport to create and deploy the 3D Walkthroughs on Redfin's listing pages, Matterport would recognize that it was conditioned to perform the receiving, processing, and rendering steps, and related steps of the asserted method claims, in order to receive the associated financial benefits.[18] Indeed, Redfin uses Matterport's camera to upload the data, and so Matterport must receive in the manner supported by the camera. Tr. 983:25–984:6, 984:20–24, 1054:10–1055:13, 1057:10–25. These benefits included Redfin placing the 3D Walkthrough's in its online listings, promoting the 3D Walkthrough, and Matterport reaping greater financial compensation. *See id.* 947:3–24, 1055:18–1056:1, 511:21–512:5, 515:8–516:13, 517:8–15, 599:4–13; PX-301A. Redfin further conditions its consumer receipt of the benefit from a Redfin 3D Walkthrough, including a virtual tour that can serve as a replacement for an in person tour, on performing the method steps of the '673 and '111 Patents, as they occur automatically when a user clicks view

---

[17] *See also supra* n.14 (partnership included technological development and continued devotion of shared resources of Matterport (e.g., cameras, servers, software) and Redfin (e.g., software, servers, photos and capture data)); Exs. A673, A885, A111, A973; Tr. 523:24–525:5; JX-12.

[18] *See supra* n.14.

tour. *See id*. There is no noninfringing alternative to performing the method steps.

        **2.**     **Redfin's Claim That Matterport Models Do Not Have a Parcel Outline Does Not Rebut Surefield's Substantial Evidence Of Infringement.**

Surefield accused Redfin, not Matterport, of infringement, and thus Surefield accused Redfin, not Matterport, of presenting a parcel outline to its users.[19] At trial Redfin admitted it performs the "parcel outline" limitations and the listings on its website with 3D walkthrough include a parcel outline. Tr. 1418:8–1418:23. It admitted that the models on its website are located using geographical information. *Id.* 1426:7–1427:20. Based on the trial record, no reasonable jury could find the parcel outline limitations absent from the accused Redfin 3D Walkthrough System.

Regarding the parcel outline, Dr. Navratil provided testimony of a flawed understanding of the claim requirements: specifically, although no Asserted Claim requires the spatial boundary or boundaries defining a parcel outline ***to be part of or within the virtual model***, Dr. Navratil testified such a requirement is necessary. Tr. 1261:20–1263:14; *see also* Dkt. 77 at 2, 5–7. Dr. Melendez correctly explained how these limitations work and the evidence supporting infringement. *See* Exs. A885, A111, A973. In short, Redfin's putative noninfringement basis is irrelevant, and can only be understood to have confused the jury with Redfin's improper claim construction*., Cordis*, 658 F.3d at 1357–58; *Moba*, 325 F.3d at 1313–14.

        **3.**     **Redfin's Claim That Matterport Is "A Full 3D Reconstruction" Does Not Rebut Surefield's Substantial Infringement Evidence.**

Full 3D reconstruction is neither required by nor excluded from any of the asserted claims. Redfin points to no plain and ordinary meaning nor any claim construction establishing this requirement. And so, this noninfringement position, and any purportedly supporting evidence,

---

[19] The Accused Redfin product was Redfin's 3D Walkthrough System, included supporting areas of Redfin's website relating to the listings with a 3D virtual tour. Tr. 485:14–486:3, 1641:13–20. Dr. Melendez explained that the Redfin 3D Walkthrough System is comprised of Matterport's 3D Modeling and other servers and functionality and the Redfin servers and their functionalities and software, as well as those on the Redfin customer computer, and associated program commands.

cannot support the jury verdict. *Cordis*, 658 F.3d at 1357–58; *Moba*, 325 F.3d at 1313–14; *see also Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (granting JMOL of infringement, stating: "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'").

Dr. Navratil's legally incorrect testimony about Redfin's full model/mesh being generated before a viewpoint is selected also fails to stave off JMOL. Dr. Navratil injects an unclaimed requirement of an ordered combination into the rendering of the 3D scene in the '673 Patent. Tr. 1231:25–1232:11. As the Federal Circuit has recognized, permitting the jury to improperly infer an ordered combination requirement not required by the "plain language" of a claim or explicitly part of a claim construction is grounds for JMOL. *See Moba*, 325 F.3d at 1313–14.[20] As it relies on unclaimed requirements, Redfin's expert testimony cannot support non-infringement. *Cordis*, 658 F.3d at 1357–58.

## CONCLUSION

For all the foregoing reasons, Surefield respectfully requests that the Court grant Surefield's motion and enter an order for judgment as a matter of law in Surefield's favor on the issues of infringement and invalidity, or, in the alternative, grant a new trial under Rule 59. *See* Fed. R. Civ. P. 50(b); 59.

---

[20] Plaintiff raised the no ordered combination jury instruction during the jury conference, but the Court rejected this instruction on the incorrect grounds that Plaintiff should have obtained a "no ordered combination" claim construction, when neither the plain and ordinary meaning of the claims nor any claim construction requires such order. Surefield also objected to the Court's omission of this jury instruction on the record. Tr. 1655:16–25.

Dated: September 12, 2022

Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Nicole E. Glauser
Texas State Bar No. 24050694
nglauser@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
Adam G. Price
Texas State Bar No. 24027750
aprice@dinovoprice.com
Gregory S. Donahue
Texas State Bar No. 24012539
gdonahue@dinovoprice.com
Gabriel R. Gervey
Texas State Bar No. 24072112
ggervey@dinovoprice.com
Michael D. French (*Pro Hac Vice*)
mfrench@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

Steven W. Fogg (*pro hac vice*)
sfogg@corrcronin.com
Eric A. Lindberg (*pro hac vice*)
elindberg@corrcronin.com
**CORR CRONIN, LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
Telephone: (206) 625-8600

Mark P. Walters (*pro hac vice)*
walters@lowegrahamjones.com
**LOWE GRAHAM JONES, PLLC**
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
Telephone: (206) 381-3300

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2022, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system and all counsel of record have been served via email.

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo