███████████

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| APPLIANCE COMPUTING III, INC.<br>d/b/a SUREFIELD, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:20-cv-00376-ADA |
| REDFIN CORPORATION, | § § | |
| Defendant. | § § | |

## REDFIN'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b)

███████████

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     SUREFIELD IS NOT ENTITLED TO JMOL AS TO VALIDITY .................................. 2

        A.      Surefield's Arguments Regarding Motivation to Combine Do Not Entitle It to
                Judgment as a Matter of Law ................................................................................ 2

                1.      Surefield Waived Its Motivation to Combine Arguments .......................... 2

                2.      Redfin's Evidence is Sufficient to Support the Jury's Verdict .................. 3

        B.      The Verdict of Invalidity of Claims 1 and 2 of the '673 Patent and the Asserted
                Claims of the '111 Patent Is Supported by Substantial Evidence .......................... 7

        C.      Surefield's Arguments Regarding the Matterport Prior Art System Do Not Entitle
                It to Judgment as a Matter of Law ........................................................................ 10

                1.      Surefield Waived Any Challenge to the Sufficiency of Redfin's Evidence
                        of the Matterport Prior Art System ........................................................ 10

                2.      Surefield Has Failed to Show that Redfin's Evidence Was Insufficient to
                        Support the Jury's Verdict ...................................................................... 10

        D.      Surefield's Arguments Regarding Evidence of GSV Do Not Entitle It to Judgment
                as a Matter of Law ............................................................................................... 11

                1.      Surefield Waived Any Challenge to the Sufficiency of Redfin's Evidence
                        of GSV .................................................................................................. 11

                2.      Redfin Presented Substantial Evidence that GSV Discloses "Synthesized
                        Views/Viewpoints Created from Image Data Captured from Two or
                        More Capture Locations" ........................................................................ 12

                3.      Redfin Presented Substantial Evidence of "Scheduling a Tour" .............. 13

                4.      Redfin Presented Substantial of "Camera Geometry" ............................. 14

                5.      Redfin Presented Substantial Evidence of a "Spatial Boundary
                        Corresponding to a Parcel Outline" ........................................................ 16

        E.      Surefield Did Not Present Substantial Evidence of Secondary Considerations ... 16

        F.      Redfin Applied a Consistent Interpretation of Claims .......................................... 19

III.    SUREFIELD IS NOT ENTITLED TO JMOL AS TO INFRINGEMENT ...................... 19

        A.      Surefield Did Not Carry Its Burden of Establishing Infringement ....................... 19

B.     Redfin Presented Substantial Evidence of Non-infringement ............................. 24

     1.     Redfin Does Not Make/Generate/Create the Accused Virtual Models .... 24

     2.     There Is No Evidence of "Parcel Outlines" That Define or Correspond to
            a "Spatial Boundary" ................................................................................. 28

     3.     The Accused Matterport Models Are Not Generated and Rendered From
            a Selected Viewpoint ................................................................................. 29

IV.    CONCLUSION.................................................................................................... 30

████████

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*ADC Telecommunications, Inc. v. Switchcraft*, Inc.,
281 F. App'x 989 (Fed. Cir. 2008) .......................................................... 19, 20

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..................................................................... 27

*Am. Home Assurance Co. v. United Space All. LLC*,
378 F.3d 482 (5th Cir. 2004) ....................................................................... 12

*Arsement v. Spinnaker Exploration Co., LLC*,
400 F.3d 238 (5th Cir. 2005) ....................................................................... 14

*Bellows v. Amoco Oil Co.*,
118 F.3d 268 (5th Cir. 1997) ....................................................................... 15

*Cordance Corp. v. Amazon.com, Inc.*,
658 F.3d 1330 (Fed. Cir. 2011)............................................................. 1, 3, 16

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
851 F.2d 1387 (Fed. Cir. 1988).................................................................... 17

*Goodman v. Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) ......................................................................... 6

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019).................................................................... 17

*InTouch Techs. v. VGO Comms., Inc.*,
751 F.3d 1327 (Fed. Cir. 2014)...................................................................... 7

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*,
554 F.3d 1010 (Fed. Cir. 2009)..................................................................... 24

*KSR Int'l Co. v. Teleflex, Inc.*,
50 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007)................................... 6

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
485 F.3d 1157 (Fed. Cir. 2007)...................................................................... 7

*McBeth v. Carpenter*,
565 F.3d 171 (5th Cir. 2009) ....................................................................... 24

*Mears v. Jones*,
No. 1:17-CV-6-KS-MTP, 2019 WL 3483157  (S.D. Miss. July 31, 2019)....................... 6

████████████

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001)...................................................................... 20

*Montano v. Orange County, Texas*,
    842 F.3d 865 (5th Cir. 2016) ............................................................................ 8

*Morante v. Am. Gen. Fin. Ctr.*,
    157 F.3d 1006 (5th Cir. 1998) ...................................................................... 1, 2

*Northpoint Tech. v. MDS America*,
    413 F.3d 1301 (Fed. Cir. 2005)............................................................. 3, 10, 11

*Reeves v. Sanderson Plumbing Prod.*, Inc.,
    530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)............................... 20

*Sundance, Inc. v. DeMonte Fab. Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008)...................................................................... 11

*Tokai Corp. v. Easton Enterprises, Inc.*,
    632 F.3d 1358 (Fed. Cir. 2011)...................................................................... 18

*WMS Gaming Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)...................................................................... 17

## Treatises

9B Charles Alan Wright & Arthur K. Miller, *Federal Practice and Procedure* § 2537 (3d ed.
    April 2021)........................................................................................................ 2

## I.      INTRODUCTION

Surefield's kitchen sink motion showcases its disregard of the law and the evidence presented at trial.  With respect to the jury's invalidity verdict, Surefield hopes the Court will overlook the fact that it waived the majority of its arguments, having failed to preserve them in a pre-verdict Rule 50(a) motion.  *See Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998).  Surefield also ignores that Redfin presented multiple alternative invalidity theories at trial, including both anticipation and obviousness theories based on multiple prior art systems.  Thus, Surefield's challenges to just one of those theories or one prior art system are insufficient as a matter of law to disturb a jury's general verdict supported by multiple alternative theories. *See Cordance Corp. v. Amazon.com, Inc.,* 658 F.3d 1330, 1339 (Fed. Cir. 2011).  Finally, Surefield disregards the full evidence presented at trial, asking the Court to focus myopically on cherry-picked expert testimony, ignoring the mountains of other evidence from both fact and expert witnesses in the record that supports the jury's verdict.

Surefield's challenges to the jury's non-infringement verdict suffer from the same disregard.  Surefield ignores that the burden of proving infringement rests with Surefield; the jury's non-infringement verdict was justified based solely on Surefield's deficient infringement presentation.  It also ignores trial testimony regarding the accused Matterport virtual tours that show that Redfin does not make or sell the Matterport virtual tours, that Redfin has no involvement in or control over Matterport's creation of the accused virtual tours, and that the accused virtual tours do not meet all the requirements of the asserted claims.  A review of the full record and all the evidence leaves no doubt that there is substantial evidence supporting the jury's verdict.

██████████

## II.  SUREFIELD IS NOT ENTITLED TO JMOL AS TO VALIDITY

### A.  Surefield's Arguments Regarding Motivation to Combine Do Not Entitle It to Judgment as a Matter of Law

#### 1.  Surefield Waived Its Motivation to Combine Arguments

For the first time in its Rule 50(b) motion, Surefield raises arguments, claiming Redfin failed to present evidence of a motivation to combine or modify prior art.  It is black letter law that a party cannot "renew" a motion for judgment as a matter of law under Rule 50(b) on grounds that were not previously raised in its pre-verdict Rule 50(a) motion.  *See* 9B Charles Alan Wright & Arthur K. Miller, *Federal Practice and Procedure* § 2537 (3d ed. April 2021) ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion"); *Morante*, 157 F.3d at 1010 ("It is well-settled in this circuit that a motion for judgment as a matter of law filed post-verdict cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of evidence.").  Surefield, however, disregards this law, hoping to undo the jury's invalidity verdict based on previously unasserted motivation to combine arguments.

Specifically, in its pre-verdict Rule 50(a) motion, Surefield argued that Redfin did not present sufficient evidence of a motivation to combine the Google Street View prior art system ("GSV") with the pre-October 2013 Redfin.com website.  *See* D.I. 227 at 8-9.  But its renewed Rule 50(b) goes beyond the scope of its pre-verdict motion, arguing a lack of motivation to combine GSV, as well as the Matterport prior art, with other unspecified references.  *See* D.I. 248 at 4 fn. 1.  That is not allowed.  Surefield has waived all its arguments regarding the purported lack of evidence of motivation to combine other than that regarding the combination of GSV with the Redfin prior art website.

### 2.     Redfin's Evidence is Sufficient to Support the Jury's Verdict

Even if the Court were to entertain Surefield's new arguments, they do not support overturning the jury's verdict.  A "general jury verdict of invalidity should be upheld if there was sufficient evidence to support *any* of the alternative theories of invalidity."  *See Cordance,* 658 F.3d at 1339 (emphasis added).  In addition to obviousness, the jury was instructed that "Redfin contends indoor Google Street View 2013 system *anticipates* **the plaintiff's asserted claims**." Tr. 1689:22-24 (emphasis added).  Surefield did not object to this instruction.  Because anticipation does not require any evidence of motivation to combine, even if there was a lack of such evidence – which there is not – that is not enough to overturn the jury's general verdict.

Additionally, Surefield's motion does not provide any analysis of the trial evidence "as a whole," but selectively focuses on isolated and incomplete snippets of testimony from Dr. Navratil, ignoring entirely other testimony relevant to both anticipation and obviousness, including testimony from Dr. Furukawa (a former Google engineer) who described GSV (Tr. at 1124:17-1166:21), Mr. Wiener (Redfin's President of Real Estate Operations) who described Redfin's prior art website (Tr. at 942:6-946:15), and Mr. Gausebeck who described the Matterport prior art system (Tr. at 1009:9-1039:16).  This too is fatal to Surefield's motion. *Northpoint Tech. v. MDS America*, 413 F.3d 1301, 1311 (Fed. Cir. 2005) ( "the critical question is whether the evidence, taken as a whole, was sufficient to support the jury's verdict.").  Based on the "evidence, taken as a whole," the jury correctly found sufficient evidence to reach its invalidity decision on anticipation.

Surefield also fails to identify the specific claim or claim element for which it contends evidence of motivation to combine was required but not presented.  Instead, Surefield makes only vague reference to six trial transcript citations (*see* D.I. 248 at 4 fn 1), without any explanation as to why evidence of motivation to combine is necessary or lacking.  For example,

Surefield points to the transcript at 1369:24-1370:10 with a parenthetical that states "'simple matter' for Google to add a parcel outline." The footnote also points to testimony "combining GSV with Redfin.com," the only argument raised in the Rule 50(a) motion, as well as testimony it annotates as "'obvious for Google engineers' to add parcel outline."[1] Presumably, Surefield is contending that motivation to combine evidence is insufficient for the "parcel outline" claim elements. But Surefield's characterization of the trial testimony misrepresents what was actually presented to the jury for the "parcel outline" claim limitations.

With respect to the "parcel outline" limitations (which require that spatial boundaries from the virtual model (*i.e.*, the boundaries between rooms or floors in the model) be used define or correspond to a "parcel outline" (construed by agreement as "a representation of the legal boundary of the land (i.e., the property lines)), there was sufficient evidence of both anticipation and obviousness based on Surefield's own expert's, Dr. Melendez's, explanation of the claim limitation. Dr. Melendez testified that "if you know the location of one of those spatial boundaries, then you know what the bound is, unless you built your house on someone else's property, which hopefully you didn't do that." Tr. 587:21-588:10. He went on to say that the accused virtual tours on Redfin's website met this limitation because "[b]asically the property, the real property that we've had the virtual model of is inside that thing. Geographically." Tr.

---

[1]     The same footnote also refers to testimony annotated as "'obvious' to do rotation from a synthetic viewpoint." But Dr. Navratil and Dr. Furukawa presented evidence GSV actually showing "the synthetic viewpoints enable[ing] rotation about a vertical axis and a pitch." Tr. 1376:10-1377:13 and DX-92. Thus, no motivation to combine is required since the prior system actually did it. Similarly, the footnote refers to testimony as "combining GSV with Museum of Modern Art website." But again, this is not a theoretical combination or modification. Dr. Navratil testified that the same website provided both the GSV tour and the ability to buy a ticket to tour the museum in person: "Not only that it was known, but that actually the Museum of Modern Art did it." DX-226 and Tr. 1378:6-20. Thus, no motivation to combine is required when the combination was explicitly disclosed in the prior art.

590:8-13.  In light of this testimony, Redfin's expert, Dr. Navratil, similarly showed the jury how GSV had knowledge of the location of the spatial boundaries in its virtual models – that is, as Dr. Melendez put it, the GSV "virtual model is inside that thing.  Geographically."  Indeed, Dr. Navratil explained and showed the jury in the video of GSV (DX-215) that "this is a capture of the gentleman dropping the Pegman onto the White House.  And we see the extent of the virtual tour superimposed on the White House."  Tr. 1369:25-1370:3.  This evidence was more than sufficient to show that the prior art GSV system included the parcel outline elements.

In addition, Dr. Melendez testified that simply displaying "a green rectangle" on a map around the property line is evidence of the parcel outline limitation.  Tr. 589:2-590:1.  Were the jury to accept this testimony (as it was at liberty to do), Mr. Wiener testified that such feature existed on Redfin's website and worked the same back in 2008.  Tr. 943:2-7.  Dr. Navratil relied on this testimony, explaining that Redfin did this years before the patents were filed and thus, one of skill in the art would have known that doing it in a Google map would be obvious.  *See* Tr. 1374:22-1375:3.  This testimony was further corroborated by documentary evidence submitted to the jury, including DX-226 showing 2010 bing.com webpage titled "Overlaying Parcel Boundaries on Bing Maps," and a 2007 digimap.com webpage explaining that the Digimap ParcelStream code to "instantly display parcel lines" could be use with "Microsoft® Virtual Earth™ or Google Maps™."  *See* DX-226 at 5-7, 245-247; *see also*, Tr. 1021:22-25.

Dr. Navratil also explained that the additional requirement of having spatial boundaries defining the parcel outline in the GSV White House tour – what he explained as "having the chicken wire" – would be an obvious addition since Google had the technical capability and digital content to do so.  *See* Tr. 1370:4-10.  He explicitly testified as to the motivation to do so:

"it would have allowed you to walk in the Rose Garden or something like that. It would have been an interesting thing." *Id.* Surefield's brief ignores this testimony.

Surefield also mischaracterizes Dr. Navratil's testimony to suggest that he applied the wrong obviousness standard. While Surefield's assertion is incorrect, it is also irrelevant.[2] The Court, not the technical expert, is in charge of instructing the jury on the law. *See Mears v. Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1-2 (S.D. Miss. July 31, 2019) ("[I]t is the Court's job – not an expert witness's – to instruct the jury as to the applicable law."); *cf. Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law.") (citations omitted). Here the Court did so correctly: "Keep in mind the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art." Tr. 1692:17-20. Surefield was free to cross-examine Dr. Navratil on this issue if it believed he applied the wrong standard (which he did not); but regardless, this testimony does not show any lack of substantial evidence to support the verdict.

Moreover, "[w]hile an analysis of any teaching, suggestion, or motivation to combine elements from different prior art references is useful in an obviousness analysis, the overall inquiry must be **expansive and flexible**." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415, 419, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). Surefield's analysis regarding motivation to combine is far from "expansive and flexible." Its brief ignores the evidence shown to the jury in the

---

[2]    Dr. Navratil correctly explained that obviousness requires evidence that every limitation of the claim is in the prior art and that it has to be analyzed "how one of ordinary skill in the art would view these aspects that I point out." Tr. 1450:2-16. He was not questioned about whether motivation to combine was also required. He then concluded that "I think it's a general summary of it." Tr. 1450:20-22. More importantly, on direct, Dr. Navratil testified applying the correct standard, including providing the motivation to combine or modify references when appropriate. *See e.g.*, Tr. 1370:4-10.

multiple videos regarding GSV or fails to mention the testimony of Dr. Furukawa, who provided

a comprehensive review of GSV from his personal knowledge of it.  Surefield also overlooks the

fact that its own inventors testified that they were unable "identify any differences between "the

Surefield system that it purports to have invented in October 2013 and the Google Art Project

system from April 11, 2012."  Tr. 1198:24-1199:6.  "Indeed, the common sense of those skilled

in the art demonstrates why some combinations would have been obvious where others would

not."  *Leapfrog Enters., Inc. v. Fisher-Price, Inc*., 485 F.3d 1157, 1161 (Fed. Cir. 2007).

Surefield's reliance on *In Touch* is misplaced.  There, the expert's "testimony was

nothing more than impermissible hindsight; she opined that all of the elements of the claims

disparately existed in the prior art, but failed to provide the glue to combine these references."

751 F.3d 1327, 1348 (Fed. Cir. 2014).  In contrast, the evidence here shows that the alleged

combinations Surefield complains about were explicit in the prior art, *e.g*., the Museum of

Modern Art's website offering both the GSV virtual tour and tickets to tour the museum in

person, or GSV's actual capability to rotate about vertical and horizontal axis from a synthetic

viewpoint.  Tr. 1376:10-1377:13; DX-92.  Thus, Dr. Navratil's testimony was not based on

hindsight; it was based on evidence showing that the prior art had already combined all the

elements in Surefield's claims.  The claims do not include any novel combination of elements.

**B.**    **The Verdict of Invalidity of Claims 1 and 2 of the '673 Patent and the
Asserted Claims of the '111 Patent Is Supported by Substantial Evidence**

Surefield next argues that the record lacks substantial evidence to support the jury's

finding that claims 1 and 2 of the '673 patent and the asserted claims of the '111 patent are

invalid.  *See* D.I. 248 at 6-8.  Surefield builds its argument upon the false premise that Dr.

Navratil admitted that the requirement "defining spatial boundaries . . . ***using the image data***"

was an advancement over the prior art. *Id*. at 6 (emphasis in original). From there, it argues that

Redfin failed to present any evidence to the contrary. Surefield is wrong on both accounts.

As a preliminary matter, the trial record shows that Dr. Navratil made no such admission.

At trial Dr. Navratil explicitly testified that he did not believe that "defining spatial boundaries . .

. using the image data" was an advancement over the prior art:

> **Q**: And **you agree that "defining spatial boundaries using the image data" is a differentiation of the prior art, correct**?
>
> **A**: **Actually, I don't know that I do**. As we walked through in the filing of the '885 patent, that that's a differentiation. It's really the parcel outline that was able to get this patent line across. And that parcel outline notion is what carries through on 18 as well.

Tr. 1459:21-1460:4 (emphasis added). Thus, Dr. Navratil explained that the differentiation over

the prior art recognized by the Patent Office was due to the inclusion of the "parcel outline"

requirement in the limitation, not the limitation of "defining spatial boundaries using the image

data" isolated from the rest of the claim requirement. Dr. Navratil's deposition testimony cited

by Surefield does not establish otherwise. Dr. Navratil was simply confirming that the Patent

Office made certain findings during prosecution, which did not involve all the prior art evidence

Redfin presented at trial. In any event, it is well within the jury's purview to accept or disregard

whatever evidence is presented at trial. *See Montano v. Orange County, Texas*, 842 F.3d 865,

874 (5th Cir. 2016) ("evidence presented at trial, including inconsistent testimony by witnesses .

. . between that offered in a deposition and at trial, presents a classic example for why it is for the

jury alone to judge the credibility of witnesses and weigh the evidence").

Nonetheless, contrary to Surefield's assertion, Redfin presented ample evidence to

support the jury's finding that the requirement of "defining spatial boundaries . . . using the

image data" existed in the prior art. For example, Redfin presented numerous videos showing

operation of GSV. *See e.g.* DX-215, DX-217, DX-218, DX-219. Dr. Furukawa described the

███████████

GSV system that he built, testifying that the "system takes to the image taken in that room, more like a quick navigation, across floors, across different rooms.  Now, back to another room in the Street View imagery.  And you can, again, look around, left and right, top and bottom."  Tr. 1136:24-1137:4; DX-215.  Thus, the jury considered not only video evidence of GSV showing spatial boundaries (rooms and floors) defined by the images taken of those areas, but Dr. Furukawa also confirmed that captured images were used to depict the rooms and floors in the GSV.  *Id*; *see also* Tr. 1136:4-1137:22, 1140:10-1141:3, 1147:19-1150:10, 1152:13-1153:1, Tr. 1151:1-1152:1; 1154:6-25, 1161:7-1162:4 and DX-215, DX-217, DX-197, DX-198, DX-259, DX-92 (████████████████████████████████████████████ ███ ).

Dr. Navratil further confirmed this, testifying that the White House GSV tour shown in DX-215 shows "defining spatial boundaries . . . using the image data," explaining that in GSV users can "see a plurality of rooms . . . and the boundaries of a plurality of rooms."  Tr. 1383:7-17, 1396:18-1397:7.  Surefield contends that this testimony from Dr. Navratil does not address whether the rooms and room boundaries are defined "*using image data.*"  Surefield's argument ignores that Dr. Navratil's testimony refers to the DX-215 video, which jurors could plainly see used image data for the virtual tours and rooms within the tour.  *Id*.  And Dr. Navratil testified that from the video "we see, again, how the cursor moves along the wall and the floor. We know that there's actual spatial boundaries defined within this virtual tour."  Tr. 1369:19-22.  Thus, despite Surefield's unsubstantiated claims to the contrary, there is substantial evidence in the form of video and testimony from Drs. Furukawa and Navratil to support the jury's verdict.

### C.   **Surefield's Arguments Regarding the Matterport Prior Art System Do Not Entitle It to Judgment as a Matter of Law**

#### 1.   **Surefield Waived Any Challenge to the Sufficiency of Redfin's Evidence of the Matterport Prior Art System**

Surefield did not argue in its Rule 50(a) motion that Redfin failed to present an element-by-element analysis of the Matterport prior art.  *See generally* D.I. 227.  Thus, its attempt to do so now (*see* D.I. 248 at 8-9) should be disregarded as it failed to preserve the argument.

#### 2.   **Surefield Has Failed to Show that Redfin's Evidence Was Insufficient to Support the Jury's Verdict**

Notwithstanding Surefield's waiver, its assertion that there was insufficient evidence of the Matterport prior art system is not enough to overturn the jury's verdict.  Again, the jury's general invalidity verdict could be based on any theory presented at trial.  A purported failure of proof as to one prior art system is not enough to disturb the jury's verdict.  *Northpoint Tech.*, 413 F.3d at 1311 ("[a] failure of proof with respect to any single item of evidence does not justify a grant of either JMOL or a new trial …").  Moreover, Surefield limits its analysis of the Matterport prior art evidence to the testimony of Dr. Navratil.  But the jury is entitled to rely on any evidence presented during trial.  The jury also heard the testimony of Dr. Melendez, Mr. Gausebeck, as well as video and other evidence showing the operation of the Matterport prior art system.  *See* Tr. 1009:9-1039:16, DX-375, DX-373, DX-610, DX-266, DX-226, DX-264, DX-353, DX-356, DX-780, DX-66, DX-531, DX-541.  Mr. Gausebeck testified that the Matterport system, which Dr. Melendez testified mapped to the Surefield claims, "has worked in the same fundamental way since 2013 and earlier."  *See* Tr. at 1139:20-1142:1, 1047:21-1048:2.  Thus, the jury could have accepted Dr. Melendez's mapping to the claims, while finding that Redfin was not involved and thus did not infringe, and then also accepted Mr. Gausebeck's explanation showing that the same mapping applies to the prior art Matterport system or at least that the

claims would have been obvious in light of Matterport's prior art system.  In any case, expert testimony is not always required to sustain a holding of obviousness.  *Sundance, Inc. v. DeMonte Fab. Ltd.*, 550 F. 3d 1356, 1365 (Fed. Cir. 2008).  Thus, because Surefield's argument is only limited to the testimony of Dr. Navratil, it has failed to show "whether the evidence, taken as a whole, was sufficient to support the jury's verdict."  *Northpoint Tech.*, 413 F.3d at 311.

### D.      Surefield's Arguments Regarding Evidence of GSV Do Not Entitle It to Judgment as a Matter of Law

#### 1.      Surefield Waived Any Challenge to the Sufficiency of Redfin's Evidence of GSV

In its pre-verdict Rule 50(a) motion, Surefield argued that Redfin failed to show the prior art disclosed the following claim limitations:

- "determining a geometric proxy for the selected viewpoint using the determined camera geometry and the point cloud" ('673 patent);
- "define spatial boundaries . . .  using the image data . . ."  ('673 and '111 patents);
- "generate" or "defining" "spatial boundaries of the plurality of spaces" of the real property ('885 and '973 patents);
- "generate ground truth image data by annotating the images of the real property with second labels indicating the capture location" ('885 patent);
- visually present the virtual model on a first portion of the user interface, a map overlap on a second portion of the user interface" ('885 patent);
- "wherein the synthetic viewpoints enable a rotation about a vertical axis and a pitch" ('885 patent)

*See* D.I. 227 at 9-10.  Surefield's Rule 50(b) motion does not "renew" these arguments.  Instead, it now addresses four totally different claim limitations, arguing that Redfin failed to apply the proper claim construction of, or failed to show GSV disclosed, the following limitations:

- "combine and process . . . image data to create a plurality of synthesized viewpoints . . ." ('885 and '973 patents);
- "schedule an in-person tour" or "scheduling a tour" ('885 and '973 patents);
- "determining camera geometry of the plurality of images" and "wherein the camera geometry is determined by a first pass feature detection . . ." ('673 patent);
- "defining/generating a plurality of spatial boundaries . . . defining/corresponding to a parcel outline" ('885, '111, and '973 patents)

*See* D.I. 248 at 9-14 (Section I.D.1.-I.D.4.).  Because Surefield's 50(a) motion did not preserve

these new arguments, they have been waived.

> ### 2.    Redfin Presented Substantial Evidence that GSV Discloses "Synthesized Views/Viewpoints Created from Image Data Captured from Two or More Capture Locations"

Even if the Court were to overlook Surefield's waiver, there was substantial evidence to

support the jury's verdict.  Surefield's own motion acknowledges the evidence Redfin presented

at trial.  Specifically, the Court's construction required showing that GSV created "an image of a

space from a position other than a capture location" by "combining and processing image data

from two or more capture locations."  D.I. 77 at 1.  As Surefield admits, Dr. Navratil testified to

this exactly, explaining that GSV combined image data from two different capture locations to

create a blurred image in the space between two capture locations:

> **Q:**    All right.  Can you tell the jury what 1.6 requires?
>
> **A:**    Yes, sir.  So 1.6 reads: Combine and process two or more instances of ground truth image data to create a plurality of synthesized viewpoints.
>
> **Q:**    And was that in the Google Street View Indoor product back before Surefield approached the Patent Office?
>
> **A:**    Yes, sir.  We saw an example, for instance, in the video when we click on one of those arrows and it got a little blurry as we moved from one capture location to the next.  That's a synthesized viewpoint, because, in between, there isn't capture information.  And they're actually blending the images from each capture location in order to give the illusion of movement as the virtual camera moves.
>
> **Q:**    And is that what we see here from a still image of DX-218?
>
> **A:**    Yes sir.  This is another example I found.  So as we click an arrow to move down the hallway of the White House, you can see there's no arrows here, that there's – and that's part of the indication that we know that we're in that transition process.  And you can see on both the left and right how the image is a little blurred as ***it's combining the image from the previous capture location to the next capture location to generate this synthetic image***.

Tr. 1363:1-1364:3; DX-218.  This evidence alone is enough for a jury to find that GSV disclosed

the "synthesized views" limitation.  *See Am. Home Assurance Co. v. United Space All. LLC*, 378

F.3d 482, 487 (5th Cir. 2004) (question on JMOL is "whether the state of proof is such that

12

reasonable and impartial minds could reach the conclusion the jury expressed in its verdict")

(internal quotations omitted).  But Redfin also presented video evidence of GSV, along with Dr.

Navratil's additional testimony explaining that GSV combines the panoramas from two capture

locations to create a synthetic blurred view between the two locations that is not at a capture

location, as required by the Court's claim construction.  Tr. 1336:19-23, 1338:10-1339:7; DX-

215; *see also* Tr. 1405:4-13.  Dr. Furukawa also explained, for example, how in GSV "we use

the imagery, panorama images, which is also in the Google Art Project, to add a color to the

shape models. So there it looks like a building model … then you Zoom down to on top of one

of the museums in New York City. Then you see our building shape models with color." *See*

*e.g.*, Tr. 1160:9-1165:14; *see also*, DX-92, DX-259.  Dr. Navratil explained how this aerial view

of the museums, a composite of multiple panoramas from multiple capture locations shows "a

synthetic view of this museum, that we're looking down – it's similar to the dollhouse view in

the Matterport system."  Tr. 1376:20-1377:3; DX-92.

In apparent recognition of this, Surefield contends that the jury's verdict cannot stand

because Redfin did not present any evidence as to why a person of ordinary skill in the art would

have been motivated to modify GSV to meet this limitation.  Surefield's argument is a red

herring.  As Redfin presented evidence and relied on the fact that GSV did, in fact, disclose

creating synthetic views, there was no need modify GSV to achieve this.  Thus, the jury had

sufficient evidence to support its invalidity verdict.

### 3.      Redfin Presented Substantial Evidence of "Scheduling a Tour"

Surefield next contends that Redfin did not present evidence that GSV disclosed

"scheduling a tour."  It argues that Redfin pointed only to the ability to purchase tickets to the

Museum of Modern Art on the museum website, claiming that there was no evidence showing

that a person of ordinary skill would have been motivated to combine GSV and the museum

website.  D.I. 248 at 11.  But a review of the evidence shows that Surefield simply ignores evidence that explicitly shows the combination of GSV with the Museum of Modern Art website.  Specifically, Redfin showed that back in 2011, one example use of GSV was in the Museum of Modern Art website, which had both the GSV virtual tour of the museum, as well as a page to purchase tickets to tour the museum in person.  *See* DX-226 at 20-28.  Indeed, in the testimony cited by Surefield, Dr. Navratil explained this in detail, testifying that not only was it known in the prior art that you could combine GSV with scheduling a tour, but the Museum of Modern Art actually did this by including the GSV virtual tour and the ability to purchase tickets to visit the museum on its website.  Tr. 1377:19-1378:12; 1411:7-1413:8; DX-219 ("anyone will be able to experience the same tour you'd get if you were able to come here for the public tour").

Surefield also ignores that Redfin presented other evidence that scheduling tours was known in the prior art.  Specifically, Redfin showed that its own prior art website included the ability to schedule tours.  *See* Tr. 942:4-11, DX-263 (showing Redfin's 2008 website's ability to schedule in-person property tours); Tr. 944:1-7, DX-262 (showing Redfin's May 2013 website's ability to schedule in-person property tours).  Thus, the jury could have relied on any of this evidence to support its verdict of invalidity, whether based on anticipation or obviousness.

### 4. Redfin Presented Substantial of "Camera Geometry"

Surefield also argues that there was not substantial evidence that GSV disclosed "determining camera geometry" because Dr. Navratil's testimony "misleadingly contradicted the evidence in the record."  D.I. 248 at 12.  As a preliminary matter, the existence of contradictory evidence is not enough to disturb a jury's verdict; judgment as a matter of law is appropriate only when "the facts and inferences point so strongly and overwhelmingly" in Surefield's favor that no jury could reasonably have found invalidity.  *Arsement v. Spinnaker Exploration Co., LLC*, 400 F.3d 238, 249 (5th Cir. 2005), *citing Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir.

███████████████████

1997).  And here, Redfin presented substantial evidence that GSV disclosed "determining camera geometry using a plurality of images."  First, Dr. Furukawa explained GSV's process of using information from the captured images to determine the "camera geometry," *i.e.*, "the location, orientation, and/or physical dimensions of the camera's imager."  *See* D.I. 77 at 2. Specifically, Dr. Furukawa testified that GSV performed something called "pose estimation" to estimate the location of where each photo was taken.  Tr. 1151:1-1153:3; DX-198.

Second, Dr. Navratil went on to further explain that "pose estimation and optimization is another way of saying determining camera geometry," testifying that the GSV pose estimation process used captured images to determine "the location and orientation of each panorama."  Tr. 1385:18-1387:11; DX-258.  Surefield argues that this testimony from Dr. Navratil relates only to use of images captured from SLR cameras, but Redfin presented evidence that GSV included images inside businesses captured from SLR cameras so that was all part of the same GSV system.  *See e.g.* Tr. 1128:22-1130:5; 1150:11-24; 1330:18-24; 1362:8-14; 1387:2-11.

Surefield further argues that Redfin did not present substantial evidence that GSV determined camera geometry by a "first pass feature detection," claiming that Dr. Navratil failed to reference the Court's claim construction.  D.I. 248 at 12-13.  But Dr. Navratil's testimony is completely consistent with the Court's construction.  He testified that GSV pose estimation used first pass feature detection, which the Court construed as "an initial detection of geometric features in images."  Specifically, Dr. Navratil testified that GSV pose estimation included estimating location and orientation of panoramas where there was "no other information available besides visual context, e.g. no GPS or depth data."  Tr. 1386:17-1387:6; DX-258.  And

████████████████████████████████

████████████████████████████████

███████████████

█████████████████████████   Tr. 1152:16-1153:1; DX-198.  Thus, contrary to Surefield's

assertion, there is substantial evidence in the record showing that GSV disclosed the

"determining camera geometry" and "first pass feature detection" limitations.

### 5.      Redfin Presented Substantial Evidence of a "Spatial Boundary Corresponding to a Parcel Outline"

Surefield contends that Dr. Navratil was incapable of applying the Court's claim

construction of "spatial boundaries defining a parcel outline."  But Dr. Navratil testified to the

contrary, stating that he recognized and applied the Court's construction of the term.  Tr.

1421:23-1422:15.  And as explained in Section II.B, above, there was plenty of evidence

presented at trial – including testimony from both Dr. Melendez and Dr. Navratil – upon which

the jury could have based its finding that GSV either disclosed or rendered obvious the "spatial

boundaries defining a parcel outline" limitation.  *See* Section II.A.2 supra at 4-6.

### E.      Surefield Did Not Present Substantial Evidence of Secondary Considerations

Surefield incorrectly contends that it is entitled to JMOL of validity, claiming Redfin

failed to rebut Surefield's evidence of secondary considerations of non-obviousness.  Surefield's

position is wrong for several reasons. First, any purported lack of evidence rebutting secondary

considerations is insufficient as matter of law to warrant JMOL.  As explained above, the jury

issued a general verdict of invalidity that could be based on anticipation, obviousness or both.

Given that secondary considerations of non-obviousness have no impact on a finding of

anticipation, any failing related to such considerations, cannot be a ground for JMOL.  *See*

*Cordance,* 658 F.3d at 1339 (emphasis added) ("[A] general jury verdict of invalidity should be

upheld if there was sufficient evidence to support ***any*** of the alternative theories of invalidity.").

Second, Redfin had no obligation to present rebuttal evidence because Surefield failed to

first meet its burden of establishing secondary considerations of non-obviousness for what was

actually claimed.  *See WMS Gaming Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1359 (Fed. Cir. 1999) ("The patentee bears the burden of showing that a nexus exists.").  It is well-established that "evidence of secondary considerations must have a 'nexus' to the claims, i.e., there must be 'a legally and factually sufficient connection' between the evidence and the patented invention." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (citations omitted).

While Surefield alleges that its technical expert, Dr. Melendez, "provided ample testimony and citations to evidence in the record regarding the nexus between the claimed inventions and Redfin's accused product, Redfin's copying of the claimed inventions, and the resulting commercial success of Redfin's accused product after said copying" (D.I. 248 at 14), given that the jury found that the Redfin system does not practice the claimed invention, any evidence presented by Dr. Melendez about the Redfin system is not relevant to non-obviousness of the claimed inventions.  Further, critically missing from Surefield's evidence is any mapping of the source of the alleged "copying" to any claim of the Surefield patents.  Dr. Melendez testified that he based his conclusion of copying on the alleged use of "photorealistic panoramas and the snap-to-pano navigation" in the Matterport models.  Tr. 1642:15-1645:4.  But a system with just these features is not coextensive with any of the asserted claims.  *See Demaco*, 851 F.2d at 1392 ("[w]hen the thing that is commercially successful is not coextensive with the patented invention … the patentee is not entitled to a presumption of nexus.").  Copying "requires evidence of efforts to replicate a specific product."  *Wyers v. Master Lock Co*., 616 F.3d 1231, 1246 (Fed.Cir.2010).  But Surefield presented no evidence of what product was allegedly copied much less any evidence of any such product being co-extensive with any claim of the patents in suit.  In any event, Redfin presented evidence rebutting any suggestion of copying:  Mr. Gausebeck testified that there was no copying of any Surefield product.  *See* Tr. 1053:17-1054:9;

1048:3-6 ("Have you ever made any change to the Matterport system based on anything you saw from Surefield?  A. No.").

Moreover, the evidence shows that Surefield's commercial system did not actually practice the asserted claims.  For example, all the asserted claims in three of the four patents require spatial boundaries defining or corresponding to "a parcel outline."  Yet Mr. McGarty, one of the named inventors, testified:  "So while you were at Surefield, did Surefield develop an operational system that defined a parcel outline? A. I don't recall any parcel boundaries operational during my time." Tr. 1197:23-1198:2.  And Mr. Shekhar Dwivedi, the engineer who "designed and implemented data capturing and image processing pipeline for a 3D tour" at Surefield testified that he had never heard about "parcel outlines" before his deposition: "Q. So in your experience working at Surefield, you were not aware of any use of parcel boundaries or parcel outlines; is that correct? A. Parcel? No. Parcel boundary?"  Tr. 1191:2-10, 20-25.  Indeed, Surefield failed to provide any evidence that any of the alleged inventions claimed in its patents were copied or otherwise were the subject of any of the secondary considerations.

In addition, the evidence presented by Surefield's own witnesses showed lack of secondary considerations.  Commercial success based on prior art features cannot be attributable to non-obviousness of Surefield's claims.  *See Tokai Corp. v. Easton Enterprises, Inc.*, 632 F. 3d 1358, 1369 (Fed. Cir. 2011) ("If commercial success is due to an element in the prior art, no nexus exists.").  Here, the inventors testified that they were unable to differentiate their alleged invention from GSV.  Tr. 1198:21-1199:14.  Mr. Dwivedi also testified that he accurately described his work at Surefield as "Google Street View applied to a home."  Tr. 1191:2-14.  And Mr. McGarty admitted that navigation used by Surefield was in fact "pretty similar" to the navigation in GSV.  Tr. 1198:21-1199:14.  The jury was also presented with evidence that the

inventors contemporaneously lauded the photorealistic quality provided by GSV.  *See* Tr. 1185:10-1187:17 (stating "Interesting. The quality looks pretty good, and the nav is pretty good because it's using the Google UI.")  Thus, the two features Dr. Melendez based his secondary consideration analysis on were in fact features already present in the prior art GSV system.  In addition, one of the inventors and Surefield's only live fact witness, Mr. Eraker, testified that the inventions were the opposite of commercially successful.  *See* Tr. 276:18-277:3 (Surefield failing as a business, unable to attract customers or investors, and no interest in purchasing the patents); 1521:3-19 ("[i]n spite of the attempts, no one [in the industry] has paid a penny for these patents"); *see also* Tr. 1199:15-20 (Mr. McGarty testifying regarding lack of licensing).

  **F.**  **Redfin Applied a Consistent Interpretation of Claims**

  In its Rule 50(a) motion, Surefield did not argue that Redfin inconsistently interpreted claims.  But it now contends for the first time that Redfin's expert improperly applied different claim constructions for infringement and invalidity.  *See* D.I. 248 at 14-15.  Having failed to preserve this argument in its Rule 50(a) motion, Surefield cannot bring it now.  Additionally, as explained in Section III.B.3 below, contrary to Surefield's assertion, Redfin did not inject an "ordered combination" requirement to the claims, and thus did not apply different constructions for purposes of infringement and invalidity.  *See* Section III.B.3 infra at 29-30.

**III.**  **SUREFIELD IS NOT ENTITLED TO JMOL AS TO INFRINGEMENT**

  **A.**  **Surefield Did Not Carry Its Burden of Establishing Infringement**

  On the issue of infringement, Surefield improperly seeks to shift the burden of proof to Redfin – arguing that Redfin allegedly failed to present sufficient evidence of ***non-infringement***. D.I. 248 at15-20.  But Redfin has no burden to prove non-infringement.  *ADC Telecommunications, Inc. v. Switchcraft*, Inc., 281 F. App'x 989, 992 (Fed. Cir. 2008) ("[It is the plaintiff's] burden as the patentee to introduce preponderant evidence of infringement, rather

than … [an accused infringer's] burden to present evidence of noninfringement.").  Indeed, the

sufficiency of Redfin's evidence of non-infringement need not even be considered absent

Surefield establishing infringement with evidence "that the jury would not be at liberty to

disbelieve."  *Mentor H/S, Inc. v. Med. Device All., Inc*., 244 F.3d 1365, 1375 (Fed. Cir. 2001)

("Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the

party bearing the burden of proof has established its case by evidence that the jury would not be

at liberty to disbelieve and the only reasonable conclusion is in its favor."); *ADC*

*Telecommunications.,* 281 F. App'x at 992 (refusing to consider the adequacy of the defendant's

non-infringement evidence "because it was ADC's [plaintiff's] burden as the patentee to

introduce preponderant evidence of infringement…").  In other words, before even addressing

the adequacy of Redfin's non-infringement positions, Surefield needs to establish that it proved

infringement with uncontradicted evidence that no jury could reasonably reject.  *Id*.; *Reeves v.*

*Sanderson Plumbing Prod*., Inc., 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105

(2000) ("[On a JMOL the court] must disregard all evidence favorable to the moving party that

the jury is not required to believe.").  Surefield has failed to do this.

Even a cursory review of the "evidence" presented by Surefield shows that Surefield

failed to carry its burden.  At trial, Surefield relied exclusively on Dr. Melendez in its attempt to

map the asserted patent claims to any accused technology.[3]  Dr. Melendez's trial testimony was

disjointed, unclear and fundamentally incomplete.  He failed to identify the accused technology

and who allegedly performed specific claimed steps or provided, made, used or controlled the

accused technology.  *See* Tr. 505:17-506:20 (introducing the "Redfin 3D Walkthrough system"

---

[3]      With its JMOL, Surefield provides charts (*see* Exs. A673, A885, A111 and A973 (D.I.
248, Attch. 1-4)) purporting to map trial evidence to claim elements.  At trial, however, Surefield
relied exclusively on the testimony of Dr. Melendez to map the claim elements.

without identifying what the system actually is or even what its component pieces are); 506:21-507:21 (referring to the "Redfin website", "tablet or smart phone", "those apps", "could be iPhone or iPad", "web servers", "accounts at Matterport", "Redfin server that's serving up their code", users computers, browsers and a "camera" without specifying what parts are included in the accused system and, in most instances, who provides, controls or uses which aspect); 508:18-510:11 (referring to processing of image data after it is captured "on the back-end servers" without specifying what computers or software constitute the "back-end servers" or who makes, controls, uses or is responsible for this "back-end"); 510:19-511:20 (referring generally to the "processing" "happening within the customer's computer" and then saying the "processing" happens in both "the server" and "front end" without explaining what specific processing is occurring on any given computing device); 515:6-516:11 (referring generally to "Redfin software that's running in their browser" and stating that "it gets it from the Matterport Server" and "it instructs Matterport what model it wants from its Redfin account that's hosted at Matterport" without explaining what "it" is or what specifically is done by Redfin, Matterport or a user); 517:8-518:19 (referring to "software" allegedly loaded onto a user's computer "to allow … [a] 3D Walkthrough to occur" without identifying the Redfin software other than stating some of it is written in "Java, Javascript, things like that" or WebGL).

Most fundamentally, however, for every independent claim asserted, Dr. Melendez failed to identify technology that practices all the claim requirements and, in many instances, failed to even identify or discuss all the asserted claim limitations.  For example, Dr. Melendez's testimony regarding claim 10 of the '973 patent failed to map all the claim requirements to accused technology. *See* Tr. 528:21-559-2.  Specifically, claim 10 of the '673 patent is a system claim requiring "a processor [and] a memory storing non-transitory program commands, which,

when executed by the processor, cause ***the processor*** to" do several specific things.  '673 patent, claim 10 [emphasis added].  To show infringement of this claim, Surefield needed to identify specific "program commands" that when executed cause a processor to "receive image data …", "create …panoramas …", "render a virtual model…", "cause a device to display…", determine "camera geometry …", receive "a selected viewpoint…", generate "a point cloud…", determine "a geometric proxy…" and generate a "3D model."  But Dr. Melendez failed to identify any processor (let alone a single processor) that has commands that perform these functions.  Instead, Dr. Melendez merely testified:  "and as we've heard already this morning, these devices I described in the system, they all have processors and they all have memories that run program commands[.]"  Tr. 533:5-534:8.  He did not identify what "these devices" are or explain which processor has the required program commands.

In addition, Dr. Melendez's testimony is not clear as to whether "these devices" are user devices, Matterport devices, Redfin devices, or third-party devices.  Even further, Dr. Melendez failed to identify program commands running on any particular processor for each of the claimed functions.  *See generally,* Tr. 535:20-559:8*; see also* Tr. 548:14-549:21 (testifying regarding "wherein the program commands cause the processor to render the virtual model of the selected space by rendering a 3D scene of the selected space using the plurality of panoramas" and failing to identify any program commands running on any particular processor); Tr. 551:19-553:17 (testifying "receiving a selected viewpoint in the selected space" and failing to identify any program commands running on any particular processor); Tr. 555:8-558:5 (testifying regarding "determining a geometric proxy for the selected viewpoint using the determined camera geometry and the point cloud" and failing to identify any program commands running on any particular processor).

For the only other asserted independent claim of the '673 patent (method claim 1), after testifying about the first few claim elements (the "receiving", "creating", "rendering" and "defining" steps), Dr. Melendez failed to address any other elements of the claim other than to say "these particular limitations" are the same as limitations in claim 10, without specificity as to what "these particular limitations" are.  Tr. 568:1-569:5.  In short, Dr. Melendez merely testified that some unidentified subset of the claim elements were practiced by some un-defined accused technology that may or may not involve Redfin's, Matterport's, and/or some end user's technology.  *Id*.  Moreover, for the "defining spatial boundaries of the plurality of spaces in the property using the image data" element of claim 1 of the '673 patent, Dr. Melendez provided no evidence that "image data" is used to define spatial boundaries.  Tr. 565:5-567:18.  This is not enough evidence to support a finding of infringement – just as the jury found.  Dr. Melendez's testimony was similarly deficient for all remaining asserted independent claims – including failure to identify what claim limitations he was referring to and what accused technology was actually alleged to practice the specific claims elements.[4]  It is thus is neither a surprise nor improper that the jury found Surefield failed to establish infringement.

Notably, even if Dr. Melendez had properly identified all the claim elements and accused technology and properly mapped that technology to the asserted claims (which he unquestionably did not do), the jury was free to question the credibility of, disbelieve and reject

---

[4]      *See* Tr. 574:24-597:14 (testifying regarding claim 1 of the '885 and failing, for example, to identify any particular processor with the required commands and failing to identify what technology is actually accused and who provides, makes, or uses it); Tr. 599:21-609:1 (testifying regarding claim 18 of the '111 and failing, for example, to identify what technology is actually accused and who provides, makes, or uses it); Tr. 612:3-626:23 (testifying regarding of claim 1 of the '973 and failing, for example, to identify any particular processor with the required commands and failing to identify what technology is actually accused and who provides, makes, or uses it).

Dr. Melendez's testimony.  *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) ("[T]he Fifth Circuit has made clear that the jury is entitled to disbelieve a party's expert if it chooses.").  This legal truth alone is enough to deny JMOL of infringement. *McBeth v. Carpenter,* 565 F.3d 171, 176 (5th Cir. 2009) (JMOLs should be granted "only if the facts and inferences point so strongly and overwhelmingly in favor of [the movant] that the [c]ourt believes that [a] reasonable [jury] could not arrive at a contrary verdict.").

### B.     Redfin Presented Substantial Evidence of Non-infringement

Though no further analysis is needed beyond concluding that Surefield failed to carry its burden, Redfin's affirmative evidence of non-infringement was more than sufficient to support the jury's verdict.  Redfin presented three primary affirmative non-infringement arguments:  1) it does not make/generate/create the accused virtual models and, thus, cannot be a direct infringer; 2) the accused "spatial boundaries" from the Matterport models do not define or correspond to "parcel outlines" as required by the '973 patent, the '885 and the '111 patent; and 3) the accused Matterport models are not generated and rendered from a selected viewpoint and, thus, do not infringe any asserted claim.  Each are addressed in order below.

### 1.     Redfin Does Not Make/Generate/Create the Accused Virtual Models

Redfin does not and cannot directly infringe any of the asserted claims because it does not perform the steps of making the accused virtual models and it does not make, use, sell or offer for sale the accused system for making virtual models.  To be clear, ***all*** of the asserted claims are directed to systems and methods for making "virtual models" or "3d models," or some specific underlying aspect of a "virtual model" or "3d model."  *See* '885 patent claim 1

(requiring a system that "generate[s][5] a virtual model"); '673 patent claims 1 (requiring a method for "generating the 3d model"); '673 patent claims 10 (requiring a system for "generating the 3d model"); '973 patent claim 1 (requiring a system for "generating and rendering a virtual model"); '111 patent claim 1 (requiring a method for "creating a plurality of panoramas" from received image data, "defining spatial boundaries" of rooms using the image data and "rendering a virtual model" using the spatial boundaries and panoramas). Redfin's witnesses (both fact and expert) explained that Redfin does not perform the steps or use the system to create/generate/make any portion of the accused virtual models; third party Matterport does. Specifically, Mr. Wiener testified that Matterport creates/generates the accused virtual models, that Redfin does not tell Matterport how to create or generate the models, that Redfin does not even know how Matterport creates/generates those models, and that Redfin engineers have no involvement whatsoever in how Matterport generates/creates the models. Tr. 947:3-952:2. Mr. Gausebeck confirmed that Matterport makes the accused virtual models without involvement of Redfin's computers or software (Tr. 1054:10-1057:25) and that Redfin had no involvement in the development of the Matterport system for making virtual models. Tr. 1053:12-1054:3. Dr. Navratil then testified that because Redfin does not make the accused models, it cannot directly infringe because Redfin does not perform the claimed method steps and does not make or use the claimed system. Tr. 1210:15-1213:4; 1258:9-1260:14.

Surefield's challenges to this non-infringement theory all fail. Its argument that Redfin infringes because Redfin is "'using' the models on is website" ignores what the claims in fact require: creation of models. Just like operating a car is not the same as operating or using the

---

[5] The parties agreed and the Court construed generation of a virtual model to be "creating" the virtual model. *See* D.I. 41.

factory for making that car, using a virtual model (which Redfin arguably does not even do) is not the same as using the system or method for making the model.  Critically, as shown above, each asserted claim requires generation of the model or some portion thereof – and mere use of the model, *e.g.,* navigating in it after it is created, does not show "use" or performance of thes model generation claim requirements.  Moreover, Surefield's factual allegation that Redfin uses "models on its website" was shown to be wrong at trial.  As noted above, both Mr. Wiener and Mr. Gausebeck confirmed that the accused models are hosted on Matterport servers, not Redfin's website, and users obtain the models directly from those Matterport servers, not from the Redfin website.  *See e.g.* Tr. 1055:18-1056:24.  Redfin merely provides a link to Matterport servers; it does not host the models, provide users with any software for interacting with models, or do anything in connection with generating or rendering the Matterport models.  *Id*.

Similarly, Surefield's assertion that Redfin is somehow a "final assembler" of the virtual models again ignores the claim requirements.  Redfin does not assemble the system for making models.  Tr. 1054:10-1057:25; 1054:10-1057:25.  And,Redfin's use of "its website" does not put the accused system for making the models into service.  By the time Redfin is able to put a link to a Matterport model on its website, the model has already been generated by Matterport.  As noted above, facts at trial showed that Redfin's website does not even host the models or serve the models to users of its website.  Tr. 1054:10-1057:25; 1054:10-1057:25.  In its motion, Surefield asserts that Redfin is a "final assembler because 'Redfin installs all of the software on the user's computer to allow a 3D Walkthrough to occur'" D.I. 248 at 16.  But its "factual support" for that proposition is based solely on the conclusory and unsubstantiated testimony of Dr. Melendez – who was directly contradicted by all fact witnesses with any knowledge of how the accused system works.  *See e.g.* Tr. 1055:14-1057:25 (Mr. Gausebeck testifying that when

users of Redfin's website click a link to view Matterport model on redfin.com the software for viewing the model is sent to the user's computer directly from Matterport).

Surefield also argues that for the asserted method claim Redfin is liable under a theory of divided infringement because Redfin (among other things) "controls the timing and manner of" Matterport's performance of some undefined set of claimed method steps. But in addition to failing to identify what those steps are, Surefield fails to identify any evidence showing that Redfin "controlled" how Matterport made its models. It does not identify any such evidence because it cannot – all evidence show that Redfin has no control over the manner and timing Matterport's generation of the accused models. *See e.g.* Tr. 947:3-952:2; 1054:10-1057:25.

Surefield also asserts that Redfin is liable for infringement of the method claims under a theory of divided infringement because there is an alleged "joint enterprise" between Redfin and Matterport. D.I. 248 at 17. In a joint enterprise the members of the enterprise are considered agents of one another such that each member "can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor." *Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1023 (Fed. Cir. 2015). Whether there is a joint enterprise is a question of fact. *Id*. Surefield had the burden to establish whether there was a joint enterprise, and, as the jury found, it failed to do so. The relationship between Redfin and Matterport was one of customer and vendor (respectively). *See e.g.* Tr. 949:17-954:5. There was no joint enterprise to "create and deploy" Matterport's system for making models. Tr. 949:17-954:5; 1053:12-1054:3. Rather, Matterport independently created the accused system and independently controls it. *Id*. And Redfin has no voice or control over how Matterport makes models. *Id*. As such, there is no "equal right to a voice in the direction" of how the models are made and no joint venture. *Akamai*, 797 F.3d at 1023. Aside from showing that in

2012, before any patent had issued, Redfin described in a document that it had a "deeply collaborative partnership" with Matterport, (*see* Tr. 982:18-983:4), Surefield presented no evidence of any of the required elements of a joint enterprise present at any time, much less after the issuance of the patents; its attempt to introduce evidence of the customer/supplier agreements through its technical expert, Dr. Melendez, failed.  *See* Tr. 520:11-523:23.

### 2.    There Is No Evidence of "Parcel Outlines" That Define or Correspond to a "Spatial Boundary"

The asserted claims of the '973, '111 and '885 patents require spatial boundaries *i.e.*, the boundaries between rooms or floors in the model) be used to define or correspond to a "parcel outline" (construed as "a representation of the legal boundary of the land (i.e., the property lines)).  '885 patent claim 1 ("generating a **plurality of spatial boundaries of the plurality of spaces of the real property** . . . , **each of the plurality of spatial boundaries defining a parcel outline** of a corresponding space"); '973 patent claim 1 ("defining a plurality of **spatial boundaries of the plurality of spaces of the real property** . . . , at least one of the plurality of **spatial boundaries defining a parcel outline** of the real property"); '111 patent, claim 18 ("**defining a plurality of spatial boundaries of the plurality of spaces** in the plurality of rooms in the real estate property . . . , wherein the defined first spatial boundary and second spatial boundary are further delineations within a third **spatial boundary corresponding to a parcel outline** of the real estate property").  Thus, to show infringement of these claims, Surefield needed to show that the spatial boundaries in the accused Matterport virtual models defined orcorresponded to the legal boundary of the land.  It could not meet that burden because the accused parcel outline (the property lines shown on Google Maps through the Redfin website) was shown to be independent of and not related in any way to the alleged spatial boundaries in the accused Matterport virtual models (*i.e.* the floors and rooms in a Matterport virtual model do not

define or correspond to the parcel outlines on Google Maps).  Redfin clearly established as much at

trial through the testimony of (1) Mr. Wiener who testified that the accused property lines were

generated independently of the Matterport models, even showing home listings without virtual

models that had a parcel outline on a Google Map—clearly nothing in a virtual model is used to

define or correspond to those parcel outlines (*see* Tr. 941:21-943:20); (2) Dr. Navratil who

explained why the disconnect between the accused spatial boundaries in the Matterport models

and the accused parcel outline on Google Maps meant that there could be no infringement of the

'885, '973 and '111 patents.  Tr. 1260:20-1267:21.

Surefield's argument that Redfin's non-infringement theory requires the "parcel outline

to be a part of or within the virtual model" is a misinterpretation of Redfin's argument. D.I. 248

at 19.  Redfin did not assert that the parcel outline had to be part of the model.  Rather, as noted

above, Redfin argued that the spatial boundaries from the model (*i.e.,* the boundaries between

rooms or floors in the model) must be used define or correspond to the legal boundaries of the

land.  This is expressly required by the claims.  As Dr. Navratil explained, the' 885, '111 and

'973 patent claims are not infringed because the spatial boundaries from the accused models do

not define or correspond to any legal boundary of the land.  Tr. 1260:20-1267:21.

### 3.    The Accused Matterport Models Are Not Generated and Rendered From a Selected Viewpoint

All of the asserted claims require generation or rendering of a virtual model of a "selected

space" or from the "perspective of a current view."  '885 claim 1 ("**generate a virtual model of**

**a current space** from the plurality of spaces in the real property **from the perspective of a**

**current viewpoint**"); '973 claim 1 ("**generating and rendering a virtual model of a current**

**space** within the plurality of spaces of the real property **from a perspective of a current view**"),

673 claims 1 and 10 ("**rendering a virtual model of a selected space** among the plurality of

spaces using the plurality of panoramas …wherein rendering the virtual model of the selected space includes …generating the 3D model"); '111 claim 18 ("**in response to receiving a user indication** … **rendering a virtual model of a selected space** of the one or more spaces").  In other words, a system or method that creates a model independent of, or without regard to, a particular "selected space" or "current view" cannot infringe.  At trial, Mr. Gausebeck testified that the accused systems and methods for making virtual models have always involved creation of a complete model prior to any selection of a space or current view.  Tr. 1039:20-1041:25; 1057:8-15; 1060:9-24.  No Matterport model is made from the "perspective of a current viewpoint" or of a "selected space."  *Id*.  Dr. Navratil then explained why this means there can be no infringement.  Tr. 1268:9-1284:22.

Surefield's contention that this non-infringement argument is legally flawed because it "injects an unclaimed requirement of an ordered combination into" the claims misinterprets Redfin's argument.  As shown above, the requirement of generating and/or rendering a model "from the perspective of a current viewpoint" or of a "selected space" derives from the plain language of independent claim elements.  This argument is not dependent on an ordered combination of method steps.  And, even if it were, such order is based on the plain language of the claims and required no claim construction.  As such, this non-infringement defense is sufficient by itself to support the jury's finding of non-infringement.

## IV.  CONCLUSION

For the foregoing reasons, Redfin respectfully requests the Court to deny Surefield's motion and uphold the jury's verdict on both invalidity and non-infringement.

Dated: October 3, 2022                    Respectfully submitted,


                                          */s/ Ryan J. Marton*

                                          Ryan Marton (admitted *Pro Hac Vice*)
                                          ryan@martonribera.com
                                          Hector Ribera (admitted *Pro Hac Vice*)
                                          hector@martonribera.com
                                          Carolyn Chang (admitted *Pro Hac Vice*)
                                          carolyn@martonribera.com
                                          Phillip Haack (admitted *Pro Hac Vice*)
                                          phaack@martonribera.com
                                          Marton Ribera Schumann & Chang LLP
                                          548 Market St Suite 36117
                                          San Francisco, CA 94104
                                          Telephone: (415) 360-2515

                                          Darryl J. Adams
                                          Texas State Bar No. 00796101
                                          dadams@sgbfirm.com
                                          SLAYDEN GRUBERT BEARD PLLC
                                          401 Congress Ave., Suite 1650
                                          Austin, Texas 78701
                                          Telephone: (512) 402-3562
                                          Facsimile:  (512) 402-6865

                                          Benjamin J. Byer (admitted *Pro Hac Vice*)
                                          benbyer@dwt.com
                                          DAVIS WRIGHT TREMAINE LLP
                                          920 Fifth Avenue, Suite 3300
                                          Seattle, Washington 98104
                                          Telephone: (206) 757-8105
                                          Facsimile: (206) 757-7105

                                          ***COUNSEL FOR DEFENDANT***
                                          ***REDFIN CORPORATION***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing is being served on the

counsel of record via the CM/ECF system on October 3, 2022.


By:   */s/ Ryan J. Marton*
           Ryan J. Marton