**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **APPLIANCE COMPUTING III, INC.** **d/b/a SUREFIELD,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **CIVIL ACTION NO. 6:20-cv-00376-ADA** |
| **REDFIN CORPORATION,** | § § § | |
| *Defendant.* | § § § | |

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A**
**MATTER OF LAW PURSUANT TO RULE 50(b)**

███████████

# TABLE OF CONTENTS

I.  INVALIDITY ................................................................................................................. 1

    A.  Redfin Failed to Prove a Motivation to Combine/Modify the Prior Art................. 1

        1.  Surefield Did Not Waive its Motivation Arguments. ................................ 1

        2.  Redfin's Expert Applied an Incorrect Obviousness Standard and Ignored Motivation to Combine/Modify.................................................................. 1

        3.  Redfin Had to Prove Motivation Because Its Evidence Was Insufficient to Support the Jury's Verdict on Its Other Theories of Invalidity. ................. 2

        4.  Redfin Failed to Provide Any Evidence that GSV Could be Modified to Achieve the "Generate and Render" Limitation. ......................................... 5

        5.  Trial Evidence "As a Whole" Does Not Provide Sufficient Motivation to Combine or Modify Any Prior Art Reference. ........................................... 5

    B.  Redfin Failed to Prove "Defining Spatial Boundaries…Using the Image Data" Was Disclosed by the Prior Art. ........................................................................... 7

    C.  Redfin Failed to Present Any Sufficient Theory of Invalidity Based on the Matterport 2013 Prior Art System. .......................................................................... 8

    D.  Redfin Failed to Present Substantial Evidence That GSV, Either Alone or in Combination with Redfin.com 2013, Invalidated the Asserted Claims................. 9

        1.  Surefield Did Not Waive Arguments Related to GSV. ............................. 9

        2.  Redfin Failed to Show That GSV/Redfin.com Disclosed Synthesized Views/Viewpoints......................................................................................... 9

        3.  Redfin Failed to Show That GSV/Redfin.com Disclosed Scheduling a Tour......................................................................................................... 10

        4.  Redfin Failed to Show That GSV/Redfin.com Disclosed Determining Camera Geometry Using the Plurality of Images. .................................... 10

        5.  Redfin Failed to Show That GSV Disclosed a Spatial Boundary Defining or Corresponding to a Parcel Outline......................................................... 11

    E.  Redfin Failed to Address Surefield's Evidence of Secondary Considerations Supporting a Finding of Nonobviousness.............................................................. 11

    F.  Redfin Failed to Consistently Interpret the Claim Language for Both Infringement and Invalidity. ..................................................................................................... 13

II. NONINFRINGEMENT................................................................................................ 13

A.    No Reasonable Jury Could Find Non-Infringement with Plaintiff's Evidence of Infringement.................................................................................................. 13

B.    Redfin's Noninfringement Positions Are Irrelevant to the Asserted Claims and No Reasonable Juror Could Have Found Noninfringement...................................... 18

    1.    Redfin *Uses* the Accused Virtual Models and *Makes* Its Website, so JMOL of Infringement is Required. .................................................................... 18

    2.    All Substantial Evidence Demonstrates that Spatial Boundaries Define or Correspond to a Parcel Outline. ............................................................... 19

    3.    The Accused Models Are Generated From a Selected Viewpoint. .......... 20

III.   CONCLUSION ............................................................................................................ 20

████████

## TABLE OF AUTHORITIES

**Cases**

*Alexsam, Inc. v. IDT Corp.*,
715 F.3d 1336 (Fed. Cir. 2013).................................................................. passim

*Allergan, Inc. v. Barr Labs., Inc.*,
501 F. App'x 965 (Fed. Cir. 2013)..................................................................... 2

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016)...................................................................... 4, 7

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009)......................................................................... 1

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011)....................................................................... 18

*Centrak, Inc. v. Sonitor Techs., Inc.*,
915 F.3d 1360 (Fed. Cir. 2019)....................................................................... 19

*HVLPO2 v. Oxygen Frog*,
949 F.3d 685 (Fed. Cir. 2020)................................................................... passim

*Illinois Tool Works, Inc. v. Rust-Oleum Corp.*,
955 F.3d 512 (5th Cir. 2020) ............................................................................ 2

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
757 F. App'x 974 (Fed. Cir. 2019).................................................................. 18

*InTouch Techs., Inc. v. VGO Commc'ns Inc.*,
751 F.3d 1327 (Fed. Cir. 2014)......................................................... 2, 6, 7, 11

*Koito Mfg. v. Turn-Key Tech.*,
381 F.3d 1142 (Fed. Cir. 2004).......................................................... 3, 5, 7, 8

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)........................................................................................... 6

*Moba, B.V. v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003)....................................................................... 13

*Morante v. Am. General Fin. Ctr.*,
157 F.3d 1006 (5th Cir. 1988) ....................................................................... 1, 8

*Navigant Consulting, Inc. v. Wilkinson*,
508 F.3d 277 (5th Cir. 2007) ............................................................................ 1

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ......................................................................... 3

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ....................................................................... 12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ..................................................................... 7, 9

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
    626 F.3d 1361 (Fed. Cir. 2010) ........................................................... 1, 8, 9, 13

*WMS Gaming Inc. v. Int'l Game Tech*,
    184 F.3d 1339 (Fed. Cir. 1999) ....................................................................... 12

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) ....................................................................... 13

**Rules**

Fed. R. Civ. P. 50(b) ......................................................................................... 20

Fed. R. Civ. P. 59 ............................................................................................. 20

███████████

## TABLE OF ABBREVIATIONS AND CITATIONS

**Parties**

| | |
|---|---|
| Surefield | Plaintiff Appliance Computer III, Inc. d/b/a Surefield |
| Redfin | Defendant Redfin Corp. |

**Defined Terms**

| | |
|---|---|
| Surefield Patents or Patents-in-Suit | U.S. Patent No. 9,836,885 (the "'885 Patent"); U.S. Patent No. 10,102,673 (the "'673 Patent"); U.S. Patent No. 10,510,111 (the "'111 Patent"); and U.S. Patent No. 10,592,973 (the "'973 Patent"). |
| Asserted Claims | Claims 1, 3, and 9 of the '885 Patent; claims 1, 2, and 10 of the '673 Patent; claims 18 and 22 of the '111 Patent; and claims 4 and 17 of the '973 Patent. |
| GSV | Google Street View |
| Matterport 2013 | Matterport 2013 System |
| JMOL | Judgement as a Matter of Law |
| POSITA | Person of ordinary skill in the art |
| Tr. | Trial Transcripts, Dkt. 239-244 |

Unless otherwise noted, all **emphasis** is added.

## I.   INVALIDITY

### A.   Redfin Failed to Prove a Motivation to Combine/Modify the Prior Art.

#### 1.   Surefield Did Not Waive its Motivation Arguments.

Although Surefield explicitly stated in its pre-verdict motion that "Redfin Cannot Show Clear and Convincing Evidence of Motivation to Combine or to Modify," Dkt. 227 at 8, Redfin claims Surefield waived the argument. Dkt. 261 at 2. Redfin's claim has no merit. Rule 50(a) requires pre-verdict JMOL motions "specify the judgment sought and the law and the facts that entitle the movant to the judgment[,]" and a party may renew its JMOL after the jury verdict under Rule 50(b). Fed. R. Civ. P. 50.  The Fifth Circuit liberally construes the rule and excuses any "technical noncompliance" provided that the purposes of the rule—informing the court of the party's legal position and placing the opposing party on notice of the moving party's position regarding the insufficiency of the evidence—are satisfied. *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1367–68 (Fed. Cir. 2010).[1]  Here, Surefield specifically raised the lack of a motivation to combine/modify the asserted prior art in its pre-verdict motion, Dkt. 227 at 8, and there is no dispute that the motion explicitly encompassed as a ground for JMOL that the Asserted Patents were not invalid for obviousness. *See, e.g.*, Dkt. 227 at 8–11; Tr. 1658:8–1659:4.

Redfin argues that Surefield's post-verdict JMOL arguments must exactly match those in its Rule 50(a) JMOL. That is not the law. Indeed, Redfin's only cited case held that a party cannot move for JMOL after the verdict on a *ground* not included in the Rule 50(a) JMOL, which is unlike the situation here. *See Morante v. Am. General Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1988).

#### 2.   Redfin's Expert Applied an Incorrect Obviousness Standard and Ignored Motivation to Combine/Modify.

Redfin's expert, Dr. Navratil, explicitly agreed that the standard he applied in his analysis

---

[1] *See also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1379 (Fed. Cir. 2009) (finding no waiver of obviousness arguments); *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007).

allowed obviousness to be proved simply by showing that every limitation of the claim is in the prior art. Tr. 1450:8–22.[2] The jury was then instructed by the Court that this is insufficient to show obviousness. Tr. 1692:17–20. Redfin's cited cases about the general scope of proper expert testimony are irrelevant to the issue here, an expert's application of a standard. *See* Dkt. 261 at 6. As became apparent at trial, Dr. Navratil applied the wrong standard regarding obviousness. *See* Dkt. 248 at 4–5; Tr. 1450:8–22. These errors fundamentally undermined Dr. Navratil's analysis, and thus his testimony cannot support the jury's invalidity verdict. *InTouch Techs., Inc. v. VGO Commc'ns Inc.*, 751 F.3d 1327, 1348–1349 (Fed. Cir. 2014) (reversing district court's judgment of invalidity because it was based on expert testimony applying an incorrect legal standard).

### 3.     Redfin Had to Prove Motivation Because Its Evidence Was Insufficient to Support the Jury's Verdict on Its Other Theories of Invalidity.

Redfin provides various arguments attempting to avoid the requirement to prove a motivation to combine/modify. *See* Dkt. 261 at 3–7. Redfin's arguments ignore two important standards from the Federal Circuit. First, a jury's verdict of invalidity must be supported by substantial evidence. *See Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020). Second, expert testimony was required to support the jury's verdict of invalidity. *See Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347–48 (Fed. Cir. 2013).[3] Here, neither expert testimony nor substantial evidence supported the jury's verdict. Neither Dr. Furukawa, Mr.

---

[2] Redfin implies that Surefield should have questioned Dr. Navratil more explicitly about motivation to combine. Dkt. 261 at 6. However, Dr. Navratil left no room for a motivation to combine requirement in the standard he applied, that obviousness is proved sufficiently by showing each limitation existing in the prior art.

[3] Although expert testimony is not required for all determinations of alleged obviousness, the cases where an obviousness theory can be supported without expert testimony are generally limited to: (1) where the technology is simple, (2) the references are easily understandable, and (3) the factual inquiries underlying" obviousness are not in dispute. *Allergan, Inc. v. Barr Labs., Inc.*, 501 F. App'x 965, 972 (Fed. Cir. 2013). This case involves 3D modeling technology, which could hardly be called "simple," and thus expert testimony was required.

Wiener, nor Mr. Gausebeck were offered or qualified as expert witnesses. Redfin's repeated citations to those witness's testimony and documentary evidence are irrelevant to invalidity without accompanying expert testimony.[4] Surefield has demonstrated that each and every theory Redfin presented was insufficient such that, even taken as a whole, there was no sufficient basis to enable a reasonable jury to conclude, by clear and convincing evidence, that the Asserted Claims were invalid as anticipated or obvious. Redfin cannot escape its failure to prove motivation to combine/modify under the guise of another theory of invalidity.

### a. Redfin Failed to Present Substantial Evidence That GSV Anticipates Any of the Asserted Claims.

Redfin incorrectly claims that substantial evidence supports the jury's verdict that GSV anticipated the Asserted Claims. Dkt. 261 at 3. To qualify as substantial evidence, expert testimony concerning anticipation must identify each element, state the witnesses' interpretation of the element, and explain in detail how each element is disclosed in the prior art. *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315–16 (Fed.Cir.2002). To the contrary, Dr. Navratil testified that several limitations were ***not*** present in GSV, instead claiming (without evidence) that such limitations would have been obvious to Google engineers. Dkt. 248 at 4 n.1.[5] Even assuming expert testimony was unnecessary (it was), Redfin did not identify any other evidence, including Furukawa testimony, showing that the limitations Dr. Navratil failed to identify existed in GSV.

---

[4] *See Alexsam*, 715 F.3d at 1347–48; *HVLPO2 v. Oxygen Frog*, 949 F.3d 685, 689 (Fed. Cir. 2020); *Koito Mfg. v. Turn-Key Tech.*, 381 F.3d 1142, 1151–52 & n.4 (Fed. Cir. 2004) (overturning district court denial of JMOL of no invalidity because prior art reference entered into evidence was not sufficiently discussed by expert).

[5] These limitations appear in claims 1, 3, and 9 of the '885 Patent, claims 18 and 22 of the '111 Patent, and claims 4 and 17 of the '973 Patent and these are the claims not supported by substantial evidence of a motivation to combine or modify GSV. *See* Dkt. 248 at 6. However, Redfin has asserted obviousness of all of the Asserted Claims against Matterport 2013 as well. *See id.* at 3. GSV does not anticipate the remaining Asserted Claims (claims 1, 2, and 10 of the '673 Patent) for the reasons discussed in Surefield's JMOL motion. *See id.* at 6–8, 11–13.

Redfin, therefore, failed to present substantial evidence that GSV anticipated the Asserted Claims.[6]

> **b.    Redfin Failed to Present Substantial Evidence That GSV Disclosed the Required Spatial Boundary.**

Attempting to sidestep the failures of Dr. Navratil, Redfin argues GSV disclosed a spatial boundary defining or corresponding to a parcel outline by mischaracterizing Dr. Melendez's infringement testimony. Dkt. 261 at 4–5. Redfin's citations to Dr. Melendez's testimony ignore the relevant discussion of these limitations showing that the accused Redfin 3D Walkthrough listings contain GPS-located spatial boundaries that define rooms and floors with GPS data related to the parcel outline of the property. *See* Tr. 589:2–590:13, 590:24–592:22. Redfin also falsely claims that "Dr. Melendez testified that simply displaying 'a green rectangle' on a map around the property line is evidence of the parcel outline limitation." Dkt. 261 at 5. Dr. Melendez's testimony actually states the ***opposite***: merely displaying the parcel outline is not required by the claim language. Tr. 589:2–590:13. Dr. Melendez stated that the green rectangle, along with Redfin's source code and testimony of Dr. Hu, showed that "Redfin source code knows the geographical location of [the] spatial boundaries." *Id.*

Further, Dr. Navratil's cited testimony does not disclose any position or location data related to spatial boundaries in GSV. Indeed, Dr. Navratil stated (without evidence) it "would have been a simple matter for Google to just add another spatial boundary … around the White House

---

[6] Redfin in a footnote indicates that one of the missing limitations identified by Surefield was not actually missing from GSV. Dkt. 261 at 4 n.1. Surefield disagrees that that limitation was present in GSV, but it is notable that Redfin identified testimony regarding this limitation but not for any others. Redfin also claims that the combination of GSV with the Museum of Modern Art ("MoMA") website required no motivation to combine because the combination was explicitly disclosed. *Id.* First, no authority supports the proposition that any prior art combination is sufficient on its own, because such "common sense … cannot be used as a wholesale substitute for reasoned analysis and evidentiary support." *Arendi S.A.R.L. v. Apple Inc.,* 832 F.3d 1355, 1362 (Fed. Cir. 2016). Second, buying a ticket is not the same as scheduling a tour. Dkt. 248 at 10–11. Third, the MoMA website linked to the Google Art Project, but a person could not operate the Google Art Project tour while remaining on the Museum of Modern Art website. DX-226 at 20–28.

parcel outline," noting that GSV did ***not*** disclose the claimed spatial boundaries. Tr. 1369:24–1370:10.

Redfin also cannot rely on non-expert Mr. Wiener's testimony for what the prior art discloses or as substantial evidence of invalidity, nor can Redfin's documentary evidence speak for itself. *See supra* n.4. Also, Dr. Navratil's cited testimony relying on Mr. Wiener is unavailing, because Dr. Navratil simply stated that a parcel boundary map was on Redfin's website as early as 2008 but did not offer any opinion on obviousness. Tr. 1374:22–1375:3. None of this evidence is sufficient to prove by clear and convincing evidence that GSV discloses spatial boundaries that define or correspond to a parcel outline or that a POSITA would have been motivated to modify GSV to achieve these limitations.

### 4. Redfin Failed to Provide Any Evidence that GSV Could be Modified to Achieve the "Generate and Render" Limitation.

Dr. Navratil, discussing GSV, claimed that it would have been "obvious" to modify GSV to generate and render the virtual model at the same time as allegedly required by '973 Claim 1. Tr. 1405:14–1406:4. Surefield identified this limitation as lacking sufficient motivation to modify. *See* Dkt. 248 at 4 n.1. Redfin in its Opposition does not cite any evidence allegedly disclosing this limitation or showing a motivation to modify any prior art to achieve this limitation, nor could Redfin as there is no such evidence in the record. Indeed, Redfin does not even address this limitation.

### 5. Trial Evidence "As a Whole" Does Not Provide Sufficient Motivation to Combine or Modify Any Prior Art Reference.

As Surefield demonstrated in its JMOL motion, the rest of Dr. Navratil's testimony does not indicate that he applied any standard other than the legally incorrect one he explicitly stated he applied. Redfin's Opposition only mentions one conclusory and insufficient "motivation to combine," despite Surefield identifying several limitations which Dr. Navratil failed to identify in

GSV alone. *Compare* Dkt. 261 at 5–6 *with* Dkt. 248 at 4 n.1. While Redfin argues that the motivation to combine inquiry must be "expansive and flexible," it must also be "made explicit" under the Supreme Court's standard. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 401 (2007). Additionally, a (1) motivation to combine/modify must be supported by expert testimony, (2) the testimony must demonstrate why a POSITA would have combined or modified the prior art to achieve the missing limitation, and (3) why a POSITA would have a reasonable expectation of success. *See InTouch*, 751 F.3d at 1347–1348; *Alexsam*, 715 F.3d at 1347–48. The only alleged motivation to modify the prior art from Dr. Navratil identified by Redfin was that adding a spatial boundary defining the parcel outline of the White House to GSV "would have allowed you to walk in the Rose Garden or something like that," and that Google had the "outdoor imagery" to make that happen. Tr. 1370:4–10. However, this conclusory testimony was contradicted by the prior art. Dr. Navratil pointed to Dr. Furukawa's work on the Google Art Project, which involved the use of a specialized trolley to show spatial boundaries in GSV. *See* Dkt. 248 at 6–7. Dr. Furukawa's paper indicates that the alleged algorithms behind Google Art Project "assume that the space outside buildings is filled-in." DX-259 at 4. Dr. Navratil does not reckon with how a POSITA would have added a spatial boundary defining a parcel outline to this system, rendering this alleged motivation to modify legally insufficient. Redfin did not identify any motivation to combine or modify from Dr. Navratil regarding any of the other limitations identified by Surefield.

Having presented no legally sufficient evidence showing a motivation to combine or modify the prior art, Redfin now attempts to invoke "common sense" as the basis of its theory of invalidity for obviousness. Dkt. 261 at 7. The Federal Circuit has "repeatedly warn[ed] that references to 'common sense'—whether to supply a motivation to combine or a missing limitation—cannot be used as a wholesale substitute for reasoned analysis and evidentiary

██████████████████

support." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016). Here, Dr. Navratil did not provide an explicit reason why a POSITA would combine or modify any asserted reference. Redfin's citations to non-expert witness testimony and documentary evidence cannot supply the required expert testimony regarding motion to combine or modify the prior art. *See supra* n.4. As such, Redfin simply failed to prove obviousness by clear and convincing evidence and thus no reasonable jury could have found the claims identified by Surefield obvious.

Redfin also fails to distinguish the facts here from those in *InTouch*, arguing that two of the limitations identified by Surefield were "explicit in the prior art" while ignoring the rest. Dkt. 261 at 7. Surefield disagrees that the GSV + MoMA website combination did not require an explicit motivation to combine. *See supra* n.6. For the unmentioned limitations, Dr. Navratil's analysis was "nothing more than impermissible hindsight" as he "failed to provide the glue to combine [or modify]" the prior art references. *InTouch*, 751 F.3d at 1348.

**B.     Redfin Failed to Prove "Defining Spatial Boundaries…Using the Image Data" Was Disclosed by the Prior Art.**

Redfin fails to identify any testimony that discloses "defining spatial boundaries … using the image data" in the prior art. The conclusory direct testimony from Dr. Navratil contradicting his cross-examination testimony cannot, by itself, provide substantial evidence of this limitation being disclosed by the prior art. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014). Although expert testimony is required to support the verdict of invalidity, Dr. Navratil's direct testimony failed to even mention the language at issue. *See Alexsam*, 715 F.3d at 1347–48.

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  *See*

Dkt. 248 at 7; Tr. 1461:21–1462:20.

Even if expert testimony were not required, neither Dr. Furukawa's testimony nor the

evidence presented to the jury disclosed this limitation. *See supra* n.4. Dr. Furukawa was precluded from discussing how the alleged "spatial boundaries" in GSV are defined. *Oxygen Frog*, 949 F.3d at 689. Although Redfin states that "Dr. Furukawa also confirmed that captured images were used to depict the rooms and floors in the GSV," Dkt. 261 at 9, this ignores the claim language. Images "depicting" rooms and floors does not disclose defining spatial boundaries using image data. Redfin did not present substantial evidence that this limitation was disclosed by the prior art.

C.     **Redfin Failed to Present Any Sufficient Theory of Invalidity Based on the Matterport 2013 Prior Art System.**

Surefield did not waive its challenge to Redfin's Matterport 2013 invalidity arguments. As above, Surefield unequivocally included in 50(a) JMOL that its patents were not invalid based on any prior art at trial. *Morante*, 157 F.3d 1006 at 1010; Dkt. 227 at 8–11; 1658:8–1659:4. This more than satisfies the "liberal" construction of this rule. *See W. Union*, 626 F.3d at 1367–68.

Redfin argues there was sufficient evidence to support the jury's verdict of invalidity based on Matterport 2013 prior art. Dkt. 261 at 10. Again, Redfin attempts to avoid the requirement of expert testimony. *See Alexsam*, 715 F.3d at 1347–48. Redfin's citation to *Sundance* is inapposite, as the Federal Circuit specifically noted the need for expert testimony in technically complex cases like this one. *See supra* n.3. Mr. Gausebeck's testimony and the documentary evidence cannot support the jury's verdict without expert testimony, which Dr. Navratil wholly failed to provide. Nor can Redfin simply point to Dr. Melendez's infringement testimony and claim invalidity based on one statement from Mr. Gausebeck. Dr. Melendez clearly indicated that the Matterport 2013 system differed significantly from the accused Redfin 3D Walkthroughs and underlying Matterport technology by showing imagery from each and noting the differences. Tr. 1637:9–1641:4. Redfin failed to present any sufficient theory of invalidity based on the Matterport 2013 system.

### D. Redfin Failed to Present Substantial Evidence That GSV, Either Alone or in Combination with Redfin.com 2013, Invalidated the Asserted Claims.

#### 1. Surefield Did Not Waive Arguments Related to GSV.

Surefield's pre-verdict 50(a) motion expressly stated that "Redfin lacks evidence that numerous limitations were anticipated or obvious in light of the prior art." Dkt. 227 at 9; *see also* Tr. 1658:8–1659:4. This satisfied the "liberal" Fifth Circuit standard by providing notice of Surefield's challenge to Redfin's anticipation and obviousness grounds. *See W. Union*, 626 F.3d at 1367–68.

#### 2. Redfin Failed to Show That GSV/Redfin.com Disclosed Synthesized Views/Viewpoints.

Redfin claims that the testimony of Dr. Navratil is substantial evidence that GSV combination discloses the "synthesized views" limitation, but the cited testimony is conclusory and insufficient because it merely repeats the claim language and states it is in the prior art. Dkt. 261 at 13; *VirnetX*, 767 F.3d at 1333. Redfin's Opposition does not address how GSV provides an "image of a space from a position other than a capture location" or explain how the image data is "combined and processed." Dkt. 261 at 13; Tr. 1363:1–1364:23.

Moreover, Redfin's Opposition improperly relies on the testimony of a non-expert, Dr. Furukawa, in an attempt to provide evidence of invalidity and the content of prior art. Dkt. 261 at 13. Dr. Furukawa, however, was expressly precluded from providing testimony regarding technical issues relating to the content of the prior art—including how a prior art system operates. Tr. 132:1-140:20; *Oxygen Frog*, 949 F.3d at 689. Dr. Furukawa's non-expert testimony cited in Redfin's Opposition related to the aerial panoramas of GSV, along with the conclusion of Dr. Navratil regarding the creation of a composite of panoramas from multiple capture locations being a synthetic view based on Dr. Furukawa's testimony, is insufficient to support the verdict of invalidity. *Alexsam*, 715 F.3d at 1347–48.

### 3. Redfin Failed to Show That GSV/Redfin.com Disclosed Scheduling a Tour.

Redfin mistakenly contends that it presented evidence (DX-226 at 20–28) that "explicitly shows the combination of GSV with the Museum of Modern Art website" to disclose the "scheduling a tour" limitation. Dkt. 261 at 14. However, Redfin's presented evidence merely showed the MoMA website. *See supra* n.6. Redfin's citations to Navratil's testimony only establish that a user of the MoMA website could buy tickets to visit the museum but reveals nothing about scheduling a tour. *See* Dkt. 261 at 14; Tr. 1377:19–1378:12; 1411:7–1413:8. Redfin's additional citation to the testimony of a non-expert, Mr. Wiener, to show an alleged motivation to combine GSV and Redfin.com and the content of the prior art is insufficient for the same reasons discussed with respect to Dr. Furukawa's testimony. *Alexsam*, 715 F.3d at 1347–48.

### 4. Redfin Failed to Show That GSV/Redfin.com Disclosed Determining Camera Geometry Using the Plurality of Images.

Here again, Redfin erroneously relies on testimony of non-expert, Dr. Furukawa, to support its anticipation or obviousness arguments and the content of the prior art, including how GSV allegedly uses pose estimation. Dkt. 261 at 15. Dr. Navratil's use of Dr. Furukawa's testimony on pose estimation to establish "determining camera geometry" is improper as Dr. Furukawa was not disclosed as a qualified expert. *Oxygen Frog*, 949 F.3d at 689. Dr. Furukawa was precluded from providing expert testimony on scope and content of the prior art, and Dr. Navratil did not testify to the scope of the art independently, meaning Redfin lacks the necessary expert testimony to support a verdict of invalidity. *Alexsam*, 715 F.3d at 1347–48.

Redfin further admits that Dr. Navratil did not address the Court's claim construction for "first pass feature detection," arguing instead that his testimony was "consistent" with the Court's construction.  Dkt. 261 at 15. However, his testimony was not consistent with the construction as he failed to explain how GSV performed "an initial detection of geometric features in images" as

10

the Court's construction of "first pass feature detection" required. *Id.*; Tr. 1386:17–1387:6. Dr. Furukawa's additional cited testimony related to "pose estimation" and "first pass feature detection" is also unavailing as he was not disclosed as an expert and could not opine on the content of the prior art. Tr. 132:1-140:20; *Alexsam*, 715 F.3d at 1347–48; *Oxygen Frog*, 949 F.3d at 689.

> **5.     Redfin Failed to Show That GSV Disclosed a Spatial Boundary Defining or Corresponding to a Parcel Outline.**

Dr. Navratil failed to present *any* evidence of these "parcel outline" limitations in GSV. Dr. Navratil provided only a cursory analysis for these limitations that did not reference any "parcel outline" in GSV and insufficiently claimed it would have been "obvious" for Google engineers to add to GSV without providing any motivation to modify GSV. *See supra* I.A.2.b.

Redfin's citations to Dr. Navratil's testimony on "parcel outline" only serve to confirm that he neither understood nor applied the Court's claim construction. Tr. 1421:23–1423:12. After reviewing the Court's claim construction, he characterized the "parcel outline" limitation as indefinite and nonsensical and construed it to mean that a room of the house must be part of the parcel outline which is contrary to the Court's claim construction. *Id*.

> **E.     Redfin Failed to Address Surefield's Evidence of Secondary Considerations Supporting a Finding of Nonobviousness.**

Dr. Navratil wholly failed to address at trial any secondary considerations of non-obviousness, leaving his opinion on obviousness based on either Matterport 2013 or GSV "incomplete[] and insufficient to establish obviousness by clear and convincing evidence." *InTouch*, 751 F.3d at 1352 & n.8 (reversing denial of JMOL where expert failed to address patentee's evidence of secondary considerations).

Redfin only alleged anticipation of GSV with respect to claims of the '673 Patent. The jury charge does not amend the election of prior art and with respect to the '111, '885, and '973 Patents, Redfin was required to rebut Surefield's secondary considerations of non-obviousness case. *WMS*

*Gaming Inc. v. Int'l Game Tech*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).

Redfin's reliance on the jury verdict of non-infringement to negate Surefield's prima facie evidence of a nexus between the secondary considerations of non-obviousness and what was claimed puts the cart before the horse. Dkt. 261 at 17. Dr. Melendez provided ample evidence that Redfin's 3D walkthrough product embodied the claimed features of the patent and were coextensive with them. Tr. 1641:6–1642:14. At that point, nexus is presumed, and Redfin is obligated to provide evidence in rebuttal. *WMS Gaming Inc.*, 184 F.3d at 1359. Because Redfin failed to do so, the issue of obviousness should never have been submitted to the jury.

Redfin also misrepresents Dr. Melendez's testimony regarding his conclusion of copying. Dr. Melendez determined that Redfin's products were coextensive with the asserted claims based upon all of the elements of those claims. Tr. 1641:6–1642:14. Dr. Melendez further supported that evidence of copying by showing that Matterport and Redfin were exposed to the features of Surefield's product and copied those features, including "photorealistic panoramas and snap-to-pano navigation." Tr. 1641:6-1646:7. Contrary to Redfin's suggestion, the opinion of copying was not based on these features alone. Dkt. 261 at 17. Mr. Eraker, for example, testified that the Surefield product released and available to the public, including Redfin and Matterport, embodied the ideas claimed in the patents. Tr. 242:12–246:23; *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1339–40 (Fed. Cir. 2010).

Redfin further alleges that the Gausebeck testimony showed that no copying occurred, but Mr. Gausebeck did not address the evidence of copying identified by Dr. Melendez. Dkt. 261 at 17–18. For example, Mr. Gausebeck was not copied on some of the e-mails cited as evidence of such copying. PX-17.

Redfin also asserts that Surefield's commercial system did not actually practice the asserted

claims because they allegedly lack a parcel outline. Dkt. 261 at 18. However, Redfin admits that one of the patents does not require a parcel outline. Because Surefield is only required to show that the copied product embodied one of the asserted claims, the testimony of Mr. McGarty and Mr. Dwivendi related to whether Surefield's product used a parcel outline is irrelevant. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

Surefield also established that the commercial success of the Redfin product was based on novel features. Expert testimony showed that the features that drove commercial success were the novel features of the patents (*e.g.*, photorealistic viewpoints). Tr. 794:4–10.

### F.    Redfin Failed to Consistently Interpret the Claim Language for Both Infringement and Invalidity.

Redfin incorrectly argues that Surefield waived its argument that Redfin did not consistently interpret the claim language for purposes of both infringement and invalidity.  Dkt. 261 at 19. In its Rule 50(a) motion, Surefield clearly argued that Redfin failed to present evidence that prior art satisfied the elements of the asserted claims. Dkt. 227 at 9. This is more than sufficient to provide Redfin with notice of the lack of evidence. *See W. Union*, 626 F.3d at 1367–68.

## II.    NONINFRINGEMENT

### A.    No Reasonable Jury Could Find Non-Infringement with Plaintiff's Evidence of Infringement.

Redfin argues that Surefield (a) put the burden of proving non-infringement on Redfin, and (b) cannot meet its own burden to prove infringement. Dkt. 261 at 20. To the contrary, Surefield's evidence was such that no reasonable juror could conclude that Redfin did not infringe. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1312 (Fed. Cir. 2003) (JMOL appropriate where "only if upon the record before the jury, reasonable jurors could not have reached that verdict."); Dkt 248 at 15–20. Redfin argued none of its asserted evidentiary grounds of non-infringement (Dkt. 261 at 20–24) to the jury, and Redfin's arguments each fail to support JMOL.

Redfin argues that at trial Plaintiff relied on only Dr. Melendez's testimony for an element-by-element analysis. But this is incorrect; Plaintiff identified that very evidence in the record.

Redfin further asserts that Surefield and Dr. Melendez failed to identify the accused technology. Dkt. 261 at 20. This is also wrong. Dr. Melendez explicitly identified the accused technology for all claims as Redfin listings with 3D Walkthrough. Tr. 511:21–512:5, 515:6–516:13; Dkt. 248 at 19 n.19; *see also* Tr. 529:23–5:30:22, 599:3–14.

Redfin also argues that Dr. Melendez failed to identify who allegedly provided, made, used, or controlled the accused technology, and who performed specific claim steps. Dkt. 261 at 20. This is incorrect. He identified the servers and computers that comprised the accused technology and which literally performed each of the steps in his element-by element-analysis. *See infra* at 14–17. Dr. Melendez also identified the literal provider or operators of these components. Tr. 505:17–21, 506:21–507:12 (*e.g.*, Matterport servers, Redfin servers, customer computers for accessing 3D Walkthroughs at redfin.com), 1672:21–1673:3 (testimony provided evidence on the accused technology as described in final jury instructions). Dr. Melendez further pointed to specific software, source code, and processors. *See infra* at 15–17.

Despite conceding the close technical partnership, Redfin ignores Surefield's arguments about divided direct infringement: that (a) the making, providing, and use of the entire Redfin 3D Walkthrough System (and each of its components) is legally attributable to Redfin; and (b) whether Matterport or Redfin customer hardware or software literally performed the claimed steps, the performance of those steps is legally attributable to Redfin. *See* Dkt. 248 at 16–19. No reasonable jury could reject this evidence because it was uncontested. Indeed, Redfin focused its defense on the literal making, providing, using, and performance of steps, while ignoring the facts supporting attribution. Tr. 1728:1-1753:12 (not addressing elements of conditioning or joint enterprise.)

14

Redfin also alleges that Dr. Melendez fundamentally failed (a) to identify technology that practices all the claim elements, and (b) to identify or discuss all the asserted limitations. Dkt. 261 at 21. But Surefield presented element-by-element analysis for 10 asserted claims. *See* Dkt. 248-1–248-4. For claim 10 of the '673 Patent, Redfin asserts that Plaintiff failed to identify processors and program commands that perform the limitations. This is wrong. Redfin insinuates that a single processor must perform *all* of the claim limitations, but this is not a requirement of the claims. As Redfin admits Claim 10 of the '673 Patent begins with the requirement of "a processor" which means "one or more" processors that execute the instructions at issue. Dkt. 261 at 21–22; Tr. 533:4–19.  Dr. Melendez further identified the processors and commands as follows: (1) "receive image data" – processors and executable ode on Matterport servers for at least the Redfin account "my.matterport.com" (Tr. 532:1–12, 537:7–18, 538:18–539:21, 506:21–508:23); (2) "create … panoramas" – processors on Matterport servers (Tr. 541:25–8 (executing processing steps), 541:10–16 (discussing Matterport source code), 508:24–509:10 (describing processing at Matterport server creating panoramas); (3) "render a virtual model" – processor(s) on the Redfin customer's computer executing program code (Tr. 540:24-541:9, 543:22–544:11, 544:14–545:6); (4) "cause a device to display" – processor(s) on the customer's computer (Tr. 545:9–546:23, 487:12–6 ( "WebGL is browser code")); (5) render the 3D scene – processor(s) on Redfin customer computers (Tr. 548:14–549:21) (describing rendering of 3D scene as part of virtual model described in (3) *supra*), 555:14–555:20); *accord* Tr. 1088:25-1090:5 (Gausebeck).

Dr. Melendez further describes how the 3D scene is rendered by (5a) determining camera geometry (Tr. 549:22–551:17); (5b) receiving a selected viewpoint (Tr. 551:18–553:7, 553:8–17); (5c) generating point clouds (Tr. 553:20–555:7, 556:17–23); (5d) determining a geometric proxy (Tr. 510:19–511:6, 556:17–557:20 (wire mesh of triangles shows geometric proxy), 557:21–558:5,

558:12–24); (5e) generating 3D model (Tr. 558:12–24 (geometric proxies used in generating and rendering multiple 3D models at Redfin customer computer)). Redfin further argues that Dr. Melendez did not identify whether the devices at issue were literally user devices, Redfin devices, Matterport devices, or third-party devices. Dkt. 261 at 22. But in discussing "the devices [he] described in the system," Dr. Melendez referred to the above-noted Matterport servers, Redfin servers, and Redfin customer computers. Tr. 533:5–534:8; *See supra* at 14.

Redfin also argues that Dr. Melendez failed to identify program commands running on any particular processor for each of the elements above. Dkt. 261 at 22. To the contrary, Dr. Melendez identified the program commands as the executable code run on the identified processors and corresponding to source code described above or to the described capabilities or operation of Redfin's accused technology. *See* Tr. 534:9–535:4. And Dr. Melendez identified the code relating to Redfin's challenged limitations as follows: "render the virtual model … by rendering a 3D scene" (Tr. 549:3–6 (referring to Tr. 544:24–545:6)); the "receiving a selected viewpoint" (Tr. 534:23–535:2, 552:20–553:19 (code corresponding to the actions/capabilities described, including receiving data about which user selected circle)); and "determining a geometric proxy …" (Tr. 534:23–535:2, 545:14–545:1, 557:21–558:5 (rendering code determines which geometric proxy to show, e.g. the kitchen), 558:12–14 (referring to "model renderer" code at Tr. 544:15–545:1 in relation to both this element and other element relating to a geometric proxy)). At trial, Redfin never disputed Dr. Melendez's testimony about processors or instructions.

Redfin's arguments about the other claims similarly fail. As to '673 Patent, Claim 1 Dr. Melendez specifically addressed each of the challenged elements: (1) "wherein the image data …" (Tr. 567:19–568:25); (2) "wherein rendering the virtual model of the selected space …" and "wherein rendering the 3D scene …" (Tr. 568:1–568:16); remaining limitations. Tr. 568:1–569:5.

Dr. Melendez also explained these claim limitations were met in Redfin's and its customers' operation of the accused technology described with claim 10 of the '673 Patent (claim 1 merely uses different verb tenses). Tr. 568:1–569:5.

Dr. Melendez testified that Redfin performed the "defining spatial boundaries" limitation, identified corresponding source code, and testified "the data that is being used [to generate these spatial boundaries] is the image data that we have from the spaces." Tr. 565:5–567:18, 573:25–574:21 (Redfin's use). That components of the accused technology were not literally Redfin-created also fails to show divided direct infringement when Redfin presents those elements to its users on its website. Dkt. 248 at 16–19.

Redfin's allegations (contained in a footnote) regarding other claims are also incorrect for the reasons above (accused technology was identified and the making, use, provision, and performance of all steps attributable to Redfin, as above) and similar reasons:[7] (1) '885 Patent, Cl. 1 (Tr. 756:1–22 ("the same processors" as accused for '673, cl. 10, 1), 517:8–518:22 (the provision, making, use of the accused technology is attributable to Redfin), 519:12–25 (Redfin customers also use accused system); *see also*, Dkt. 226 at 4–7; (2) '111 Patent, Cl. 18 (Tr. 600:11–14); (3) '973, Cl. 1 (Tr. 613:13–14 (processors with required commands same as Dr. Melendez identified in connection with '885 Patent claims)). Redfin never disagreed with Dr. Melendez's identification of these processors and instructions.

Redfin finally asserts that the jury was free to reject Dr. Melendez's testimony. But Dr. Melendez's testimony above was unrebutted, and, corroborated by Redfin. Dkt. 248-1-4. As Redfin offers no reasonable basis for rejection, the jury was not free to reject it. *See Imperium IP*

---

[7] Redfin addresses more than 40 pages of testimony in 3 parentheticals with only 3 specific challenges. Dkt. 261 at 23 n.4. Surefield reserves all rights to respond to any argument made regarding these claim elements.

*Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 978–79 (Fed. Cir. 2019).

> **B.      Redfin's Noninfringement Positions Are Irrelevant to the Asserted Claims and No Reasonable Juror Could Have Found Noninfringement.**

At trial, Redfin advanced three noninfringement positions at trial: (1) Redfin doesn't make models; (2) Matterport models don't have a parcel outline; (3) Matterport has always been a "Full 3D Reconstruction" company. *See* Tr. 1284:23–1285:16, 1733:18–23.

Redfin's Opposition essentially abandons positions (2) and (3) asserted at trial, implicitly acknowledging their irrelevance.  Each argument fails for the reasons below.

> **1.      Redfin *Uses* the Accused Virtual Models and *Makes* Its Website, so JMOL of Infringement is Required.**

Redfin argues that it does not literally "make" the Accused Virtual Models within the meaning of 35 U.S.C. § 271(a).  Dkt. 261 at 24–28.  That is a straw man argument.

*First*, Redfin makes no effort to argue that it doesn't use the constituent virtual models on its website, and implicitly concedes this infringing activity. Indeed, the evidence is undisputed that Redfin provides access to virtual models on its webpage at www.redfin.com and on its Redfin app.

> Q.  You understand, don't you, Dr. Navratil, that in addition to whatever Matterport provides [the virtual models], that there's additional information provided on redfin.com?
> A.    Yes, sir.  I understand that.
> Q.    Okay.  And that includes the parcel outline information?
> A.    The parcel outline information provided by Digimap, yes.  I think we've been clear on that.
> *Q.    Well, and it's provided by Redfin to their users, isn't it?*
> *A.    It is shown inside the Google map on the Redfin website, yes.*

*See* Tr. 1418:12–23. Use is statutorily sufficient under Section 271(a). To use a patented system, "a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1281 (Fed. Cir. 2011).

*Second*, Redfin's argument about literally "making" under 271(a) is legally invalid. Redfin

makes its website, is the "final assembler" of it (including the content therein), and is liable as a maker. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019). Redfin presented no evidence to the contrary. Redfin directly infringes as a final assembler because "Redfin installs all of the software on the user's computer to allow [a 3D Walkthrough] to occur." Tr. 517:8–15. Redfin "uploads the software that it needs, additional software into the browser, and it brings in that custom Redfin virtual tour." Tr. 517:13–15. Thus, Redfin makes the infringing systems of the '885 (claims 1, 3, & 9), '673 (claim 10), and '973 (claims 4 & 17) Patents. *See* Dkt. 248-1, 248-2, 248-4. As a real estate broker, Redfin also puts the entire system into use by deploying them on or from Redfin.com to sell more real estate, and thus, also directly infringes the system claims by use. Tr. 774:14–775:21, 812:5–16 (number of views).[8]

### 2. All Substantial Evidence Demonstrates that Spatial Boundaries Define or Correspond to a Parcel Outline.

First, it is undisputed that parcel outline is not an element of any claim of the '673 patent. So this argument can be immediately rejected relative to the '637 patent claims 1, 2, and 10. With respect to the remaining three patents, as it did at trial, Redfin misrepresents the requirements of the claim. ***No claim recites that the parcel outline defines a spatial boundary***; *cf.* Dkt. 261 at 28–29. Redfin has it backwards, even at this late stage. Instead, the claims require one or more spatial boundaries to define or correspond to a parcel outline. With respect to "defines," Redfins expert admitting each spatial boundary located on the property using location information and defines that parcel: "Q. ***In every instance, right?*** A. ***If there's a virtual tour, then the virtual tour's intended to be for the same address...***" Tr. 1425:19-1426:6. Redfin also admitted that the models are located on the correct addressed parcel using geographical information. *Id.* 1426:7–1427:20.

Contrary to these facts and this Court's order, Dr. Navratil adopted a logically outrageous

---

[8] *See also* PX-48, PX-5, PX-123, PX-44, PX-94, Tr. 978:4–6, 775:16–17, 773:2–775:21.

construction—namely that the parcel outline (legal representation of the property) had to be ***the***

***same*** as floors and rooms like kitchens—a condition he conceded is ***never satisfied, ever***.

Tr. 1420:23–1421:15, 1422:20–1423:14 ("it means that the kitchen has to be the parcel

outline, the bedroom has to be the parcel outline.  And I've never seen a house like that."). JMOL

is warranted since Dr. Navratil refused to follow the Court's construction.

### 3.    The Accused Models Are Generated From a Selected Viewpoint.

Even understanding Redfin's position here is difficult; obviously a model is rendered

dependent on a point of view. Redfin's witnesses agreed, with Mr. Gausebeck testifying:

> Q.    And it has to move those triangles around that we saw.  And those triangles
> actually change orientation and shape as you turn around, right?
> A.    Yeah.  They're drawn differently as you change your viewpoint.

Tr. 1088:25–1090:5, 540:24–541:9; 543:22–544:8 (Showcase javascript software on Redfin users'

computers renders models). Dr. Navratil confirmed:

> ***Q.    As the user is interacting with the space using the navigation controls, the
> code on their computer will update the rendering to show the space in various
> perspectives?***
> ***A.    That sounds right.  Yes.***
> Q.    And if a user wants to see a floor, ***that same code will render and change
> what is displayed based on the requested floor and the selected space, right?***
> ***A.    If they're -- so if they're selecting a -- if they're selecting from a floor, then
> it will move that viewpoint to the floor that they selected.***

Tr. 1440:8–1441:1. Mr. Gausebeck admitted the model is rendered based on a viewpoint. Tr.

542:1–542:8. Indeed, Redfin provides code the sole purpose of which is rendering a model based

on customer navigation. Tr. 518:20–518:22 ("A. That's the only reason it's there.").

## III.    CONCLUSION

For the foregoing reasons and those in Surefield's opening motion, Surefield respectfully

requests that the Court grant Surefield's motion and enter an order for judgment as a matter of law,

in Surefield's favor on the issues of infringement and invalidity, or, in the alternative, grant a new

trial under Rule 59. *See* Fed. R. Civ. P. 50(b); 59.

Dated: October 21, 2022

Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Nicole E. Glauser
Texas State Bar No. 24050694
nglauser@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
Adam G. Price
Texas State Bar No. 24027750
aprice@dinovoprice.com
Gregory S. Donahue
Texas State Bar No. 24012539
gdonahue@dinovoprice.com
Gabriel R. Gervey
Texas State Bar No. 24072112
ggervey@dinovoprice.com
Michael D. French (*Pro Hac Vice*)
mfrench@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

Steven W. Fogg (*pro hac vice*)
sfogg@corrcronin.com
Eric A. Lindberg (*pro hac vice*)
elindberg@corrcronin.com
**CORR CRONIN, LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
Telephone: (206) 625-8600

Mark P. Walters (*pro hac vice*)
walters@lowegrahamjones.com
**LOWE GRAHAM JONES, PLLC**
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
Telephone: (206) 381-3300

**ATTORNEYS FOR PLAINTIFF**

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system and all counsel of record have been served via email.

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo